No. 26-____

# IN THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

IN RE CROSS-HOLDER AD HOC GROUP and
EXCLUDED FIRST LIEN LENDERS (each on behalf of its participating clients),

*Petitioners.*

## PETITION FOR A WRIT OF MANDAMUS TO THE BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY IN NO. 26-10910-MBK, HON. MICHAEL B. KAPLAN

Mark T. Stancil
Christopher DiPompeo
WILKIE FARR & GALLAGHER LLP
1875 K St. N.W
Washington, D.C. 2006-1238
(202) 303-1133
mstancil@willkie.com

*Counsel for Excluded First Lien Lenders*

C. Kevin Marshall
 *Counsel of Record*
Garrett W. Callen
JONES DAY
51 Louisiana Ave. NW
Washington, DC 20001
(202) 879-3851
ckmarshall@jonesday.com

Bruce Bennett
JONES DAY
555 South Flower St., Fiftieth Floor
Los Angeles, CA 90071

Benjamin Rosenblum
Genna L. Ghaul
JONES DAY
250 Vesey Street
New York, NY 10281

*Counsel for Cross-Holder Ad Hoc Group*

(Petitioners' members listed on inside cover)

**Excluded First Lien Lenders**

Canyon CLO Advisors L.P.

Canyon Capital Advisors LLC

**Cross-Holder Ad Hoc Group**

BTG Pactual Asset Management US, LLC

BTG Pactual Absolute Return Master Fund, L.P.

Canyon Capital Advisors LLC

The Canyon Value Realization Master Fund, L.P.

River Canyon Fund Management LLC

River Canyon Total Return Bond Fund

Owl Creek Asset Management, L.P.

Owl Creek Credit Opportunities Master Fund, L.P.

Shenkman Opportunistic Credit Master Fund LP

# CORPORATE DISCLOSURE STATEMENT

Per Federal Rule of Appellate Procedure 26.1 and Third Circuit Rule 26.1, Petitioners disclose as follows:

Petitioner BTG Pactual Asset Management US, LLC, is a subsidiary of BTG Pactual Bancorp LLC, and no publicly held corporation directly owns 10% or more of its equity. Banco BTG Pactual S.A. is a company publicly traded in Brazil (BVMF:BPAC11) and indirectly owns 10% or more of Petitioner BTG Pactual Asset Management US, LLC's equity. No publicly held corporation which is not a party to the proceeding before this Court has a financial interest in its outcome.

Petitioner BTG Pactual Absolute Return Master Fund, L.P., has no parent that is a corporation, and no publicly held corporation directly owns 10% or more of its equity. Banco BTG Pactual S.A. is a company publicly traded in Brazil (BVMF:BPAC11) and indirectly owns 10% or more of Petitioner BTG Pactual Absolute Master Fund, L.P.'s equity. No publicly held corporation which is not a party to the proceeding before this Court has a financial interest in its outcome.

Petitioner Canyon Capital Advisors LLC is subsidiary of CP New Co LLC, and no publicly held corporation directly owns 10% or more of its equity. Dai-Ichi Life Holdings, Inc., is a company publicly traded in Japan (OTCMKTS: DLICY) and indirectly owns 10% or more of Petitioner Canyon Capital Advisors LLC's equity. No

i

publicly held corporation which is not a party to the proceeding before this Court has a financial interest in its outcome.

Petitioner Canyon CLO Advisors, L.P., has no parent that is a corporation, and no publicly held corporation directly owns 10% or more of its equity. Dai-Ichi Life Holdings, Inc., is a company publicly traded in Japan (OTCMKTS: DLICY) and indirectly owns 10% or more of Petitioner Canyon CLO Advisors, L.P.'s equity. No publicly held corporation which is not a party to the proceeding before this Court has a financial interest in its outcome.

Petitioner The Canyon Value Realization Master Fund, LP, has no parent that is a corporation, and no publicly held corporation owns 10% or more of its equity. Dai-Ichi Life Holdings, Inc., a publicly traded company in Japan (OTCMKTS: DLICY), may be deemed to have a financial interest in the outcome of the proceeding by virtue of its indirect minority ownership of Canyon Capital Advisors LLC, the investment advisor to The Canyon Value Realization Master Fund, LP.

Petitioner River Canyon Fund Management LLC has no parent that is a corporation, and no publicly held corporation directly owns 10% or more of its equity. Dai-Ichi Life Holdings, Inc., is a company that is publicly traded in Japan (OTCMKTS: DLICY) and indirectly owns 10% or more of Petitioner River Canyon Fund Management LLC's equity. No publicly held corporation which is not a party to the proceeding before this Court has a financial interest in its outcome.

Petitioner River Canyon Total Return Bond Fund has no parent that is a corporation, and no publicly held corporation owns 10% or more of its equity. Dai-Ichi Life Holdings, Inc., a publicly traded company in Japan (OTCMKTS: DLICY), may be deemed to have a financial interest in the outcome of the proceeding by virtue of its indirect minority ownership of River Canyon Fund Management LLC, the investment advisor to River Canyon Total Return Bond Fund.

Petitioner Owl Creek Asset Management, L.P., has no parent that is a corporation, and no publicly held corporation owns 10% or more of its equity. No publicly held corporation which is not a party to the proceeding before this Court has a financial interest in its outcome.

Petitioner Owl Creek Credit Opportunities Master Fund, L.P., has no parent that is a corporation, and no publicly held corporation owns 10% or more of its equity. No publicly held corporation which is not a party to the proceeding before this Court has a financial interest in its outcome.

Petitioner Shenkman Opportunistic Credit Master Fund LP has no parent that is a corporation, and no publicly held corporation owns 10% or more of its equity. No publicly held corporation which is not a party to the proceeding before this Court has a financial interest in its outcome.

**TABLE OF CONTENTS**

**Page**

CORPORATE DISCLOSURE STATEMENT ................................................................i

INTRODUCTION ................................................................................ 1

RELIEF SOUGHT ............................................................................... 3

ISSUE PRESENTED ............................................................................. 3

BACKGROUND .................................................................................. 3

    A.    Norwood's facially deficient original Chapter 11 petition ......................... 3

    B.    The Bankruptcy Court's rejection of "first-day" venue objections from creditor groups and the U.S. Trustee ..................................... 4

    C.    The DIP Order and others asserting valid venue ................................... 5

    D.    The Bankruptcy Court's denial of certification and Petitioners' initial mandamus petition ............................................................. 7

    E.    Norwood's assets outside of New Jersey ............................................ 8

    F.    Concluded venue proceedings ..................................................... 10

ARGUMENT .................................................................................. 13

I.    The Bankruptcy Court committed a clear error of law in holding that venue was proper in New Jersey, because, for *nearly all* of the venue period, Norwood's assets were *all* elsewhere ................................. 13

    A.    The Bankruptcy Court misread § 1408 .......................................... 14

    B.    For over half of the venue period, Norwood's *only* assets—thus its principal ones—were three sets of assets *outside of* New Jersey. ............. 20

II.    Mandamus is the appropriate remedy where venue is improper. ..................... 25

III.    There are no other means to attain adequate relief. ............................... 27

IV.    Petitioners likely face irreparable injury, and mandamus is appropriate. .......... 30

CONCLUSION ................................................................................ 31

COMBINED CERTIFICATIONS .................................................................. 32

CERTIFICATE OF SERVICE .................................................................... 33

iv

# TABLE OF AUTHORITIES

**Page**

**CASES**

*ACandS, Inc. v. Travelers Cas. & Sur. Co.*,
    435 F.2d 252 (3d Cir. 2006) ................................................................ 24

*Barnes v. Whelan*,
    689 F.2d 193 (D.C. Cir. 1982) ............................................................. 17

*Bockan v. First Am. Mkt'g Corp.*,
    495 F. App'x 157 (3d Cir. 2012) ......................................................... 10

*Boom Co. v. Patterson*,
    98 U.S. 403 (1878) ............................................................................... 20

*Chevron U.S.A. Inc. v. EPA.*,
    45 F.4th 380 (D.C. Cir. 2022) ............................................................. 27

*Cottman Transmission Sys., Inc. v. Martino*,
    36 F.3d 291 (3d Cir. 1994) .................................................................. 26

*D'Oench, Duhme & Co. v. FDIC*,
    315 U.S. 447 (1942) ............................................................................. 23

*First Fid. Bank v. McAteer*,
    985 F.2d 114 (3d Cir. 1993) ................................................................ 24

*Genelink Biosciences, Inc. v. Colby*,
    772 F.Supp.2d 592 (D.N.J. 2010) ....................................................... 20

*GP Credit Co., LLC v. Orlando Residence, Ltd.*,
    349 F.3d 976 (7th Cir. 2003) .............................................................. 21

*Hayman Cash Register Co. v. Sarokin*,
    669 F.2d 162 (3d Cir. 1982) ........................................................ 25, 26

*Hertz Corp. v. Friend*,
    559 U.S. 77 (2010) ............................................................................... 24

*Horne v. Adloph Coors Co.,*
    684 F.2d 255 (3d Cir. 1982) ............................................................. 21

*Ibson v. United Healthcare Servs., Inc.,*
    877 F.3d 384 (8th Cir. 2017) ............................................................ 23

*In re 3M Co.,*
    2020 WL 13924735 (3d Cir. Nov. 18, 2020) ................................... 25

*In re A&D Care, Inc.,*
    86 B.R. 43 (Bankr. M.D. Pa. 1988) ................................................ 24

*In re Aerogroup Int'l Inc.,*
    601 B.R. 571 (Bankr. D. Del. 2019) ............................................... 22

*In re AIO US, Inc.,*
    2025 WL 3036740 (Bankr. D. Del. Oct. 30, 2025) ......................... 30

*In re Apple Inc.,*
    2023 WL 2359699 (Fed. Cir. Mar. 6, 2023) ............................. 26, 30

*In re Apple, Inc.,*
    979 F.3d 1332 (Fed. Cir. 2020) ....................................................... 27

*In re Barrier,*
    776 F.2d 1298 (1985) ....................................................................... 28

*In re Bd. of Directors of Hopewell Int'l Ins. Ltd.,*
    238 B.R. 25 (Bankr. S.D.N.Y. 1999) .............................................. 22

*In re Blixseth,*
    484 B.R. 360 (B.A.P. 9th Cir. 2012) .......................................... 17, 18

*In re Canavos,*
    108 B.R. 55 (Bankr. E.D. Pa. 1989) ............................................... 25

*In re Chamber of Com.,*
    105 F.4th 297 (5th Cir. 2024) ..................................................... 25, 26

*In re Columbia W., Inc.,*
    183 B.R. 660 (D. Mass. 1995) ..................................................... 16, 19

*In re Cosmogony II, Inc.*,
  2022 WL 14929826 (Bankr. D.P.R. Oct. 25, 2022) ................................... 24

*In re Dalton*,
  733 F.2d 710 (10th Cir. 1984) ................................................................. 29

*In re DDMD Trucking, Inc.*,
  2015 WL 381299 (D.N.M. Jan. 28, 2015) ................................................ 16

*In re Del. & Hudson Ry. Co.*,
  96 B.R. 469 (D. Del. 1989) ..................................................................... 29

*In re EDP Med. Computer Sys., Inc.*,
  178 B.R. 57 (M.D. Pa. 1995) .................................................................. 29

*In re Energy Future Holdings Corp.*,
  561 B.R. 630 (Bankr. D. Del. 2016) ........................................................ 21

*In re FCC*,
  217 F.3d 125 (2d Cir. 2000) ................................................................... 13

*In re Flor*,
  79 F.3d 281 (2d Cir. 1996) ..................................................................... 28

*In re Frame*,
  120 B.R. 718 (Bankr. S.D.N.Y. 1990) ..................................................... 15

*In re Hall*,
  988 F.3d 376 (7th Cir. 2021) ............................................................. 26, 27

*In re Handel*,
  253 B.R. 308 (1st Cir. B.A.P. 2000) ....................................................... 15

*In re Horseshoe Ent.*,
  337 F.3d 429 (5th Cir. 2003) .................................................................. 27

*In re Imerys Talc Am., Inc.*,
  38 F.4th 361 (3d Cir. 2022) ...................................................................... 3

*In re Indus. Pollution Control, Inc.*,
  137 B.R. 176 (Bankr. W.D. Pa. 1992) ................................................ 15, 16

*In re J&L Plumbing & Heating, Inc.*,
   186 B.R. 388 (Bankr. E.D. Pa. 1995)................................................................. 22

*In re Kirkland*,
   75 F.4th 1030 (9th Cir. 2023) ........................................................................... 13

*In re LaGuardia Assocs., L.P.*,
   316 B.R. 832 (Bankr. E.D. Pa. 2004) ............................................................... 17

*In re LATAM Airlines Grp. S.A.*,
   2022 WL 1295928 (Bankr. S.D.N.Y. Apr. 29, 2022)....................................... 22

*In re Lemington Home for the Aged*,
   659 F.3d 282 (3d Cir. 2011) ............................................................................. 23

*In re Mainline Contracting, Inc.*,
   2009 WL 3785568 (Bankr. E.D.N.C. 2009) ..................................................... 22

*In re McGraw-Hill Glob. Educ. Holdings LLC*,
   909 F.3d 48 (3d Cir. 2018) ............................................................................... 13

*In re Murrin*,
   461 B.R. 763 (Bankr. D. Minn. 2012)............................................................... 17

*In re Nat'l Presto Indus., Inc.*,
   347 F.3d 662 (7th Cir. 2003) ............................................................................ 30

*In re Newport Creamery, Inc.*,
   265 B.R. 614 (Bankr. M.D. Fla. 2001).............................................................. 17

*In re Nortel Networks*,
   532 B.R. 494 (Bankr. D. Del. 2015).................................................................. 20

*In re Petrie*,
   142 B.R. 404 (Bankr. D. Nev. 1992) ................................................................ 18

*In re Quanta Rsch. Corp.*,
   739 F.2d 912 (3d Cir. 1984).............................................................................. 25

*In re Ryze Claims Sols., LLC*,
   968 F.3d 701 (2020).....................................................................................26, 27

*In re Shorts Auto Parts of Warren, Inc.,*
  136 B.R. 30 (Bankr. N.D.N.Y. 1991) .................................................... 15

*In re Sunac China Holdings Ltd.,*
  656 B.R. 715 (Bankr. S.D.N.Y. 2024) .................................................. 22

*In re Syncora Guarantee Inc.,*
  757 F.3d 511 (2014) .......................................................................... 28, 30

*In re Szanto,*
  2022 WL 4391803 (Bankr. S.D. Cal. July 22, 2022) .............................. 18

*In re TikTok, Inc.,*
  85 F.4th 352 (5th Cir. 2023) ................................................................. 25

*In re Trans-Tex. Petrol. Corp.,*
  33 B.R. 67 (Bankr. N.D. Tex. 1983) ....................................................... 22

*In re Volkswagen of Am., Inc.,*
  545 F.3d 304 (5th Cir. 2008) (en banc) ............................................. 28, 30

*In re Washington, Perito & Dubuc,*
  154 B.R. 853 (S.D.N.Y. 1993) ............................................................... 22

*In re Zilka,*
  407 B.R. 684 (Bankr. W.D. Pa. 2009) .................................................... 23

*Integrated Sols., Inc. v. Serv. Support Specialties, Inc.,*
  124 F.3d 487 (3d Cir. 1997) ................................................................... 23

*Interspec Inc. v. Louderback Transp. Co.,*
  1991 WL 117385 (E.D. Pa. June 24, 1991) ............................................ 11

*Leroy v. Great W. United Corp.,*
  443 U.S. 173 (1979) .............................................................................. 27

*McDonnell Douglas Corp. v. Polin,*
  429 F.2d 30 (3d Cir. 1970) .................................................................... 30

*Oldham v. Pa. St. Univ.,*
  138 F.4th 731 (3d Cir. 2025) ................................................................ 25

*Phillips v. Wash. Legal Found.*,
　524 U.S. 156 (1998) ................................................................ 20

*Reading Health Sys. v. Bear Stearns Co.*,
　900 F.3d 87 (3d Cir. 2018) ...............................................27, 28, 30

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
　549 U.S. 422 (2007) ................................................................ 27

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
　581 U.S. 258 (2017) ................................................................ 26

*Torres v. Barr*,
　976 F.3d 918 (9th Cir. 2020) ..................................................... 14

*United States v. Auernheimer*,
　748 F.3d 525 (3d Cir. 2014) ...................................................... 26

*United States v. Turner*,
　718 F.3d 226 (3d Cir. 2013) ...................................................... 21

*Watkins v. Lundell*,
　169 F.3d 540 (8th Cir. 1999) ..................................................... 20

**STATUTES**

11 U.S.C. § 364(d)(1) ................................................................. 6

11 U.S.C. § 364(e) ..................................................................... 6

11 U.S.C. § 541(a) .................................................................... 23

28 U.S.C. § 158(a)(3) ................................................................ 29

28 U.S.C. § 158(d)(2) .................................................................. 7

28 U.S.C. § 1404(a) .................................................................. 25

28 U.S.C. § 1408 ...............................................................passim

28 U.S.C. § 1651(a) .................................................................. 13

35 U.S.C. § 261........................................................................ 21

x

**RULES**

Fed. R. Bankr. P. 1008 ...................................................................................... 3

Fed. R. Bankr. P. 8006(e) ................................................................................. 7

Fed. R. Bankr. P. 8006(f) .................................................................................. 7

Fed. R. Bankr. P. 9009 ...................................................................................... 3

**OTHER AUTHORITIES**

A. Scalia & Bryan A. Garner, READING LAW ............................................. 15, 18

Bankr. Official Form 201 .................................................................................. 3

BLACK'S LAW DICTIONARY (12th ed. 2024) ..................................................... 24

**INTRODUCTION**

A corporate family of 56 debtors is seeking to pursue bankruptcies in New Jersey even though *none* has had its domicile there, *none* has had its "principal place of business" there, and *55 of 56* indisputably have not had their "principal assets" there. *See* 28 U.S.C. § 1408. And No. 56, MCC-Norwood, LLC ("Norwood"), attested in its petition that it too did not have its principal assets there: It said they were in the same location as its business—Atlanta. So venue was improper across the board.

Norwood amended its petition three weeks later to invoke bank accounts that its parent Multi-Color Corp. opened in Norwood's name and funded with about $1 million of MCC's money 16 days before Debtors filed. But (1) § 1408 asks in which district "the … principal assets" of the debtor "have been located for the [180] days immediately preceding" the petition, or for "a longer portion of" those days than its "principal assets … were located in any other district"; (2) Norwood had *other* assets *throughout* the 180 days; and (3) 16 is less than 180 and even 90. Norwood had *all* of those others for more than 90 days; and it had *most* for all 180, including patents pledged as collateral and $4.9 million in receivables from selling real property. *All* were outside New Jersey. So for 164 days, the accounts *could not be* Norwood's "principal assets."

The Bankruptcy Court, with minimal analysis of statutory text, no analysis of context, and reliance on cases it admitted were not directly on point, invoked general bankruptcy purposes to adopt a last-minute theory proposed by Debtors: Rather than look across the 180-day period, determine which district had Debtors' "principal assets"

on each day, and find venue proper at whichever location had them the longest, the court instead would just take a snapshot on the petition date. Whatever were the principal assets *on just that date*, a court would ask where those were usually located during the period. As the court *admitted*, the former view is "straightforward and logical," whereas the latter "makes venue subject to manipulation." A7. Like here: By just determining that the bank accounts were the principal assets on the petition date, the court ignored *all* of the 164 days before MCC funded them. That was a clear and outcome-determinative legal error.

Petitioners—creditors shut out of this prepackaged, accelerated bankruptcy— seek mandamus relief from the Bankruptcy Court's decision to retain venue of the cases in violation of § 1408 while barreling ahead to a confirmation hearing on *March 31*. In Petitioners' first mandamus petition, they highlighted that Norwood's sworn petition showed venue was improper in New Jersey, so the Bankruptcy Court had no warrant to be entering orders determining rights or opening the venue question to discovery. Debtors and their creditor and equity allies assured this Court not to worry: Norwood's just-amended petition and the Bankruptcy Court's ongoing consideration of motions to dismiss or transfer would resolve everything appropriately. The opposite has happened: The court has gone further off the rails, now less than two weeks out from confirmation. This time, this Court should intervene and put these cases back on track—out of New Jersey and in one of the many courts where venue would be proper for any one of the Debtors.

## RELIEF SOUGHT

Petitioners seek a writ of mandamus (1) directing the Bankruptcy Court to immediately transfer the Chapter 11 cases below to a proper venue selected by this Court, or dismiss them, and (2) vacating all orders entered in the cases.

## ISSUE PRESENTED

Whether, under 28 U.S.C. § 1408(1), venue for a Chapter 11 bankruptcy is proper in New Jersey where debtor's only arguable New Jersey assets were there for only 16 days while it had assets located elsewhere for most of the venue period.

## BACKGROUND

### A.    Norwood's facially deficient original Chapter 11 petition

In a bankruptcy case, venue must be in "the district" in which (i) "the domicile," (ii) the "principal place of business," or (iii) the "principal assets" of the debtor "have been located" for the 180 days immediately before the case commenced (or more of those days than any other place). 28 U.S.C. § 1408(1). If one debtor in a family of entities has proper venue there, venue is proper for its affiliates. § 1408(2).

A debtor commences a Chapter 11 case by filing a petition. It must do so on an official form, and the petition "must be verified." Fed. R. Bankr. P. 1008, 9009. Debtors and their attorneys sign it under penalty of perjury. Bankr. Official Form 201 §§ 17, 18.

Multi-Color Corp. and affiliates ("Debtors") commenced Chapter 11 cases in the District of New Jersey on January 29, 2026. It is styled a "prepackaged" bankruptcy. *See In re Imerys Talc Am., Inc.*, 38 F.4th 361, 367 n.2 (3d Cir. 2022) ("requiring" bankruptcy

courts to "carefully scrutinize [such] prepetition activity"). Of the 56 Debtors, only MCC-Norwood, LLC ("Norwood") claimed in its petition that venue in New Jersey was proper. A174 § 11. All others rely on Norwood's venue, per § 1408(2). *E.g.*, A135.

But Norwood's petition attested to no facts supporting venue in New Jersey; it established the opposite. According to its petition, Norwood is an *Ohio* LLC with a principal place of business in *Georgia*. A172 § 4; A191-92. Where the petition inquires about place of business, it also requests the "[l]ocation of principal assets, *if different* from the principal place of business." A172 § 4 (emphasis added). Norwood's petition left that blank, indicating that the principal assets' location *was not* "different from" its principal place of business—thus, Georgia. *Id.* Responding to "Why is the case filed in *this* district," Norwood checked the conclusion that it "had its domicile, principal place of business, or principal assets in this district" for enough of the relevant period. A174 § 11. It neither stated which of these conclusory options applied nor included any facts bearing on which did.

### B.    The Bankruptcy Court's rejection of "first-day" venue objections from creditor groups and the U.S. Trustee

The next day (January 30), the Bankruptcy Court held its "first-day" hearing. A216-425. Beforehand, a group of several holders of Debtors' unsecured funded debt, Petitioner Cross-Holder Ad Hoc Group ("Group"), filed a motion to dismiss or transfer the case due to improper venue. A211-15.

At the hearing, immediately after Debtors' introductory remarks, the Group objected again, emphasizing that Norwood's petition confirmed that its principal assets had been in Georgia, by failing to indicate any "different" location for them. A235-38. The only arguable "venue hook" was two New Jersey bank accounts, opened in Norwood's name shortly before filing. A2826-31, A3297. But the Group showed that those could not be *principal* assets for the *greater* portion of the 180-day venue period because Norwood had other assets for longer portions. A237-39; A243-45. Petitioner Excluded First Lien Lenders ("Excluded Lenders"), a group of secured creditors, joined the motion. A242.[1] The U.S. Trustee likewise raised "grave concerns" and objected to proposed orders containing "finding[s] that venue is satisfied." A240, 246-47.

The Bankruptcy Court declined to dismiss or transfer. A244-45. It overruled the objections to the proposed orders' venue findings because there was "not enough on this record" to reject venue and, while leaving the issue open, stated: "Until venue is changed, venue remains here in New Jersey." A244-45, 248.

## C.    The DIP Order and others asserting valid venue

The hearing continued the next business day. A426-59. The Group again objected to further proceedings. A433. The Excluded Lenders highlighted that Debtors

---

[1] The Excluded Lenders are non-parties to the pre-petition restructuring support agreement between the Debtors and other creditors (part of the prepackaging) and are excluded from receiving certain benefits that Debtors' proposed post-petition financing and proposed plan of reorganization grant to other secured creditors.

were avoiding unfavorable Delaware bankruptcy-court authority. A437; A369-70 (summarizing authority).

The Bankruptcy Court nonetheless entered fourteen first-day orders, all finding venue proper.[2] One, the "DIP Order," ratified pre-petition agreements to provide the Debtors post-petition financing. A29-132. The DIP Order—to which Petitioners objected on various grounds, including venue—also contains a venue finding. A37.[3]

If effectuated, the DIP Order deprives Petitioners of millions of dollars of recoveries. The Debtors' post-petition financing includes a $250 million "roll up" of *pre*-petition *under*-secured debt into *post*-petition debt that must be *paid in full*. Disclosure Statement, Dkt.18, at 15. It converts millions of dollars of unencumbered assets into collateral for (some) secured creditors' pre-petition claims, reducing unsecured recoveries. The roll-up thereby transfers $133 to $167 million in value from the Group (and similarly situated unsecured creditors) to Debtors' favored creditors and equity holders, for the unsecured portion of their claims. Under the proposed Plan, unsecured creditors would receive, at most, 2.8 cents on the dollar for their pre-petition unsecured debt. *Id.* at 12. The DIP Order, in approving $125 million of the roll-up, already effected

---

[2] Dkts. 84, 86, 88-98.

[3] Among other objections were that the financing was not extended in good faith (11 U.S.C. § 364(e)), that there was not adequate protection of excluded secured creditors (*id.* § 364(d)(1)), and that the "roll-up" was not authorized. Dkt.74, at 13-21; Dkt.75, at 3-8; Dkt.105, at 4-6.

a transfer of $66.5 to $83.5 million, and Petitioners have appealed it. A460-69. The court began a hearing on approving the remainder of the post-petition loans on March 17, which will resume and end on March 23.

Concluding the first-day hearings, the court scheduled the venue motion for a hearing on February 25, later bumped to February 26. A456, Dkt.275. The Debtors received twenty days to respond; the Group had two business days to reply.

### D. The Bankruptcy Court's denial of certification and Petitioners' initial mandamus petition

Petitioners pursued several avenues to obtain timely relief. On February 4, Petitioners requested that the court certify the DIP Order for appeal to this Court to resolve whether a bankruptcy court may retain a case, rather than dismiss or transfer it, when a petition's venue allegations are facially deficient. A470-79 (28 U.S.C. § 158(d)(2); Fed. R. Bankr. P. 8006(f)); *see* A455 (Rule 8006(e)). Debtors objected, downplaying the urgency: "[T]he appeal timeline is very likely going to be measured in months rather than weeks." A491. Again, Debtors did not retract or revise the facts attested in Norwood's petition. The Bankruptcy Court denied certification on February 10. A566-73 (Oral Opinion); A574-77 (Order).

The next day, the Group and Excluded Lenders petitioned this Court for a writ of mandamus. No. 26-01312 (3d Cir., opened Feb. 13, 2026); A578-625. They argued that it was a clear error of law for the court—after immediate, repeated objection to a

facially deficient petition—to continue issuing substantive, venue-dependent orders, while slow-rolling a venue decision. A594-95.

This Court quickly called for a response, due in three days. No. 26-01312, Dkt.2. Debtors responded, as did Clayton, Dubilier & Rice ("CD&R," MCC's controlling private-equity sponsor) and the Secured Ad Hoc Group of Debtor-supporting undersecured creditors. A731-783; A702-730; A665-701. They raised two arguments of note here. *First*, the day before their response was due—and 20 days after venue was objected-to—Norwood filed an amended petition (discussed further below), which Debtors said made the mandamus petition *moot*. A779. *Second*, Respondents contended the mandamus petition was *premature*, because the Bankruptcy Court merely "deferr[ed]" deciding venue. A769, 773. CD&R argued that, if the court eventually denied Petitioners' venue motion, they could "seek … a writ of mandamus at that time." A721. On February 24, this Court denied the petition without an opinion. A784-86.

### E.    Norwood's assets outside of New Jersey

Norwood was formed over a decade ago. A790. In December 2023, it sold its manufacturing facility in Ohio for $4.9 million. A792; A868-944. As it had no bank account, an affiliate received the proceeds. A3092; A3159. Debtors say Norwood has been insolvent, because it guaranteed Debtors' billions in debt. A22; A2995.

But in December 2025, two bank accounts were opened in Norwood's name at an Englewood Cliffs, NJ, branch (in the Newark Division) of ConnectOne Bank. A2826-31. Then on January 13, 2026—16 days before these cases—an *MCC* employee

shuffled about $1 million in *MCC* cash to fund "Norwood's" accounts, a transaction that never appeared in Norwood's accounting records. A3112-14; A3140-42.

Throughout § 1408's 180-day pre-petition period, Norwood had other assets. For the whole period, it owned several U.S. and foreign reciprocal patents, A1092-1138; A1139-1310. Debtors used them as security for prepetition debt. A1322-32. Norwood pays fees to maintain its patents, including during the venue period. A1311-21. And Debtors use Norwood-patented technology. A3105.

Norwood's accounting records meticulously tracked its intercompany balances as "long-term assets." A2876. These balances are Norwood's month-to-month accounts receivable less its accounts payable, within the MCC corporate family. A1038-39. Ordinarily, these balances resulted from other affiliates selling Norwood-manufactured products, retaining the proceeds, and then Norwood's books reflecting that Norwood was owed those proceeds. A1038-39. But these balances also reflected affiliates' other real debts to Norwood, including the proceeds of the 2023 sale of Norwood's Ohio facility. A3159 (those proceeds "increase[d] the intercompany accounts receivable balance"). Considering only those proceeds, Norwood had *at least* $4.9 million in receivables for the whole venue period.

Norwood's monthly balances for *at least* half of the 180-day venue period (102 days) exceeded $102 million. A2976. So the receivables—the assets—were at least that much. That accepts (for the sake of argument) Norwood's balances dropping to $0 because of a supposed "reclassification" on November 12, 2025—within the venue

9

period—allegedly because Norwood stopped operating. A1040. Other affiliates with facilities closed in 2023 retained their balances. A3184-91.

Throughout the venue period, Norwood also had directors-and-officers insurance, among other contract rights. A1333-1474. This policy gave Norwood coverage for directors and officers, reimbursement coverage for indemnifying them, and coverage for itself. A1351.

## F.    Concluded venue proceedings

The U.S. Trustee filed his own motion to dismiss or transfer on February 17. A2946-60. He emphasized that "venue in this District is facially improper" and criticized Debtors' "gamesmanship" of introducing additional facts after filing its petition. A2947-48. Threshold venue disputes, the Trustee explained, are no place for "costly and time-consuming discovery" that "forc[es] creditors to rebut undisclosed and after-the-fact [venue] rationales …." A2948, 2953; *see Bockan v. First Am. Mkt'g Corp.*, 495 F. App'x 157, 158 n.1, 161 (3d Cir. 2012) (courts take complaint's venue facts as true, unless controverted by *defendants*).

Two days later—weeks after the Group's venue motion—Norwood filed an amended petition. A626-664. Norwood now listed the address of the Englewood Cliffs ConnectOne branch as the "[l]ocation of principal assets, if different from the principal place of business." A626. (It never has explained its mutually inconsistent allegations signed under penalty of perjury.) That day, Debtors, CD&R, and the Secured Ad Hoc

10

Group also responded to the venue motions. A2973-3006; A2961-72; A3007-11.[4] The Group filed a timely reply, A3012-32, which the Excluded Lenders joined. A3033-35. The Trustee also filed a timely reply. A3035-45.

The court held a February 26 venue hearing, with testimony, and took the matter under advisement. A3046-3292. Five days later, it requested "supplemental letter briefs" on "whether assets that have no demonstrable economic or monetary value" can be principal assets. A3365. Besides Debtors, the parties filed short, timely letters. Petitioners explained that "principal" means "important" and that difficult-to-value assets are still "principal" whenever they are its *only* assets. A3377-83. Debtors' response was a late 17-page brief. A3384-3400. They newly contended that § 1408 sets out a "two-step analytical sequence." A3388. That is, a court must (1) "look to the assets owned by the debtor *at the time of filing*," and (2) identify where *just those* assets were for longest. A3391 (emphasis added).

On March 16, six weeks after the Group's motion, the Bankruptcy Court denied both motions to dismiss or transfer. A1-28; Dkt.494. While conceding Norwood's initial petition was "sworn" but deficient, the court viewed that defect as, "at most, a possible omission or error," which the amended petition "clarifies." A3-5.

---

[4] Debtors and CD&R asserted, A2980 n.8, A2965-67, that the Group waived its venue objection in an *unaccepted offer* to fund its proposed alternative to Debtors' DIP loans. A1063-91 (Letter); A3029-30 (Group's reply); *cf. Interspec Inc. v. Louderback Transp. Co.*, 1991 WL 117385, at *1 (E.D. Pa. June 24, 1991) ("An unnegotiated forum selection clause does not constitute binding consent."). The court did not find waiver.

11

The court first asserted that § 1408 was "deliberately broad" and recounted unsuccessful legislative efforts to "narrow" it. A4. Then, it adopted Debtors' post-hearing, two-step "Asset-Based Approach." It conceded Petitioners' "Time-Based Approach" was "straightforward and logical"; recognized Debtors' approach "makes venue subject to manipulation"; acknowledged having "not found any case directly on point"; and ultimately described the statutory question as a "jump ball." A7-11. Nevertheless, the court concluded that the ConnectOne accounts were Norwood's principal assets because they were the most important assets "*as of the petition date.*" A8, 11-12. And because they were located in New Jersey for 16 days and *nowhere else* beforehand, it held venue proper in New Jersey. A11-12. The court considered Norwood's receivables valueless, and deemed none of its patents, receivables, or contract rights important enough *on just the petition date* to be principal over the ConnectOne accounts. A14-21. The confirmation hearing is scheduled for March 31.

# ARGUMENT

A circuit court may issue writs of mandamus to lower courts within its jurisdiction, including bankruptcy courts. 28 U.S.C. § 1651(a); *In re Kirkland*, 75 F.4th 1030, 1040 (9th Cir. 2023); *In re FCC*, 217 F.3d 125, 133 (2d Cir. 2000). A petitioner typically must show "(1) a clear abuse of discretion or clear error of law; (2) a lack of an alternate avenue for adequate relief; and (3) a likelihood of irreparable injury." *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 56 (3d Cir. 2018). Petitioners satisfy every requirement.

## I. The Bankruptcy Court committed a clear error of law in holding that venue was proper in New Jersey, because, for *nearly all* of the venue period, Norwood's assets were *all* elsewhere.

The Bankruptcy Court's ruling that venue is proper followed from its misreading of § 1408. The court disregarded statutory text and context, misdescribed cases, and admittedly invited manipulation. Under a correct reading—one the court called "straightforward and logical," A7—the impropriety of venue is also straightforward: Any Norwood assets in New Jersey existed for at most 16 days, so that *could not be* where Norwood's "principal assets" were for more of the 180-day venue period than any other place, unless Norwood did not have other assets. But it did: *three* other sets of assets elsewhere, which all existed for *at least half of the 180-day period* and two of which indisputably existed for *all of it*.

13

### A.    The Bankruptcy Court misread § 1408.

Debtors' post-hearing brief attempted to recast their arguments by saying that § 1408 sets out a "two-step analytical sequence." A3388. In their view, a court must first look at the *time of filing* to identify an entity's principal asset, and then find where it was located for a plurality of the 180-day period. A3391. The Court accepted that despite "not f[inding] any case law directly on point" and conceding it "makes venue subject to manipulation." A9, A11. In choosing that over Petitioners' "straightforward and logical" alternative, A7, the court made a clear error of law.

***First,*** the immediate text calls for identifying "the district" where the debtor's "principal assets … have been located for the [180] days immediately preceding" commencement of the case or "for a longer portion of" that "period" than "the … principal assets … were located in any other district." § 1408(1). Debtors and the court focus on first identifying the principal assets at the moment of filing, but nothing in this language defines those assets as *only* those that existed on the petition date.

The statute calls attention to a 180-day "period" preceding filing, not to the time of filing in itself. *See Torres v. Barr*, 976 F.3d 918, 926 (9th Cir. 2020) ("Congress understands the phrase 'at the time' to refer to a single point in time, and when it wants a statute's reach to endure over a continuous subsequent period, it says so."). Moreover, the statute homes in on whether a *district* had principal assets in *it* for a *plurality* of the *period*, not *what* the principal assets were on *filing day* and whether *they* were located

14

anywhere else. The statute's focus on the district and a time period make assets' location on a single day indeterminate.

The court's constricted reading also is at odds with language contemplating that principal assets may exist somewhere for less than 180 days without suggesting that the petition date must be one of those days. The court forced its reading into the text.

***Second,*** the court ignored context by treating principal assets differently from how courts treat the other options in that subsection—domicile or residence, and principal place of business—and giving no reason for doing so. *Cf.* A. Scalia & Bryan A. Garner, READING LAW § 31 ("Associated-Words Canon"). For those, it is incoherent (and atextual) to ask where they were on the petition date and ignore any earlier locations.

Courts do not follow that illogical approach. When analyzing venue when a debtor's resided in two States for different parts of the venue period, courts tally up how many days the debtor resided in one State and compare that to how many it resided in the other. *In re Handel*, 253 B.R. 308, 310 (1st Cir. B.A.P. 2000) (while a debtor may maintain more than one residence, only the residence he kept most during the 180-day period could ground venue in a district); *In re Frame*, 120 B.R. 718, 720-24 (Bankr. S.D.N.Y. 1990) ("day totalling method"). The same analysis governs venue when a debtor's principal place of business is in two different districts during different parts of the relevant period. *In re Indus. Pollution Control, Inc.*, 137 B.R. 176, 180 (Bankr. W.D. Pa. 1992); *In re Shorts Auto Parts of Warren, Inc.*, 136 B.R. 30, 34 (Bankr. N.D.N.Y. 1991). It

15

would be absurd otherwise: If a debtor moved the day before filing, that new domicile, residence, or "principal" place of business would be the only one that existed on the petition date, and thus the only one that mattered for venue, making the look-back period meaningless.

Nothing supports treating "principal assets" differently, and courts do not. A debtor's principal assets also can change. So to determine where they are "for the longer portion of" the 180-day period, courts compare how many days they are in one district against how many days they are in another—without regard for (or perhaps with suspicion toward) where principal assets happen to be at the moment of filing. *In re Columbia W., Inc.*, 183 B.R. 660, 661-62 (D. Mass. 1995) ("[U]nder § 1408, the Debtor filed its case in an improper District" where it "transferred approximately $10.7 million dollars from a bank in Oregon to a presumably grateful bank in Worcester, Massachusetts," two days before filing in Massachusetts); *Indus. Pollution*, 137 B.R. at 180 ("All of debtor's operable equipment was dispatched to this district … only sixty-seven (67) days prior to [filing]. Debtor's principal assets were located in Georgia for the remaining 113 days."); *In re DDMD Trucking, Inc.*, 2015 WL 381299, at *3 (D.N.M. Jan. 28, 2015) ("[A]lmost all of Debtor's assets were in New Mexico from late 2013 until at least July, 2014. Even assuming Debtor moved all of its assets to Texas in July, 2014, the venue requirement is still met [in New Mexico], as the assets would have been [there] for between 130-160 days of the 180-day pre-petition period.").

16

*Third,* the court relied on off-point cases, as had Debtors. Debtors cited cases that they said showed courts first determining a debtor's most valuable assets on the petition date and then determining where those assets were for the plurality of the venue period. A3390-91. But all but two just establish that, when a debtor has assets in two jurisdictions *simultaneously*, courts may compare their values to determine which jurisdiction's assets are "principal" *for the overlapping period. E.g., In re Newport Creamery, Inc.*, 265 B.R. 614, 617 (Bankr. M.D. Fla. 2001) ("Clearly the assets used in the Debtor's restaurant operations are its 'principal' assets, rather than its 55 percent interest in a recently acquired real estate project."). That is irrelevant where, as here, an entity has assets in one district for a small part of the venue period and assets in another district for a vastly longer part of the period. Debtors' other cases are also irrelevant: One stands for the uncontroversial, irrelevant proposition that an asset the parties *stipulate* is "principal" controls. *In re LaGuardia Assocs., L.P.*, 316 B.R. 832, 835-36 (Bankr. E.D. Pa. 2004). The other discusses principal assets "at the time of filing" only to disclaim any relevance of expected *future* income. *Barnes v. Whelan*, 689 F.2d 193, 205 (D.C. Cir. 1982).

The Bankruptcy Court, while conceding no "case law directly on point," A11, nevertheless parroted some of Debtors' cases (such as *Barnes* and *In re Murrin*, 461 B.R. 763, 788-89 (Bankr. D. Minn. 2012)) and invoked some of its own. Those are also far afield. For example, the court repeatedly cited *In re Blixseth*, which just stands for the proposition that a debtor's intangible interests in two Nevada companies—which

17

everyone agreed *were* his principal assets—were located in Nevada. 484 B.R. 360, 366-67 (B.A.P. 9th Cir. 2012). The court also repeatedly cited *In re Szanto*, 2022 WL 4391803 (Bankr. S.D. Cal. July 22, 2022), saying it "evaluat[ed] assets owned at the time of the bankruptcy filing." A11. It did not: It emphasized that the debtor's most valuable U.S. asset was real property where he "has lived … for the past 22 years." 2022 WL 4391803, at *9. The court similarly cited *In re Petrie*, 142 B.R. 404 (Bankr. D. Nev. 1992), as having "evaluat[ed] principal assets at the time of the commencement of the case." A11. It too did not: It concerned a debtor who resided in Bullhead City, Arizona, "[a]t the time the case was commenced and for at least 180 days prior thereto." 142 B.R. at 404. The debtor's principal assets, also located in Bullhead City "[a]t the time of the commencement of the case," were "cash, furniture, clothing, and shoes." *Id.* That is, personal items accompanying the longstanding residence.[5]

**Finally,** the court's and Debtors' reading is absurd, as the court largely admitted. Petitioners' reading is not.

The court itself offered a hypothetical involving "manipulation" and "workarounds" under Debtors' reading. A9-10. Consider another: A debtor with a

---

[5] Debtors and the court gestured to outlier bankruptcy-court cases contemplating that debtors might establish more than one proper venue based on "principal assets." A2983-84; A8. But venue is proper "in *the* district court for *the* district" that satisfies a given ground. A contrary reading erases the "for a longer portion of" phrase in § 1408(1): Two districts cannot *both* hold a debtor's principal assets for a *longer* portion than any other. Scalia & Garner, READING LAW § 26 (Surplusage Canon).

18

$100,000 piece of real property and a $1 bank account in State A for the first 179 days of the statutory period. It sells the property, moves the proceeds and the cash from its bank account to State B on day 180, and files there. Under the court's view, venue is proper in State B because the debtor's $100,001 in cash in State B at filing is the most valuable—and therefore principal—asset that day, and it was located in State B for a longer period than anywhere else (because it did not exist before the last day). That makes no sense. *In re Columbia W., Inc.*, 183 B.R. at 661-62 (quoted above).

Or consider a debtor who has *no* assets at filing but did earlier in the venue period in a state where it was neither incorporated nor had its principal place of business. Under the court's view, there are apparently *no* "principal assets" for venue purposes, and venue would be improper there.

The court did not identify any absurdity from Petitioners' "logical" approach. A7. It offered a fanciful hypothetical debtor with valuable machinery in Kansas for 170 days, destroyed by a tornado 10 days before the bankruptcy filing, and minimal property in Texas for all 180 days. The court suggested it would be absurd for the Kansas property to control venue. A9. It would not: The tornado might even be the occasion for filing for bankruptcy; even if not, it would not erase debtor's ties to Kansas. And the scenario is in essence what happened in *In re DDMD Trucking*, discussed above (but for the tornado).

19

**B.**     **For over half of the venue period, Norwood's *only* assets—thus its principal ones—were three sets of assets *outside of* New Jersey.**

Applying the test § 1408 actually prescribes, the venue question is easy: One of Norwood's patents, receivables, or contracts (all located outside New Jersey) composed its "principal assets" for a longer portion of the 180-day venue period than the ConnectOne accounts—because the former were Norwood's *only* assets for at least most of that period.

    **1.**     ***Patents.*** Norwood's patents were all assets for the *entire* 180-day look-back period. "A patent confers valuable exclusivity by providing the party holding rights to the patent the ability to prevent others from making, using or selling the patented invention." *In re Nortel Networks*, 532 B.R. 494, 538 (Bankr. D. Del. 2015).

Those rights have *intrinsic* value as a matter of law. *Genelink Biosciences, Inc. v. Colby*, 772 F.Supp.2d 592, 600 n.10 (D.N.J. 2010) ("A patent, regardless if anyone infringes upon it, has value …."); *cf. Boom Co. v. Patterson*, 98 U.S. 403, 408 (1878) ("Property is not to be deemed worthless because the owner allows it to go to waste, or … valueless because he is unable to put it to any use."); *Phillips v. Wash. Legal Found.*, 524 U.S. 156, 170 (1998) (similar; recognizing "possession, control, and disposition" as "valuable rights" inhering in ownership).

Norwood itself, by its conduct, confirmed the patents' value and importance. The patents were *collateral* on Debtors' prepetition debt, so they had value unless pledging them was fraudulent. *Cf. Watkins v. Lundell*, 169 F.3d 540, 546 (8th Cir. 1999)

20

(pledging "worthless property as security" supported fraud finding). And Debtors still use the Norwood-patented technology. So if someone else owned the patent, Debtors would owe licensing fees. Additionally, Norwood pays fees to retain the patents. A1311-21. The court recognized it "would be hard-pressed to find that the Patents have *no* economic or monetary value." A16.

The patents were located in Ohio. *Horne v. Adloph Coors Co.*, 684 F.2d 255, 259 (3d Cir. 1982) ("[B]oth a state trade secret and a patent" are sited "at the residence of the owner."); *GP Credit Co., LLC v. Orlando Residence, Ltd.*, 349 F.3d 976, 979-80 (7th Cir. 2003) ("intangible personal property is located in its owner's domicile" (quotation marks omitted)); 35 U.S.C. § 261 (patents "have the attributes of personal property").

2.      ***Sale Proceeds and Other Receivables.*** Norwood's receivables reflect concrete transactions and existed for *at least most* of the 180-day venue period. The simplest example is the $4.9 million sale of Norwood's Ohio facility. Although Norwood did not receive the cash, the amount was recorded in Norwood's books as a receivable owed to Norwood by its affiliates that did. A3159. Setting aside the "reclassification" of Norwood's intercompany balances on November 12, 2025, Norwood had a readily identifiable intercompany receivable of *at least $4.9 million* for *at least 102 days* of the 180-day period.

That is an asset. *United States v. Turner*, 718 F.3d 226, 236 (3d Cir. 2013) ("Certainly, obligations owed to someone—for instance, their accounts receivable—are 'assets' and therefore property."); *In re Energy Future Holdings Corp.*, 561 B.R. 630, 635

21

(Bankr. D. Del. 2016) ("primary assets were intercompany claims"); *In re Sunac China Holdings Ltd.*, 656 B.R. 715, 728 (Bankr. S.D.N.Y. 2024) ("main assets are intangibles—principally, amounts due from subsidiaries"); *In re Trans-Tex. Petrol. Corp.*, 33 B.R. 67, 68 (Bankr. N.D. Tex. 1983) ("principal assets" were "accounts receivable and inventory.").

That asset affects venue's propriety. *In re J&L Plumbing & Heating, Inc.*, 186 B.R. 388, 391 (Bankr. E.D. Pa. 1995) ("accounts receivable are 'assets,' the proper 'location' of which can" determine "a § 1408 question"); *In re Washington, Perito & Dubuc*, 154 B.R. 853, 861 (S.D.N.Y. 1993) (transferring to district where accounts receivable, debtor's only assets, were located); *In re Mainline Contracting, Inc.*, 2009 WL 3785568, at *2 (Bankr. E.D.N.C. 2009) (similar); *cf. In re Bd. of Directors of Hopewell Int'l Ins. Ltd.*, 238 B.R. 25, 47-48 (Bankr. S.D.N.Y. 1999) (similar, under related statute). Courts do diverge over whether receivables are located at a debtor's principal place of business or where the entity that owes the money is located. *Compare Washington*, 154 B.R. at 861-62, *with J&L Plumbing*, 186 B.R. at 392. But neither Norwood nor its intercompany debtors were located in New Jersey.

Norwood never receiving cash to fulfill its receivables does not make them valueless: "[I]t is common for large, multinational companies to record transactions in ledgers for corporate affiliates that have no bank accounts without the need for an actual cash transfer." *In re LATAM Airlines Grp. S.A.*, 2022 WL 1295928, at *14 (Bankr. S.D.N.Y. Apr. 29, 2022). At most, this speaks to *degree* of value, not whether receivables had *any* value. *See In re Aerogroup Int'l Inc.*, 601 B.R. 571, 593 (Bankr. D. Del. 2019).

22

Debtors also say that "Journal Entry Allocations"—Norwood's records—do not reflect real assets. Debtors' only support is that "MCC-Norwood is not party to any Intercompany Agreement." A2991. But Debtors' expert testified that these Allocations reflected real money owed by MCC affiliates to Norwood, and Debtors identified no reason why writing was required. A3159, 3196-97. That these records were meticulous belies their being meaningless. And at least the Ohio property sale was indisputably real.[6]

**3.    *Insurance.*** Norwood had D&O insurance that covered its directors, officers, and itself during the *entire* 180-day period. A1351. "[I]nsurance policies are …

---

[6] The "reclassification" of receivables is irrelevant because, even accepting that Debtors appropriately eliminated Norwood's receivables on November 12, they existed *before that* for 102 days. In any event, *first*, receivables do not disappear absent a discharge. *Ibson v. United Healthcare Servs., Inc.*, 877 F.3d 384, 388 n.7 (8th Cir. 2017) ("'charge off' (or 'write off') does not extinguish a debt or a legal obligation to pay"); *In re Zilka*, 407 B.R. 684, 687 (Bankr. W.D. Pa. 2009) (collecting cases); *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 461 (1942) (note may be "an asset though it is charged off"). So the Bankruptcy Court, citing no authority, was wrong to disregard these assets. A19. *Second*, discharge (not shown or found here) would not have made Norwood's receivables disappear, because discharge without consideration while Norwood was insolvent would be a fraudulent transfer. *In re Lemington Home for the Aged*, 659 F.3d 282, 290 (3d Cir. 2011) ("fiduciary duties are owed … to the creditors of an insolvent entity."). The resulting cause of action would be a Norwood asset. 11 U.S.C. § 541(a); *Integrated Sols., Inc. v. Serv. Support Specialties, Inc.*, 124 F.3d 487, 490 (3d Cir. 1997). *Third*, the court adopted Debtors' expert's testimony that Norwood's receivables should have been reclassified in 2023 when it sold its Ohio facility. What that has to do with their current existence or value is unclear—as is why reclassification, for this one affiliate, occurred *at all*. A3203-04 ("No, I cannot cite any specific accounting best practice" justifying it); *supra* 9-10.

23

property of the bankruptcy estate." *ACandS, Inc. v. Travelers Cas. & Sur. Co.*, 435 F.2d 252, 260 (3d Cir. 2006). And, like other contract rights, they can be venue-determinative assets in bankruptcy. *In re A&D Care, Inc.*, 86 B.R. 43, 45-47 (Bankr. M.D. Pa. 1988) (debtor's "only asset" was a contract that might be "declared void" but grounded venue elsewhere); *In re Cosmogony II, Inc.*, 2022 WL 14929826, at *6-7 (Bankr. D.P.R. Oct. 25, 2022) (venue improper where principal assets "allegedly consist[ed] of several liability insurance policies" not shown to be in district).

The Bankruptcy Court waved away Norwood's D&O Policy because it "provides contingent, theoretical coverage only." A21. That was error. *First Fid. Bank v. McAteer*, 985 F.2d 114, 116 (3d Cir. 1993) ("insurance policies are property of the estate even though the policy has not matured, has no cash surrender value and is otherwise contingent." (quotation marks omitted)).

*    *    *

Summing up, venue is improper in New Jersey because *any* of Norwood's patents, receivables, and contract rights were its *only*—and therefore *principal*—assets for a longer portion of the venue period than the ConnectOne accounts were funded.[7]

---

[7] All these assets were valuable, as described above. But even if not, they could still be "principal," as Petitioners explained, A3377-80; A3381-83, and the court held, A15-16, because, as Norwood's only assets for the bulk of the venue period, they were by process of elimination its most important. The ordinary meaning of "principal" is "Chief; primary; most important." BLACK'S LAW DICTIONARY (12th ed. 2024); *Hertz Corp. v. Friend*, 559 U.S. 77, 93 (2010) ("The word 'principal' requires us to pick out the 'main, prominent' or 'leading' place."). Moreover, property is an asset even if lacking

24

Grant the bank accounts principal status for the last 16 days of the venue period, for the sake of argument (or even from the date of their opening), and it does not matter. They cannot be the principal assets for a plurality of the 180-day period.

## II.    Mandamus is the appropriate remedy where venue is improper.

Mandamus is the appropriate remedy for a lower court's clear venue error . That is true even where (unlike here) the question is the exercise of *discretion* to transfer a properly venued case, not the more fundamental question of venue's basic propriety. In *In re 3M Co.*, 2020 WL 13924735 (3d Cir. Nov. 18, 2020), for example, this Court granted mandamus to transfer a case from New Jersey to Minnesota, despite venue being proper in New Jersey and the only issue being discretionary transfer under 28 U.S.C. § 1404(a). *Id.* at *2-3; *see Oldham v. Pa. St. Univ.*, 138 F.4th 731, 749 n.10 (3d Cir. 2025) ("mandamus" is the way "to challenge a transfer"); *Hayman Cash Register Co. v. Sarokin*, 669 F.2d 162, 170 (3d Cir. 1982) (granting mandamus to vacate order re-transferring case under § 1406(a)).

Other circuits do similarly. *In re TikTok, Inc.*, 85 F.4th 352, 358 (5th Cir. 2023) (granting mandamus to compel discretionary transfer from Texas to California); *In re Chamber of Com.*, 105 F.4th 297, 300 (5th Cir. 2024) (granting mandamus to vacate

---

value. *In re Quanta Rsch. Corp.*, 739 F.2d 912, 915 (3d Cir. 1984) (trustee can "rid the estate of … worthless assets"); *see In re Canavos*, 108 B.R. 55, 58 n.4 (Bankr. E.D. Pa. 1989) (ascertaining venue, in the alternative, based on debtor's owning valueless stock in a non-operating corporation that was "of principal significance to the Debtor[]").

25

transfer order); *In re Apple Inc.*, 2023 WL 2359699, at *2 (Fed. Cir. Mar. 6, 2023) ("direct[ing]" district court "to decide" discretionary "transfer motion before proceeding to further substantive matters."). In *In re Ryze Claims Sols., LLC*, 968 F.3d 701 (2020), the Seventh Circuit deemed mandamus appropriate for challenging "proper venue" and issued a writ because the district court failed to give "thoughtful consideration" to discretionary factors. *Id.* at 707; *see also In re Hall*, 988 F.3d 376, 380 (7th Cir. 2021) (venue-related mandamus appropriate even without showing "prejudice"). Finally, in *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 581 U.S. 258 (2017), the Supreme Court reversed a circuit court's denial of mandamus relief on a motion to either dismiss or transfer due to improper venue.

When venue orders are successfully challenged, vacatur is appropriate, including of merits orders. *United States v. Auernheimer*, 748 F.3d 525, 529 (3d Cir. 2014) (Because "venue did not lie in New Jersey, we will reverse the District Court's venue determination and vacate Auernheimer's conviction."); *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 292 (3d Cir. 1994) (upon determining venue improper, holding that "a default judgment will be vacated," and case "transferred to the district where the defendant resides and carries on his business"); *Chamber of Com.*, 105 F.4th at 300 (granting mandamus to vacate transfer order); *Hayman Cash Register*, 669 F.2d at 170 (similar).

## III.   There are no other means to attain adequate relief.

"Without the availability of mandamus relief, the question of proper venue escapes meaningful appellate review." *Ryze Claims*, 968 F.3d at 707; *see In re Hall*, 988 F.3d at 379 (similar). That is why circuit courts, including this Court in *3M*, grant mandamus relief for erroneous *discretionary* transfer decisions. *Supra* Arg.II.

Venue is a key threshold protection for a party pulled into a case. So it should be resolved *at the threshold*, *before* a case is resolved. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (courts have "leeway to choose *among threshold* grounds for denying audience to a case on the merits."); *Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979) (venue before personal jurisdiction); *Chevron U.S.A. Inc. v. EPA.*, 45 F.4th 380, 385 (D.C. Cir. 2022) ("[v]enue fits squarely" among "threshold" issues). "Although district courts have discretion as to how to handle their dockets, once a party files a transfer motion, disposing of that motion *should unquestionably take top priority.*" *In re Apple, Inc.*, 979 F.3d 1332, 1337 (Fed. Cir. 2020) (emphasis added); *In re Horseshoe Ent.*, 337 F.3d 429, 433 (5th Cir. 2003) (similar).

In *Reading Health Sys. v. Bear Stearns Co.*, 900 F.3d 87 (3d Cir. 2018), this Court emphasized that "threshold disputes over venue and jurisdiction should be resolved before merits disputes," and thus required honoring a forum-selection clause before considering a motion to compel arbitration. *Id.* at 94-95. Correspondingly, litigation and appellate correction after plan confirmation would likely be pyrrhic. The "harm— inconvenience to witnesses, parties and others—will already have been done by the time

27

the case is tried and appealed, and the prejudice suffered cannot be put back in the bottle." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 318-19 (5th Cir. 2008) (en banc). Resolving "merits disputes at the outset, without first ensuring that venue is proper," can "nullify the very right afforded by" venue requirements. *Reading Health*, 900 F.3d at 95.

Circuit courts recognize that mandamus relief may be *especially* appropriate in bankruptcy cases, whose unique features can render ordinary appeals ineffective. The Sixth Circuit in *In re Syncora Guarantee Inc.*, 757 F.3d 511 (2014), for example, explained that, "[a]lthough mandamus is an 'extraordinary remedy,'" large-scale bankruptcy proceedings are "an extraordinary circumstance" given their "enormous scope and complexity" and how "swiftly" they proceed. *Id.* at 515. Likewise, the Fifth Circuit in *In re Barrier*, 776 F.2d 1298 (1985), granted mandamus to require a stay pending appeal, emphasizing that further proceedings would wreak irreparable harm because a debtor could unilaterally borrow or dispose of assets and "thus effectively undermine the utility of [an] appeal." *Id.* at 1300. Bankruptcy orders may become effectively impossible to unwind after plan confirmation, making appellate-court supervision more necessary "in the bankruptcy context than in ordinary civil litigation." *In re Flor*, 79 F.3d 281, 283 (2d Cir. 1996).

Here, the harm from an improper venue is particularly acute and widespread. *First*, the harm is not limited to a single order, but encompasses the whole case. *Supra* 6-7.

*Second*, the venue defect is especially clear: The Debtors themselves originally affirmed that none had a place of formation, principal place of business, or principal assets in New Jersey. *Supra* Bkgd.A. As the case proceeded, the only alleged New Jersey assets were the ConnectOne accounts. But even assuming they were Norwood's principal assets for 16 days, Norwood had patents, receivables, and insurance for (far) more of the venue period. That ought to have been conclusive. *Supra* Arg.I.B.

*Third*, the schedule to which Debtors' pre-petition agreements hold them means these cases are being litigated almost entirely in an improper venue. The confirmation hearing for Debtors' prepackaged plan is on March 31. Appeal to the District Court cannot be done fast enough—let alone fast enough to realistically seek relief from this Court from an adverse decision. That includes because the denial here is an interlocutory order, which requires seeking leave. *In re Dalton*, 733 F.2d 710, 714-15 (10th Cir. 1984); *In re Del. & Hudson Ry. Co.*, 96 B.R. 469, 472 (D. Del. 1989); *In re EDP Med. Computer Sys., Inc.*, 178 B.R. 57, 59-60 (M.D. Pa. 1995); 28 U.S.C. § 158(a)(3). Even Debtors recognize that an ordinary appeal of the venue issue would likely take months. *Supra* 7.

The problem is structural and pervasive—and the correction needs to be structural, global, and swift. That should include not only transfer to the most convenient proper venue (or else dismissal). It also should include vacatur of all "first-day" and subsequent orders. Writs of mandamus "are supervisory" for situations like this—when issues "also have importance beyond the immediate case" and because

"venue transfer decisions are rarely reviewed." *Volkswagen*, 545 F.3d at 319; *see Apple*, 2023 WL 2359699, at *2 (Federal Circuit issuing writ on venue issue).

## IV.    Petitioners likely face irreparable injury, and mandamus is appropriate.

Petitioners face likely irreparable injury, further supporting mandamus here. Granting mandamus on discretionary-transfer issues, as many circuits have done, depends on recognizing irreparable injury. *Supra* Arg.II. That exists more clearly where, as here, venue is *improper. In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 663 (7th Cir. 2003) ("irreparable harm" where petitioner "would not have an adequate remedy" for failure to transfer by "appeal from an adverse final judgment because it would not be able to show that it would have won the case had it been tried in a convenient forum").

As this Court has explained, "ensuring venue is proper before turning to the merits promotes finality interests and judicial economy." *Reading Health*, 900 F.3d at 96; *McDonnell Douglas Corp. v. Polin*, 429 F.2d 30, 30-31 (3d Cir. 1970) (similar). The stakes are even higher under bankruptcy's "extraordinary circumstances." *Syncora*, 757 F.3d at 515; *In re AIO US, Inc.*, 2025 WL 3036740, at *6 (Bankr. D. Del. Oct. 30, 2025) ("irreparable harm" where reversal of DIP order on appeal would not "restore the appellants' rights" because of bankruptcy-specific equitable-mootness doctrines (quotation marks omitted)).

Mandamus relief now, pre-confirmation, is necessary to ensure Petitioners' injury is remedied in time.

## CONCLUSION

The Court should issue a writ of mandamus as described above in the Relief Sought.

Dated:  March 18, 2026                    Respectfully submitted,


/s Mark T. Stancil                        /s C. Kevin Marshall


Mark T. Stancil                           C. Kevin Marshall
Christopher DiPompeo                      Garrett W. Callen
WILKIE FARR & GALLAGHER LLP               JONES DAY
1875 K St. N.W.                           51 Louisiana Ave. NW
Washington, D.C. 2006-1238                Washington, DC 20001
(202) 303-1133                            (202) 879-3851
mstancil@willkie.com                      ckmarshall@jonesday.com

*Counsel for Excluded First Lien Lenders*  Bruce Bennett
                                          JONES DAY
                                          555 South Flower St., Fiftieth Floor
                                          Los Angeles, CA 90071

                                          Benjamin Rosenblum
                                          Genna L. Ghaul
                                          JONES DAY
                                          250 Vesey Street
                                          New York, NY 10281


                                          *Counsel for Cross-Holder Ad Hoc Group*

# COMBINED CERTIFICATIONS

1.      Per Third Circuit L.A.R. 28.3(d), at least one of the attorneys whose names appear on this petition, including the undersigned, is a member in good standing of the bar of this Court.

2.      This petition complies with the word limit of Fed. R. App. P. 21(d)(1)(1) because, excluding the parts of the document exempted by Fed. R. App. P. 21(a)(2)(C) and 32(f), it contains 7,789 words. This petition complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced 14-point serif font (Garamond), using Microsoft Word.

3.      Per Third Circuit L.A.R. 31.1(c), the text of the electronic version of this document is identical to the text of the paper copies to be filed with the Court.


Dated: March 18, 2026                          /s C. Kevin Marshall

                                               C. Kevin Marshall
                                               *Counsel for Cross-Holder Ad Hoc
                                               Group*

32

## CERTIFICATE OF SERVICE

I hereby certify that on March 18, 2026, the foregoing petition was electronically filed with the Clerk of Court using the appellate CM/ECF system. Service on counsel for all parties in the Bankruptcy Court has been accomplished via email to all parties listed on the Debtors' master service list maintained by the Debtors' noticing agent at https://www.veritaglobal.net/mcc/document/noticelist/1. The Bankruptcy Court is being provided with a paper copy of this filing by United Parcel Service to the Chambers of Hon. Michael B. Kaplan, U.S. Bankruptcy Court, District of New Jersey, 402 East State Street, Trenton, NJ 08608.

Dated: March 18, 2026                    /s C. Kevin Marshall

                                         C. Kevin Marshall
                                         *Counsel for Cross-Holder Ad Hoc Group*

33