# United States Court of Appeals

*for the*

# Third Circuit

Case No. 26-1595

IN RE CROSS-HOLDER AD HOC GROUP and
EXCLUDED FIRST LIEN LENDERS,

*Petitioners.*

ON PETITION FOR A WRIT OF MANDAMUS TO THE UNITED STATES
BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY,
IN NO. 26-10910-MBK, HON. MICHAEL B. KAPLAN

## BRIEF OF THE SECURED AD HOC GROUP IN RESPONSE TO PETITION FOR A WRIT OF MANDAMUS

Matthew E. Beck
 *Counsel of Record*
Thomas M. Walsh
Sam Della Fera, Jr.
**CHIESA, SHAHINIAN
 & GIANTOMASI PC**
105 Eisenhower Parkway
Roseland, NJ 07068
(973) 325-1500
mbeck@csglaw.com
twalsh@csglaw.com
sdellafera@csglaw.com

Evan R. Fleck
Matthew Brod
Alexander B. Lees
**MILBANK LLP**
55 Hudson Yards
New York, NY 10001
(212) 530-5000
efleck@milbank.com
mbrod@milbank.com
alees@milbank.com

Colleen E. Roh Sinzdak
Melanie Westover Yanez
Hannah A. Blazek
**MILBANK LLP**
1101 New York Avenue, NW
Washington, DC 20005
(202) 835-7500
crohsinzdak@milbank.com
mwyanez@milbank.com
hblazek@milbank.com

*March 23, 2026*　　　　　*Counsel for the Secured Ad Hoc Group*

 COUNSEL PRESS    (800) 4-APPEAL • (391711)

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1 and Third Circuit Rule 26.1, Respondent the Secured Ad Hoc Group disclose as follows:

Respondent Anchorage Capital Advisors, L.P. is a subsidiary of Anchorage Capital Group, L.L.C.  No publicly held corporation directly owns 10% or more of Anchorage Capital Advisors, L.P.'s equity.  No publicly held corporation which is not a party to the proceeding before this Court has a financial interest in its outcome.

Respondent Apollo Capital Management, L.P. is an indirect subsidiary of Apollo Global Management, Inc., a publicly held corporation which indirectly owns 10% or more of Apollo Capital Management, L.P.'s equity.  No other publicly held corporation which is not a party to the proceeding before this Court has a financial interest in its outcome.

Respondent Ares Management LLC is an indirect subsidiary of Ares Management Corporation, a publicly held corporation.  No publicly held corporation directly owns 10% or more of Ares Management LLC's equity.   No publicly held corporation which is not a party to the proceeding before this Court has a financial interest in its outcome.

Respondent Arini Capital Management Limited is a subsidiary of Arini Capital Management Asset Holdco (Jersey) Limited.  No publicly held corporation directly owns 10% or more of Arini Capital Management Limited's equity.  No

publicly held corporation which is not a party to the proceeding before this Court has a financial interest in its outcome.

Respondent Benefit Street Partners L.L.C. is a direct subsidiary of Franklin Resources, Inc., a publicly held corporation which owns 10% or more of Benefit Street Partners L.L.C.'s equity. No other publicly held corporation which is not a party to the proceeding before this Court has a financial interest in its outcome.

Respondent BlackRock Financial Management, Inc. is a consolidated subsidiary of BlackRock, Inc. BlackRock, Inc. is a publicly held corporation that owns 10% or more of the equity of BlackRock Financial Management, Inc. No publicly held corporation which is not a party to the proceeding before this Court has a financial interest in its outcome.

Respondent J.P. Morgan Investment Management Inc. is an indirect subsidiary of JP Morgan Chase & Co., a publicly held corporation which indirectly owns 10% or more of J.P. Morgan Investment Management, Inc.'s equity. Respondent JPMorgan Chase Bank, N.A. is a direct subsidiary of JPMorgan Chase & Co., a publicly held corporation which owns 10% or more of JP Morgan Chase Bank, N.A.'s equity. No other publicly held corporation which is not a party to the proceeding before this Court has a financial interest in its outcome.

Respondent KKR Credit Advisors (US) LLC is a subsidiary of KKR Credit Holdco LLC. KKR & Co., Inc. is a publicly held corporation which indirectly owns

10% or more of KKR Credit Advisors (US) LLC's equity. No other publicly held corporation which is not a party to the proceeding before this Court has a financial interest in its outcome.

Respondent Lord, Abbett & Co. LLC has no parent and no publicly held corporation directly owns 10% or more of its equity. No publicly held corporation which is not a party to the proceeding before this Court has a financial interest in its outcome.

Respondent Principal Global Investors, LLC is a subsidiary of Principal Global Investors Holding Company (US), LLC. Principal Financial Group, Inc., a publicly held corporation, indirectly owns 10% or more of Principal Global Investors, LLC's equity. No other publicly held corporation which is not a party to the proceeding before this Court has a financial interest in its outcome.

iii

Respectfully submitted,

Dated: March 23, 2026

/s/ *Matthew E. Beck*

Matthew E. Beck
Thomas M. Walsh
Sam Della Fera, Jr.
**CHIESA SHAHINIAN & GIANTOMASI PC**
105 Eisenhower Parkway
Roseland, New Jersey 07068
(973) 325-1500
mbeck@csglaw.com
twalsh@csglaw.com
sdellafera@csglaw.com

Evan R. Fleck
Matthew Brod
Alexander B. Lees
**MILBANK LLP**
55 Hudson Yards
New York, New York 10001
(212) 530-5000
efleck@milbank.com
mbrod@milbank.com
alees@milbank.com

Colleen E. Roh Sinzdak
Melanie Westover Yanez
Hannah A. Blazek
**MILBANK LLP**
1101 New York Avenue, NW
Washington, DC 20005
(202) 835-7500
crohsinzdak@milbank.com
mwyanez@milbank.com
hblazek@milbank.com

*Counsel for the Secured Ad Hoc Group*

iv

**TABLE OF CONTENTS**

INTRODUCTION ...........................................................................................1

BACKGROUND ............................................................................................5

I.      The bankruptcy petitions and the first day hearings........................5

II.     Petitioners' venue objections.............................................................7

III.    Petitioners' second mandamus petition and pending district court appeal .....9

ARGUMENT ..............................................................................................10

I.      Petitioners cannot use mandamus to try to invalidate the bankruptcy court's DIP financing order. .........................................................................10

II.     In any event, Petitioners cannot establish any of the basic requirements for mandamus. ......................................................................................12

        A.      Petitioners cannot establish that the bankruptcy court clearly and indisputably erred. ......................................................12
        B.      Petitioners have—and are pursuing—adequate alternative remedies.......................................................................17
        C.      Petitioners cannot demonstrate irreparable injury. ...........19

CONCLUSION ...........................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Abbott Lab'ys*,
  96 F.4th 371 (3d Cir. 2024) ....................................................1, 10, 12, 14, 15, 19

*Barnes v. Whelan*,
  689 F.2d 193 (D.C. Cir. 1982)..................................................................15, 16

*In re Boy Scouts of Am.*,
  137 F.4th 126 (3d Cir. 2025) ....................................................................11, 21

*In re Briscoe*,
  448 F.3d 201 (3d Cir. 2006) ...........................................................................17

*Cheney v. U.S. Dist. Ct. for D.C.*,
  542 U.S. 367 (2004)........................................................................................10

*Dawsey v. Gov't of Virgin Islands*,
  931 F. Supp. 397 (D.V.I. 1996), *aff'd*, 106 F.3d 384 (3d Cir. 1996) .................19

*Def. Distributed v. Att'y Gen.*,
  167 F.4th 65 (3d Cir. 2026) ...........................................................................18

*In re Diet Drugs (Phentermmine/Fenfluramine/Dexfenfluramine)*
  *Prods. Liab. Litig.*,
  418 F.3d 372 (3d Cir. 2005) ...........................................................................17

*Hayman Cash Register Co. v. Sarokin*,
  669 F.2d 162 (3d Cir. 1982) .........................................................................3, 21

*In re Hertz Corp.*,
  120 F.4th 1181 (3d Cir. 2024) .......................................................................15

*In re Kensington Int'l Ltd.*,
  353 F.3d 211 (3d Cir. 2003) ...........................................................................18

*Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting*,
  908 F.2d 1351 (7th Cir. 1990) ........................................................................21

*Kousisis v. United States*,
   605 U.S. 114 (2025)........................................................................15

*Lauro Lines s.r.l. v. Chasser*,
   490 U.S. 495 (1989)........................................................................18

*In re McGraw-Hill Glob. Educ. Holdings LLC*,
   909 F.3d 48 (3d Cir. 2018) ............................................................12

*Pa. Bureau of Correction v. U.S. Marshals Serv.*,
   474 U.S. 34 (1985)....................................................................11, 12

*In re Swedeland Dev. Grp., Inc.*,
   16 F.3d 552 (3d Cir. 1994) ...........................................................11

*In re Van Dusen*,
   654 F.3d 838 (9th Cir. 2011) ........................................................14

**Statutes**

11 U.S.C. § 364........................................................2, 3, 10, 11, 12, 21

28 U.S.C. § 1408 .................................. 1, 3, 5, 6, 8, 9, 12, 13, 14, 15, 16

28 U.S.C. § 1651 ...........................................................................11

The ad hoc group of secured first-lien lenders and noteholders (the "<u>Secured Ad Hoc Group</u>"), by and through its undersigned counsel, hereby submits this Response in Opposition to the Petition for Writ of Mandamus filed by the self-titled Cross Holder Ad Hoc Group and the purported Excluded First Lien Lenders.

**INTRODUCTION**

For the second time in a matter of weeks, Petitioners ask this Court for the extraordinary relief of a writ of mandamus based on the assertion that the bankruptcy court indisputably erred by finding that venue is proper in the district in which debtor MCC-Norwood, LLC has its principal assets—two bank accounts worth over $1 million. This Court had no trouble rejecting that implausible contention the first time around, and the result should be the same for this retread.

It is black letter law that a court may grant mandamus only where the petitioner can show a "clear and indisputable" error, the absence of any alternative avenue for relief, and that mandamus will prevent an irreparable harm. *In re Abbott Lab'ys*, 96 F.4th 371, 379 (3d Cir. 2024) (quotation omitted). Here, Petitioners cannot show an indisputable error because they cannot point to a single case adopting their view that 28 U.S.C. § 1408 requires a bankruptcy court to disregard a debtor's principal assets if they have been recently acquired. They cannot show the absence of an alternative avenue for relief because they are *already pursuing* a district court appeal on the basis of improper venue. And their assertion that mandamus would

1

avoid irreparable harm relies on the erroneous premise that transferring venue somehow necessitates invalidating all the orders issued by the pre-transfer court.

This last point gives away the game. Petitioners do not really object to venue in New Jersey; they object to the bankruptcy court's approval of debtor-in-possession ("DIP") financing different from the one they championed. When Petitioners submitted their competing DIP financing proposal, they committed that they would "irrevocably and unconditionally agree[] that all claims in respect of the Chapter 11 Cases may be heard in the Bankruptcy Court" in the District of New Jersey, and that they would "waive any objection to the laying of venue of any such suit, action or proceeding brought in any such court and any claim that any such suit, action or proceeding has been brought in any inconvenient forum." Bankr. Dkt. No. 78, Ex. 1 (Backstop Letter, dated as of January 30, 2026). By their own admission, Petitioners have abandoned that position and pressed (and repressed) their venue challenges only because their DIP financing offer was "*unaccepted*." Pet. 11 n.4. In other words, Petitioners are seeking to use this mandamus petition about venue to try to get before a different bankruptcy court that they are hoping will make a different merits decision about their DIP financing proposal.

Even worse, Petitioners are resorting to this misuse of mandamus in an effort to override Congress's choice to protect the finality of DIP financing orders. Congress enacted 11 U.S.C. § 364(e) to prohibit an appeal from "affect[ing] the

2

validity of" an approved DIP financing unless the objecting party obtains a stay pending appeal. Petitioners failed to seek a stay here yet evidently hope to achieve an end-run around section 364(e) by convincing this Court to grant mandamus, vacate the DIP financing order, and allow them to start over in another venue.

This Court should not permit such an egregious abuse of the writ. While this Court has occasionally granted mandamus in the face of an obviously erroneous venue determination that cannot be redressed through the standard appellate process, those circumstances are entirely absent here. The bankruptcy court issued a thoughtful decision confronting a question of first impression and concluding, unremarkably, that under section 1408(1) of the Judicial Code, venue may lie in the district where the debtor's principal assets are presently located, even if recently acquired. And Petitioners are currently pressing their venue objection in the district court through the standard bankruptcy appeal process, with an appeal to follow in this Court should any party choose to pursue one.

Moreover, Petitioners are simply wrong that transferring venue now would require vacating all the orders the bankruptcy court has issued so far. This Court has squarely held that after transfer for lack of venue, the law of the case doctrine applies to the orders of the transferor court—even when those pre-transfer orders concerned the propriety of the transfer itself. *Hayman Cash Register Co. v. Sarokin*, 669 F.2d 162, 169-70 (3d Cir. 1982). And without their spurious vacatur argument, Petitioners

3

have no basis for establishing irreparable harm. Petitioners have not even attempted to claim that hearing the bankruptcy case in New Jersey imposes the sorts of geographical inconvenience with which the venue statutes are concerned. Nor could they, given that they conceded venue would be proper in New Jersey if only their DIP financing proposal had been accepted, and the only alternate venue they have ever suggested is Delaware—a mere 62 miles away.

Petitioners are a minority creditor constituency and have been using every procedural mechanism they can conceive to disrupt the Debtors' reorganization efforts since their DIP financing proposal was rejected. The Debtors have proposed and solicited votes for a chapter 11 plan, and all creditor classes—including the class to which Petitioners belong—have voted to accept the plan or are otherwise left unimpaired by it. The hearing to confirm this plan is just days away, scheduled to occur on March 31. It is obvious that Petitioners are doing everything in their power to prevent the reorganization from occurring, notwithstanding that creditor democracy played out and demonstrated that Petitioners are soundly outvoted. Gamesmanship is not a valid reason to request an extraordinary writ from this Court. Because Petitioners do not come close to satisfying the stringent requirements for mandamus relief, this petition (like the last one) should be swiftly denied.

**BACKGROUND**

**I.    The bankruptcy petitions and the first day hearings**

On January 29, 2026, Multi-Color Corporation and fifty-five affiliated debtors—including MCC-Norwood, LLC ("Norwood")—commenced chapter 11 cases in the United States Bankruptcy Court for the District of New Jersey. The cases are "prepackaged," meaning the Debtors solicited creditor votes for their chapter 11 plan before the petition date, and entered bankruptcy with the creditor support necessary for confirmation under the Bankruptcy Code. All creditor classes (including the one to which Petitioners belong) voted to accept the plan or are left unimpaired by it, and a confirmation hearing has been scheduled for March 31, 2026.

Norwood's principal assets are two bank accounts maintained at ConnectOne Bank, a financial institution with a branch in Englewood Cliffs, New Jersey. A243; A2826-31. Norwood thus filed a petition asserting that venue was proper in the District of New Jersey under 28 U.S.C. § 1408(1) because Norwood "has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district." A174 § 11.

Norwood's sworn attestation, made under penalty of perjury, facially established the factual predicate for venue in New Jersey. A135. But Norwood initially neglected to fill in the section of the sworn bankruptcy petition requesting

5

identifying information for the "[l]ocation of principal assets, if different from the principal place of business." A172 § 4. When the bankruptcy court questioned Norwood's counsel about this omission at the first-day hearings, counsel quickly explained that venue was based on the New Jersey bank accounts and offered to call a witness in support. A243:6-16. The bankruptcy court declined the offer and instead made a preliminary finding that venue was proper for Norwood (A244-45, 248) and therefore for the remainder of the debtors, which could rely on Norwood's petition to establish venue (*see* 28 U.S.C. § 1408(2) (authorizing venue where a case filed by a related entity is pending in the same district)). The bankruptcy court then scheduled a full evidentiary hearing on venue for a few weeks later. A244-45, 248.

At the first-day hearings, the bankruptcy court also heard several emergency motions by the Debtors seeking emergency relief. These first-day motions were designed to fund the operations of the Debtors' business during the chapter 11 cases; allow them to pay employee wages, utilities, insurance, critical vendors; and satisfy other critical needs to enable the business to remain viable. A29-132; A37; A401. Among the first-day motions was a request for approval of the Debtors' proposed $150 million new-money DIP financing—post-petition financing the Debtors desperately needed because they were on the verge of running out of cash. *Id.* The bankruptcy court granted these first-day motions, including authorizing $125 million in new-money DIP financing. *Id.*

## II.    Petitioners' venue objections

Petitioners are an ad hoc group of creditors that support a different DIP financing than the one the Debtors proposed and the bankruptcy court approved in its first-day orders. A346:3-11; A367:7-13. Aware that Debtors would not support their favored DIP financing and convinced that their financing had a better chance of success before a Delaware bankruptcy judge, Petitioners filed a motion to transfer venue or dismiss the cases just before the first-day hearings began. A211; A369:19-A370:1. Petitioners simultaneously made clear, however, that they "irrevocably and unconditionally agree[d] that all claims in respect of the Chapter 11 Cases may be heard in the Bankruptcy Court" in New Jersey if that bankruptcy court was willing to approve their preferred DIP financing instead. Bankr. Dkt. No. 78, Ex. 1 (Backstop Letter, dated as of January 30, 2026).

When the bankruptcy court did not immediately grant the venue motion and approved the Debtors' DIP financing on an interim basis, Petitioners sought certification of the interim DIP order for direct appeal to this Court. A470-79. The bankruptcy court denied that request on February 10. A566-73 (Oral Op.); A574-77 (Order). The following day, Petitioners filed their first mandamus petition with this Court, seeking an order directing the bankruptcy court to transfer or dismiss the chapter 11 cases immediately and vacate all previously entered orders. A578-625. This Court denied the petition without opinion on February 24. A784-86.

7

In the meantime, the bankruptcy court moved forward with its stated intention to have a full evidentiary hearing on venue. In preparation for that hearing, the parties engaged in extensive discovery on venue, making substantial productions in response to broad document requests and participating in depositions of fact and expert witnesses. And on February 26, the bankruptcy court held the hearing, at which both sides presented live witness testimony and documentary evidence. A3046-3291. The court then requested supplemental briefing to address whether assets with no demonstrable economic or monetary value can constitute "principal assets" under section 1408 (A3365) which the parties submitted (A3366-3400).

On March 16, the bankruptcy court issued a thorough written opinion denying the request to dismiss or transfer. A1-28. The bankruptcy court recognized that because section 1408(1) of the Judicial Code permits venue in the district where the Debtors "principal assets . . . have been located" over the last 180 days or the "longest portion" of that time, the court was required first to identify Norwood's principal assets as of the petition date and then figure out the place in which those assets had been located for the bulk of the last 180 days. A7-A11.

Applying that framework, the bankruptcy court found that the ConnectOne accounts constituted Norwood's principal assets as of the petition date and that those accounts were located in New Jersey for the longer portion of the lookback period than they were located in any other district, thereby establishing proper venue under

8

section 1408(1). A8, 11-12. The court carefully considered and rejected each of Petitioners' competing theories—which revolved around the assertion that the bankruptcy court should focus on the location of Norwood's worthless patents and accounts receivable. A14-21.

### III. Petitioners' second mandamus petition and pending district court appeal

Two days after the bankruptcy court issued its venue decision, and only thirteen days before the confirmation hearing scheduled for March 31, Petitioners filed the instant petition—their second in this case, coming approximately three weeks after this Court denied the first. *Compare In re Cross Holder Ad Hoc Grp.*, No. 26-1312 (3d Cir. Feb. 24, 2026), *with* Case No. 26-1595 (filed Mar. 18, 2026). This time, Petitioners assert that the bankruptcy court's considered interpretation of section 1408(1)—reached after extensive briefing, live witness testimony, and oral argument—constitutes a "clear error of law." Pet. at 13. They once again seek transfer or dismissal of the cases and vacatur of all orders entered to date, including the interim DIP order. Pet. at 3.

At the same time, Petitioners are pursuing an appeal based on their venue challenge before the district court. In appealing the bankruptcy court's interim DIP order, Petitioners' first argument for reversal is that "the Bankruptcy Court erred in finding that venue was appropriate." Bankr. Dkt. No. 260. That appeal is currently pending in the district court, and the deadline for the Cross Holder Ad Hoc Group's

opening brief in that appeal is April 20. *Cross-Holder Ad Hoc Grp. v. Multi-Color Corp.*, No. 3:26-cv-1061 (ZNQ), Dkt. No. 8 (D.N.J. Mar. 18, 2026).

## ARGUMENT

A writ of mandamus is a "drastic and extraordinary remedy reserved for really extraordinary causes." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004). It is never granted as of right, and it is available only when a petitioner can show clear entitlement to extraordinary relief. *Abbott Lab'ys*, 96 F.4th at 379. Petitioners cannot come close to making that showing here, where they seek mandamus with respect to venue in a misguided effort to get themselves in front of a different bankruptcy judge, who they believe will look more favorably on their objection to the Debtors' DIP financing.

## I. Petitioners cannot use mandamus to try to invalidate the bankruptcy court's DIP financing order.

Petitioners' request for mandamus should be denied for the simple reason that it seeks to circumvent the congressionally enacted prohibition on appellate revision of DIP financings. Section 364(e) of the Bankruptcy Code prevents any "reversal or modification on appeal of" DIP financing from "affect[ing] the validity of any debt so incurred, or any priority or lien so granted" if the financing was extended in good faith, absent a stay pending appeal. Section 364(e), like its companion provision section 363(m), "promote[s] the policy of … finality" of DIP financing orders (*In re Boy Scouts of Am.*, 137 F.4th 126, 149 (3d Cir. 2025)), thereby assuring lenders "that

so long as they are relying in good faith on a bankruptcy judge's approval of the transaction they need not worry about their priority merely because some creditor is objecting to the transaction and is trying to get the district court or the court of appeals to reverse the bankruptcy judge." *In re Swedeland Dev. Grp., Inc.*, 16 F.3d 552, 561 (3d Cir. 1994) (quotation omitted).

Petitioners failed to seek a stay pending appeal of the interim DIP order, which included a finding that the DIP lenders acted in good faith. This mandamus petition therefore is a blatant attempt to evade the protections of section 364(e) by seeking "vacatur of all 'first-day' and subsequent orders" as a remedy for an alleged venue defect. Pet. at 29. Were there any doubt about Petitioners' improper motive for mandamus, it would be resolved by their previous commitment to stipulate that venue would be proper in New Jersey if only the bankruptcy court would accept their alternative DIP financing proposal. Bankr. Dkt. No. 78, Ex. 1 (Backstop Letter, dated as of January 30, 2026).

This Court should not condone such a gross misuse of mandamus. The All Writs Act authorizes the Court to "issue all writs necessary or appropriate in aid of [its] jurisdiction[] and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). "[I]t does not authorize [courts] to issue ad hoc writs whenever compliance with statutory procedures appears inconvenient or less appropriate." *Pa. Bureau of Correction v. U.S. Marshals Serv.*, 474 U.S. 34, 43 (1985). And it certainly

11

does not authorize courts to assist litigants in circumventing section 364(e) of the Bankruptcy Code and the congressional decision about the finality of DIP financing orders that that provision embodies.

## II.    In any event, Petitioners cannot establish any of the basic requirements for mandamus.

### A.    Petitioners cannot establish that the bankruptcy court clearly and indisputably erred.

The "high bar" for mandamus requires Petitioners to show a clear and indisputable right to relief. *Abbott Lab'ys*, 96 F.4th at 379. This Court and the Supreme Court have described this prong as requiring Petitioners to "demonstrate a 'clear abuse of discretion,' or conduct amounting to 'usurpation of [the judicial] power.'" *Id.* (quoting *Mallard v. U.S. Dist. Ct. for S. Dist. of Iowa*, 490 U.S. 296, 309 (1989)) (alteration in original). Everything short of that—including simple "reversible error"—will not do. *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 57 (3d Cir. 2018) (quoting *In re Lloyd's Register N. Am., Inc.*, 780 F.3d 283, 290 (5th Cir. 2015)).

Petitioners do not even approach this threshold. In the decision under review, the bankruptcy court recognized that 28 U.S.C. § 1408(1) provides that venue is proper where the debtor's "principal assets … have been located for the one hundred and eighty days immediately preceding" the commencement of the chapter 11 cases, "or for a longer portion" of the 180-day period "than the … principal assets … were

12

located in any other district." The court then found that this text is best read to require a court to identify the debtor's principal assets and then to figure out where those assets have been located for the bulk of the lookback period. Here, that task was not particularly difficult because Norwood had over a million dollars in bank accounts in New Jersey when it filed for bankruptcy, and Norwood did not have anything else of value before the funds were transferred into its accounts. Since those accounts are Norwood's principal assets, and never were located outside New Jersey, venue is appropriate in the District of New Jersey.

Petitioners assert that this interpretation and application of section 1408 was "clearly and indisputably" wrong because the court should have looked to the location of worthless patents and accounts receivable that Norwood had when the 180-day lookback period began, rather than looking at the location of the million-dollar bank accounts Norwood had acquired more recently. In Petitioners' view, this application of section 1408 makes sense because the term "principal assets" does not refer to the funds and property that account for the majority of debtor's assets at the time the bankruptcy case is filed. Instead, they say, the term refers to any items that—at some point in the last 180 days—would have qualified as petitioner's "principal assets," even if they are worthless and even if they are plainly *not* petitioner's principal assets when the bankruptcy case commences.

Whatever this Court may think of the merits of Petitioners' convoluted reading of section 1408, it cannot be said that the bankruptcy court "clearly and indisputably" erred in rejecting it because Petitioners cannot point to a single case embracing their view. To the contrary, they forthrightly concede that there is "no 'case law directly on point.'" Pet. at 17 (quoting A11). That concession is fatal because this Court has squarely held that where there is "no binding precedent that squarely answers th[e] question," mandamus is improper. *Abbott Lab'ys*, 96 F.4th at 380. "Without such authority, mandamus petitioners 'do not come close to demonstrating' that the [trial court] committed a clear error or an abuse of discretion." *Id.* (quoting *Republic of Venezuela v. Philip Morris, Inc.*, 287 F.3d 192, 199 (D.C. Cir. 2002)); *accord In re Van Dusen*, 654 F.3d 838, 845 (9th Cir. 2011) (no clear and indisputable error in "[t]he absence of controlling precedent").

Instead of relying on controlling Circuit or Supreme Court precedent, Petitioners rely on inapposite, out-of-circuit decisions dealing with different aspects of section 1408, such as residence and domicile. Pet. at 15-16. But this Court has already made clear that such out-of-circuit authorities are "simply not the stuff of which binding authority is cast." *Abbott Lab'ys*, 96 F.4th at 380 (internal quotation marks omitted). Out-of-circuit precedent addressing different aspects of the relevant statutory provision are obviously even further afield. And without "binding authority to guide it," the bankruptcy court's decision could not have been the "usurpation of

judicial power" that mandamus demands. *Id.* at 381. That failure alone is enough to deny the petition.

Even putting aside the lack of controlling authority, Petitioners cannot persuasively establish that the bankruptcy court committed any legal error, let alone a clear and indisputable one. The bankruptcy court held that, under section 1408, a court must identify the debtor's "principal assets" as they exist at the time the petition is filed and then figure out where those assets have been during the lookback period. That interpretation comports with the plain text of the statute, and the way the term "principal assets" has long been understood in bankruptcy law.

As the D.C. Circuit explained almost half a century ago in *Barnes v. Whelan*, 689 F.2d 193, 205 (D.C. Cir. 1982), "the term 'principal assets' has a long history under prior law. It appeared primarily in the context of corporation reorganizations, and generally referred to property owned by the corporation *at the time of filing*." (footnote omitted; emphasis added). When Congress employs a term of art with an established meaning, courts "generally presume that the term 'brings the old soil with it.'" *Kousisis v. United States*, 605 U.S. 114, 124 (2025) (quoting *Sekhar v. United States*, 570 U.S. 729, 733 (2013)). And that presumption holds true for "pre-Code" bankruptcy practice too. *In re Hertz Corp.*, 120 F.4th 1181, 1198 (3d Cir. 2024) (Ambro, J.). For that reason, Petitioners' assertion that "nothing in [section 1408(1)] defines [principal] assets as *only* those that existed on the petition

15

date" fails: the term "principal assets" carries that straightforward meaning consistent with its historical pedigree. *Barnes*, 689 F.2d at 205 nn.19 & 20.

Failing on text, Petitioners fall back on policy arguments, asserting that the bankruptcy court's interpretation of section 1408 will lead to the manipulation of venue. Policy arguments are hardly enough to show clear error—and Petitioners' arguments are particularly bad because policy plainly favors the bankruptcy court's interpretation. By focusing on the location of the debtor's principal assets as they exist at the time of the filing, the bankruptcy court's reading of section 1408 ensures that venue will lie in the district in which the creditors are most likely to seek to enforce their rights against the debtor. And it ensures that bankruptcy cases, which are fundamentally *in rem* proceedings focused on the distribution of the property of the debtor, can occur in the location where the debtor is keeping its most valuable property while the case occurs.

By contrast, Petitioners' rule could result in a finding that venue is proper in a district where the debtor has only worthless items that once constituted its principal assets but are now virtually irrelevant to creditors and the bankruptcy court. Nor can Petitioners justify their rule through their concerns about manipulating venue, as those cut both ways. Petitioners object because the Debtors sought to establish venue in the district where Norwood currently holds the majority of its assets on the ground that those exceedingly valuable assets were only recently acquired. But one could

16

imagine that another set of creditors might object if the Debtors asked the court to *disregard* Norwood's extremely valuable assets in assessing venue and focus instead on assets that are insignificant to creditor recoveries. And whichever set of creditors might have the better of this policy argument, it plainly cannot be said that a court would "clearly and indisputably" err by siding with one set over another. Mandamus relief is foreclosed in these circumstances.

### B. Petitioners have—and are pursuing—adequate alternative remedies.

Petitioners have failed to establish the second fundamental requirement for mandamus relief: the absence of an adequate alternative remedy. This requirement "emanates from the final judgment rule" and cautions that "mandamus must not be used as a mere substitute for appeal." *In re Diet Drugs (Phentermmine/Fenfluramine/Dexfenfluramine) Prods. Liab. Litig.*, 418 F.3d 372, 379 (3d Cir. 2005) (quotation omitted). This Court has explained that "[a]n appellate court's overuse of the writ to review interlocutory district court decisions would undermine the Congressional policy against piecemeal appeals." *In re Briscoe*, 448 F.3d 201, 212 (3d Cir. 2006). For that reason, a party "cannot claim the lack of other means to relief if an appeal taken in due course after entry of a final judgment would provide an adequate alternative to review by mandamus." *Id.*

Petitioners cannot show that adequate alternative remedies are unavailable. In parallel with their now-serial mandamus petitions, Petitioners are currently seeking

appellate review of the bankruptcy court's interim DIP order on the basis that "the Bankruptcy Court erred in finding that venue was appropriate." Bankr. Dkt. No. 260. By challenging the interim DIP order on that basis, Petitioners are seeking review of the bankruptcy court's venue determination—the same determination they maintain is *only* redressable through their mandamus petition. For that reason, Petitioners' appeal "in effect" challenges the bankruptcy court's venue decision, demonstrating that "an appeal will lie" and "mandamus will not." *In re Kensington Int'l Ltd.*, 353 F.3d 211, 219 (3d Cir. 2003).

There is nothing anomalous about that result. Petitioners attempt to paint venue as uniquely susceptible to mandamus, contending that "[v]enue is a key threshold protection for a party pulled into a case," "[s]o it should be resolved *at the threshold, before* a case is resolved." Pet. at 27. But that contention runs headlong into Supreme Court precedent, which holds that venue challenges are "adequately vindicable" through ordinary appellate review. *Lauro Lines s.r.l. v. Chasser*, 490 U.S. 495, 501 (1989). This Court has heeded that precedent, routinely reviewing venue challenges as part of post-judgment appeals, rather than on a writ of mandamus. *E.g.*, *Def. Distributed v. Att'y Gen.*, 167 F.4th 65, 74-76 (3d Cir. 2026) (reviewing venue and transfer decision after final judgment through ordinary appellate process).

Petitioners offer no persuasive reason why the Court should not do the same here. Nor could they, since they not only have the option of appealing after final judgment, but also have already brought an interlocutory appeal to the venue determination in the district court.

### C.   Petitioners cannot demonstrate irreparable injury.

Petitioners likewise have failed to establish the final requirement for mandamus relief because they have not and cannot show that the court's purported venue error would cause them "irreparable injury if it goes uncorrected." *Dawsey v. Gov't of Virgin Islands*, 931 F. Supp. 397, 401 (D.V.I. 1996), *aff'd*, 106 F.3d 384 (3d Cir. 1996). Petitioners assert that they "face likely irreparable injury" because "venue is improper" and claim that the "stakes are even higher" in the bankruptcy context. Pet. at 30 (emphasis omitted). But nowhere in this handwringing do Petitioners advance a credible explanation of any impending "irreparable injury" that they face. *Abbott Lab'ys*, 96 F.4th at 386 (quotation omitted) (denying mandamus as petitioners had "not demonstrated" how they would be irreparably harmed).

That is because Petitioners stand to lose nothing to which they are actually entitled. Their real gripe is not with the location of these bankruptcy cases; it is with the bankruptcy court's decision to approve the Debtors' chosen DIP financing and not force the Debtors to accept Petitioners' alternative proposal. That is why they stipulated to venue in New Jersey if only they had been the DIP lenders. Petitioners

19

then conceded on the record that they prefer Delaware because a single bankruptcy judge once made a comment about DIP financings that Petitioners believe will be useful to their objection to the DIP motion here. A369:19-A370:1. In other words, Petitioners admitted they want to judge-shop. But not having one's preferred judge is not a cognizable irreparable harm.

Conversely, granting the writ would inflict severe, irreversible harm on the Debtors' estates and their stakeholders. Petitioners seek vacatur of *all* first-day and subsequent orders. Pet. at 3, 29. This extraordinary request—made in a single conclusory paragraph—would entail reversing all the critical bankruptcy relief the Debtors have already received, including a robust DIP facility that has funded payroll, paid vendors, and ensured continued operations. Such a drastic remedy would severely disrupt the Debtors' reorganization efforts and imperil existing relationships with their stakeholders and customers and force the Debtors to restart the painstaking chapter 11 process—if not pursue chapter 7 liquidation.

Nor is such relief even permissible. The remedy for improper venue is transfer or dismissal, not vacatur of prior orders. It is well recognized in this Court and elsewhere that a decision rendered by a court before a case is transferred for lack of venue, far from being void, "is the law of the case and should not be reconsidered except in unusual circumstances." *Hayman Cash Register*, 669 F.2d at 170. And this Court has recognized that, in the context of venue transfers, "these considerations

20

[are] especially important in enforcing comity among federal courts of equal authority." *Id.* at 167 (quoting *Hoffman v. Blaski*, 363 U.S. 335, 348-49 (1960) (Frankfurter, J., dissenting)).

Further, as explained, section 364(e) of the Bankruptcy Code protects the finality of DIP financing, and that statute cannot be circumvented through the creative use of mandamus. *See* pp. 10-12, *supra*. Even if the bankruptcy cases are transferred, section 364(e) will bar the transferee court from modifying the approved and funded DIP financing. *See Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting*, 908 F.2d 1351, 1355 (7th Cir. 1990) (reasoning that although section 364(e) did not by its express terms apply to the confirmation order, it nonetheless did apply through the law-of-the-case doctrine and rendered the bankruptcy court without "power to undo the priority granted by a financing order without first finding that the creditor acted in bad faith"); *Boy Scouts*, 137 F.4th at 149 (by "restricting appeals for this narrow category of appeals, Congress chose 'to promote the policy of … finality'" (quotation omitted; omission in original)).

## CONCLUSION

For the reasons herein, the petition for a writ of mandamus should be denied.

Dated: March 23, 2026.

/s/ *Matthew E. Beck*
Matthew E. Beck
Thomas M. Walsh
Sam Della Fera, Jr.
**CHIESA SHAHINIAN & GIANTOMASI PC**
105 Eisenhower Parkway
Roseland, New Jersey 07068
(973) 325-1500
mbeck@csglaw.com
twalsh@csglaw.com
sdellafera@csglaw.com

Evan R. Fleck
Matthew Brod
Alexander B. Lees
**MILBANK LLP**
55 Hudson Yards
New York, New York 10001
(212) 530-5000
efleck@milbank.com
mbrod@milbank.com
alees@milbank.com

Colleen E. Roh Sinzdak
Melanie Westover Yanez
Hannah A. Blazek
**MILBANK LLP**
1101 New York Avenue, NW
Washington, DC 20005
(202) 835-7500
crohsinzdak@milbank.com
mwyanez@milbank.com
hblazek@milbank.com

*Counsel for the Secured Ad Hoc Group*

22

## <u>CERTIFICATE OF ADMISSION TO BAR</u>

I, Matthew E. Beck, certify as follows:

1.      I am a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

2.      Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct.

Dated: March 23, 2026

By: */s/ Matthew E. Beck*
        Matthew E. Beck, Esq.

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 21(d)(1). This brief contains 5,050 words, excluding the parts of the brief exempted by Rule 32(f) of the Federal Rules of Appellate Procedure.

This brief complies with the typeface requirements of Rule 32(a)(5) of the Federal Rules of Appellate Procedure and the type style requirements of Rule 32(a)(6) of the Federal Rules of Appellate Procedure because this brief has been prepared in a proportionally spaced typeface using the 2019 version of Microsoft Word in 14 point Times New Roman font.

This brief complies with the electronic filing requirements of Local Rule 31.1(c) because the text of this electronic brief is identical to the text of the paper copies, and the Vipre Virus Protection, version 3.1 has been run on the file containing the electronic version of this brief and no viruses have been detected.

Dated: March 23, 2026

By: /s/ *Matthew E. Beck*
Matthew E. Beck, Esq.

## CERTIFICATE OF FILING AND SERVICE

I certify that on this 23rd of March 2026, the foregoing Brief was electronically filed with the Clerk of Court using the CM/ECF system.

I caused a true and correct copy of the foregoing Brief to be served on all counsel of record via the Court's CM/ECF system. and via email to all parties listed on the Debtors' master service list maintained by the Debtors' noticing agent at https://www.veritaglobal.net/mcc/document/noticelist/1.

The Bankruptcy Court is being provided with a paper copy of this filing by Federal Express overnight delivery to the Chambers of Hon. Michael B. Kaplan, U.S. Bankruptcy Court, District of New Jersey, 402 East State Street, Trenton, NJ 08608.

Dated: March 23, 2026

By: */s/ Matthew E. Beck*
Matthew E. Beck, Esq.