**No. 26-1595**

# In the
# United States Court of Appeals for the Third Circuit

———————————————

IN RE CROSS-HOLDER AD HOC GROUP
AND EXCLUDED FIRST LIEN LENDERS
(EACH ON BEHALF OF ITS PARTICIPATING CLIENTS),

*Petitioners.*

———————————————

**RESPONSE TO THE PETITION
FOR A WRIT OF MANDAMUS TO THE BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY IN NO. 26-10910-MBK,
HON. MICHAEL B. KAPLAN**

———————————————

Ray C. Schrock
Joseph Serino, Jr.
Candace M. Arthur
Zachary F. Proulx
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200

Ryan Preston Dahl
LATHAM & WATKINS LLP
330 North Wabash Avenue
Suite 2800
Chicago, IL 60611
(312) 876-7700

March 23, 2026

Roman Martinez
Uriel Hinberg
Peter Prindiville
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
(202) 637-2200
roman.martinez@lw.com

*Counsel for Clayton Dubilier & Rice LLC, on behalf of itself and its affiliates
and/or related entities, including CD&R Labels Holdings, L.P., Arawak XI, L.P.,
Arawak XI-A, L.P., CD&R Investment Associates XI, Ltd., and
Clayton, Dubilier & Rice Fund XI (Credit Investor), Ltd.*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................... ii

INTRODUCTION ............................................................................... 1

STATEMENT OF THE ISSUES .......................................................... 3

STATEMENT OF THE CASE ............................................................. 3

    A.    The Chapter 11 Petitions ..................................................... 4

    B.    The First Day Hearings And The Cross-Holder Group's Simultaneous Assent And Challenge To Venue .................................. 5

    C.    The Interim DIP Order Appeal And Petitioners' First Mandamus Petition ............................................................................. 7

    D.    Petitioners' New Venue Arguments ...................................... 8

    E.    The Venue Hearing And The Bankruptcy Court's Venue Decision ............................................................................. 9

ARGUMENT ................................................................................... 12

I.    THE BANKRUPTCY COURT WAS CORRECT, AND CERTAINLY DID NOT COMMIT A CLEAR ERROR OF LAW .................................. 13

    A.    The Bankruptcy Court Correctly Interpreted The Venue Statute ....... 13

    B.    The Bankruptcy Court Interpretation Of The Venue Statute Was Not Clearly Erroneous .......................................................... 17

II.    EVEN IF MANDAMUS WERE APPROPRIATE WITH RESPECT TO VENUE, THE BANKRUPTCY COURT'S ORDERS SHOULD NOT BE VACATED ...... 24

CONCLUSION ................................................................................ 27

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*In re Argueta*,
207 F. App'x 233 (3d Cir. 2006) ...................................................................26

*Barnes v. Whelan*,
689 F.2d 193 (D.C. Cir. 1982)...................................................15, 16, 20, 21, 22

*Central Virginia Community College v. Katz*,
546 U.S. 356 (2006)...................................................................................15

*In re Chamber of Commerce of the United States of America*,
105 F.4th 297 (3d Cir. 2024) ......................................................................25

*In re Columbia Western, Inc.*,
183 B.R. 660 (Bankr. D. Mass. 1995) ..........................................................18

*Cottman Transmission Systems, Inc. v. Martino*,
36 F.3d 291 (3d Cir. 1994) .........................................................................25

*In re DDMD Trucking, Inc.*,
2015 WL 381299 (Bankr. D.N.M. Jan. 28, 2015)...........................................18

*In re Diet Drugs Products Liability Litigation*,
418 F.3d 372 (3d Cir. 2005) ...............................................................*passim*

*In re Donald*,
328 B.R. 192 (B.A.P. 9th Cir. 2005) ............................................................16

*Gardner v. New Jersey*,
329 U.S. 565 (1947).................................................................................15

*Gillette v. Prosper*,
858 F.3d 833 (3d Cir. 2017) .......................................................................24

*Hanover National Bank v. Moyses*,
186 U.S. 181 (1902).................................................................................15

**Page(s)**

*Harris Corp. v. National Iranian Radio & Television,*
   691 F.2d 1344 (11th Cir. 1982) .................................................................24

*Hayman Cash Register Co. v. Sarokin,*
   669 F.2d 162 (3d Cir. 1982) ....................................................................25

*In re Houghton Mifflin Harcourt Publishing Co.,*
   474 B.R. 122 (Bankr. S.D.N.Y. 2012)......................................................25

*In re Industrial Pollution Control, Inc.,*
   137 B.R. 176 (Bankr. W.D. Pa. 1992)......................................................18

*Johnson v. Johnson,*
   644 B.R. 246 (N.D. Ga. 2022) .................................................................25

*In re McGraw-Hill Global Education Holdings LLC,*
   909 F.3d 48 (3d Cir. 2018) ...............................................................*passim*

*MidAtlantic National Bank v. Hansen,*
   48 F.3d 693 (3d Cir. 1995) ......................................................................16

*Neirbo Co. v. Bethlehem Shipbuilding Corp.,*
   308 U.S. 165 (1939)..................................................................................25

*United States v. Auernheimer,*
   748 F.3d 525 (3d Cir. 2014) ....................................................................25

*In re Whittaker Clark & Daniels Inc.,*
   152 F.4th 432 (3d Cir. 2025) ...................................................................25

**STATUTES**

11 U.S.C. § 301............................................................................................14

11 U.S.C. § 541............................................................................................15

28 U.S.C. § 158(d)(2)(A)................................................................................8

28 U.S.C. § 1334(e)(1)............................................................................15, 16

28 U.S.C. § 1391(b)(2)..................................................................................15

**Page(s)**

28 U.S.C. § 1408 ..................................................................................16

28 U.S.C. § 1408(1) ......................................................................*passim*

28 U.S.C. § 1408(2) ..............................................................................4

28 U.S.C. § 1472 ..................................................................................16

## OTHER AUTHORITIES

Fed. R. Bankr. P. 8007 ........................................................................26

Fed. R. Bankr. P. 9009(a) ......................................................................4

1 William L. Norton III, *Norton Bankruptcy Law and Practice* (3d ed.
Jan. 2026 update) ...........................................................................15

## INTRODUCTION

Just a couple of weeks ago, Petitioners filed a mandamus petition seeking to have this Court prematurely wade into a venue dispute on an incomplete record, before the bankruptcy court held an evidentiary hearing on that very dispute. Petitioners' theory then was that venue is improper in the District of New Jersey as a matter of law because a Debtor left a box blank on its petition form. This Court summarily rejected that baseless theory and denied the petition. Since then, the bankruptcy court has held a full evidentiary hearing on the venue question and issued a thoughtful, 28-page order finding venue proper in the District of New Jersey. Unhappy with the result, Petitioners once again seek the "'drastic remedy'" of mandamus relief, which is "'grant[ed] only in extraordinary circumstances,'" *In re Diet Drugs Prods. Liab. Litig.*, 418 F.3d 372, 378 (3d Cir. 2005), and only when the "'right to the writ is clear and indisputable.'" *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 56 (3d Cir. 2018). Petitioners come nowhere close to showing that mandamus is appropriate, and this Court should once again summarily deny the petition.

Venue is proper in the district where a debtor's "principal assets" have been located for the longest period over the 180 days preceding the Petition Date. *See* 28 U.S.C. § 1408(1). The venue statute further provides that if venue is proper for one corporate debtor, it is automatically proper for all of that debtor's affiliates. Here,

1

the bankruptcy court found venue proper in the District of New Jersey because Debtor Norwood's principal assets as of the Petition Date—two bank accounts holding over $1 million—were in that district for longer than in any other district during the relevant 180-day period.

Petitioners argue that this determination was clearly erroneous. In their view, the venue statute requires a court to determine which assets were the debtor's "principal assets" on *each day* of the 180-day venue period and then determine which district held principal assets for the most days. Petitioners cite no case endorsing this novel and hard-to-apply approach, which requires courts to consider assets that are not part of the bankruptcy estate, and over which the bankruptcy court has no jurisdiction. Their failure to cite a single authority supporting their approach is understandable: It is inconsistent with the statutory text, context, precedent, and historical practice. And the requirement that courts engage in a separate "principal assets" analysis for each day of the 180-day period is fundamentally illogical and unworkable.

The bankruptcy court's principal assets determination was correct—and Petitioners certainly cannot show there has been error amounting to a "'judicial usurpation of power.'" *Diet Drugs*, 418 F.3d at 378. Even if the statutory question were debatable, mandamus would still not be proper because Petitioners cannot show their "'right to the writ is clear and indisputable.'" *McGraw-Hill*, 909 F.3d at

2

56; *id.* at 57 ("'[E]ven reversible error by itself is not enough to obtain mandamus.'") (alteration in original)). The bankruptcy court's thoughtful and thorough opinion is certainly not clearly incorrect.

Finally, even if mandamus relief were appropriate, Petitioners' requested relief—vacatur of every single order the bankruptcy court entered—is baseless. Again, Petitioners point to no authority supporting such drastic relief, which would wreak havoc on the Debtors' and other parties' reliance on unstayed (and in many cases, unopposed) orders entered by the bankruptcy court.

The petition should be denied.

## STATEMENT OF THE ISSUES

1.      Whether Petitioners have made the stringent showing of clear error necessary to obtain mandamus relief from the bankruptcy court's venue decision.

2.      If Petitioners are entitled to mandamus relief, whether all of the orders entered by the bankruptcy court should be vacated.

## STATEMENT OF THE CASE

This petition arises from a group of jointly administered Chapter 11 bankruptcy cases commenced by Multi-Color Corporation and many of its affiliates (collectively, "Debtors"). Petitioner Cross-Holder Ad Hoc Group ("Cross-Holder Group") is an ad hoc group of unsecured creditors; Petitioner Excluded First Lien

Lenders is a group of secured creditors; and Respondents Clayton Dubilier & Rice LLC and its affiliates are sponsors of the Debtors' plan of reorganization.

### A.    The Chapter 11 Petitions

On January 29, 2026, the Debtors filed Chapter 11 petitions in the United States Bankruptcy Court for the District of New Jersey.  A133-210.  In a corporate bankruptcy, venue generally lies in the district where the bankruptcy petitioner's "domicile, . . . principal place of business in the United States, or principal assets in the United States" have been located for the longest portion of the 180 days before the bankruptcy case is commenced.  28 U.S.C. § 1408(1).  But when multiple affiliates file Chapter 11 petitions, so long as venue lies for one petitioner under 28 U.S.C. § 1408(1), it automatically lies for all of that petitioner's affiliates.  *See id.* § 1408(2).  Paragraph 11 of the Official Form "prescribed by the Judicial Conference of the United States" for corporate debtors, Fed. R. Bankr. P. 9009(a), asks the petitioner to check one of two boxes, indicating whether venue is based on the general venue requirements or the corporate affiliate exception.  *See* A135.

One of the Debtors—Norwood—checked the box denoting that venue was proper in the District of New Jersey because "[Norwood] has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district"—i.e., under the general venue requirements.  A174.  All

the other Debtors checked the other box, indicating that venue was proper in the District of New Jersey because "[a] bankruptcy case concerning debtor's affiliate . . . is pending in this district"—i.e., under the corporate affiliate exception. A135. Thus, according to Debtors, venue is proper in the District of New Jersey for *all* of them because their affiliate Norwood satisfies the requirements of 28 U.S.C. § 1408. Specifically, Debtors maintain that Norwood's "principal assets" are "two bank accounts that are held at . . . a bank located in New Jersey," thereby satisfying "the principal assets test" in Section 1408(1). A243.[1]

### B. The First Day Hearings And The Cross-Holder Group's Simultaneous Assent And Challenge To Venue

After a company files a Chapter 11 petition, it often files "First Day Motions" seeking emergency relief to allow the debtor to avert a complete shutdown. The bankruptcy court held a First Day Hearing on January 30, 2026, and February 2, 2026. *See* A216-459. Less than an hour before the hearing, Petitioner Cross-Holder Ad Hoc Group filed a motion to dismiss or transfer the Chapter 11 cases based on improper venue. A211-15; *see also* A242 (Petitioner Excluded First Lien Lenders joining motion). The Cross-Holder Group argued that "admissions" in Norwood's petition "prove that venue for the Chapter 11 Cases is improper in [the District of

---

[1]  Norwood later filed an amended bankruptcy petition, explicitly stating that its principal assets are located at 301 Sylvan Ave, Englewood Cliffs, NJ 07632. A626.

New Jersey].”   A213.   The motion did not mention Norwood's declaration in Paragraph 11.

These venue objections were in tension with the Cross-Holder Group's other First Day filings.  While the hearing was ongoing, the Cross-Holder Group submitted its own interim debtor-in-possession (“DIP”) proposal to the Court.  *See* A27.  In that proposal, the Group “irrevocably and unconditionally agree[d] that all claims in respect of the Chapter 11 Cases may be heard in the Bankruptcy Court” in the District of New Jersey.  *See* A1069.  Thus, as the bankruptcy court later determined, the group “assented to [the] chapter 11 cases moving forward in New Jersey when they proposed their own alternative [debtor-in-possession] financing.”  A27.

Despite having assented to venue in the District of New Jersey in their own filings, the Cross-Holder Group continued to press its venue objection.  At the hearing, the Cross-Holder Group clarified that its venue challenge was based on another part of Norwood's petition—paragraph 4.  Paragraph 4 of the Form, which is titled “Debtor's address” asks for three addresses at the time of the petition: (1) principal place of business, (2) mailing address, if different from principal place of business, and (3) location of principal assets, if different from principal place of business.  A172.  Norwood's petition left the third address block blank.  *Id.*  The Cross-Holder Group asserted that this lack of an answer amounted to an admission

that Norwood's principal assets were *not* located in the District of New Jersey during the relevant period.  A236-37.

The bankruptcy court concluded that there were sufficient grounds to preliminarily conclude that venue was proper "subject to further consideration and argument."  A248-49.  In the court's view, "no party in interest opposing the Debtors' choice of venue had carried their burden of demonstrating that venue was improper."  A3.  The court therefore "deferred consideration of the [motion to dismiss] in favor of addressing the emergent First Day matters requiring immediate attention."  *Id.*  After approving DIP financing—which was critical for Debtors to continue to operate—the court emphasized the need to "resolve the venue issue" before the final hearing on the Debtors' request for DIP financing.  A454-55.  Accordingly, the court scheduled an evidentiary hearing for February 25, 2026, allowing the parties time to fully brief the issue and conduct relevant discovery.  A456.[2]

### C.   The Interim DIP Order Appeal And Petitioners' First Mandamus Petition

Instead of waiting a couple of weeks for the bankruptcy court's venue hearing, Petitioners appealed the interim DIP Order and requested that it be certified for direct

---

[2]   The evidentiary hearing was subsequently moved to February 26, 2026.  *See* Dkt. No. 277.  On February 17, 2026, the U.S. Trustee filed its own motion to dismiss, indicating that it planned to participate in the venue hearing.  A2946-60.

appeal to this Court under 28 U.S.C. § 158(d)(2)(A), so that this Court could immediately resolve the underlying venue issue.  A460-69; *see* A474-82.  The bankruptcy court entered an order denying the certification request on February 11, 2026, noting that "a hearing on the Motion to Dismiss based on venue is scheduled before [the bankruptcy court] in two weeks and that [the court] intends to issue a ruling promptly thereafter" on a "more complete record."  A576-77.

On the very same day, Petitioners filed a petition for a writ of mandamus with this Court.  A582-625.  The petition primarily relied on the theory that the blank answer to Paragraph 4 in Norwood's initial bankruptcy petition permanently established that venue was improper in the District of New Jersey.  Petitioners thus argued that the bankruptcy court "committed a clear error of law" by "entering the DIP Order and other orders . . . despite facially defective venue allegations in Norwood's petition."  A609.  Petitioners requested that this Court (1) order the dismissal or transfer of the bankruptcy cases, and (2) "vacat[e] all orders entered . . . after venue was objected to," including the interim DIP order.  A623.

On February 24, 2026, this Court denied the mandamus petition.  A784

### D.    Petitioners' New Venue Arguments

On February 24, 2026, Petitioner Cross-Holder Ad Hoc Group filed a reply in support of its venue motion in the bankruptcy court.  A3012-32.  In addition to repeating its argument that "Norwood's own sworn petition facially defeats any

claim that venue is proper [in the District of New Jersey],” A3013-18, the Cross-Holder Group also introduced several completely new arguments.  First, the Cross-Holder Group argued that Norwood’s bank accounts are not located in New Jersey for the purposes of venue.  A3019.  Second, the Cross-Holder Group argued that Norwood does not satisfy the “principal assets” test because the bank accounts were funded “a mere 16 days before the Petition Date,” and “Norwood owned multiple categories of assets throughout the 180-day period” preceding the bankruptcy petitions that were not located in New Jersey, including certain patents.  A3019-20.  The Cross-Holder Group did not dispute that the bank accounts were Norwood’s “principal assets” on its Petition Date.

Petitioner First Lien Lenders filed a joinder to the Cross-Holder Group’s reply.  A3033-34.

### E.   The Venue Hearing And The Bankruptcy Court’s Venue Decision

On February 26, 2026, the bankruptcy court conducted an all-day hearing on venue, with testimony, exhibits, and argument.  A3046-290.  After the hearing, the court requested supplemental briefing on the question “‘whether assets that have no demonstrable economic or monetary value may still be considered “principal assets” for purposes of applying the venue statute.’”  A4.  The court requested this briefing because the Debtors had argued that certain other assets Norwood owned during the relevant 180-day period (e.g., patents) had no value.

On March 16, 2026, the bankruptcy court denied the venue motions.  A1-28. In its 28-page opinion, the court carefully explained why the venue challenge failed. In doing so, the court noted that Petitioners' venue challenge did not appear to have anything to do with concerns regarding the convenience of the bankruptcy cases proceeding in the District of New Jersey, as they "assented to [the] chapter 11 cases moving forward in New Jersey when they proposed their own alternative DIP financing." A27.  Instead, the court found, the venue challenge appeared to be an attempt to gain a "competitive edge" by securing a transfer to the District of Delaware on the "belief that [they] would receive more favorable treatment in that district." A26 n.13.

As to the merits of the venue challenge, the court first rejected Petitioners' argument that the blank answer in Norwood's initial petition "constituted a binding judicial admission that its 'principal assets' were located in Georgia," Norwood's principal place of business. A5.  The blank answer, the court explained, "reflects, at most, a possible omission or error which can be (and was) subsequently rectified through amendment of the petition." *Id.*

The court then explained that the core issue of whether Norwood's bank accounts support venue in the District of New Jersey depends on a fundamental question as to what it means that venue lies in the district "in which the . . . [debtor's] principal assets . . . have been located for the one hundred and eighty days

10

immediately preceding [the petition] or for a longer portion of such one-hundred-and-eighty-day period than . . . in any other district."  A7 (alterations in original) (emphasis omitted) (quoting 28 U.S.C. § 1408(1)).  There are two approaches that "fit[] comfortably within the statute," the court explained.  *Id.*  According to one approach (the "Asset-Based Approach") "principal assets" refer to the debtor's principal assets as of the petition date.  Under that approach, the court first determines what the debtor's principal assets were on the petition date and then "looks to where [those assets] were located for the longer portion of the [180-day period] to determine the appropriate venue."  A8.

According to the other approach (the "Time-Based Approach") "principal assets" refers to the assets that were the debtor's principal assets on each of the 180 days preceding the petition.  In other words, principal assets must be identified and tabulated for each day during "the 180-day window," and venue lies in the district that housed the debtor's principal assets for more days than any other district.  A7.  Under this approach, venue would not be appropriate in this case if some other assets were considered Norwood's "principal assets" before the bank accounts were opened and those assets were located in another district for more than 16 days.  *Id.*

The court acknowledged that the choice between the Asset-Based and Time-Based Approaches is "difficult" and that neither interpretation is "without flaws."  A8.  The court also noted the absence of "any case law directly on point" and that

11

"the statutory language does [not] clarify the issue." A11. Ultimately, the court adopted the Asset-Based Approach because, in its view, it "produces more logical results and construes the statute in a way that is more consistent with the functional concerns of the administration of the bankruptcy estate." *Id.*

The court then applied the "Asset-Based-Approach" to the facts of this case. The court concluded that Norwood's bank accounts were its principal assets on the Petition Date—a finding that neither Petitioners nor the U.S. Trustee ever disputed. And because those bank accounts "were located longer in [the District of New Jersey] than in any other [district]" during the relevant 180-day period, the court concluded that "venue is proper" in the District of New Jersey. A11-12.

## ARGUMENT

"Mandamus provides a 'drastic remedy that a court should grant only in extraordinary circumstances in response to an act amounting to a judicial usurpation of power.'" *In re Diet Drugs Prods. Liab. Litig.*, 418 F.3d 372, 378 (3d Cir. 2005). A petitioner must demonstrate that its "'right to the writ is clear and indisputable.'" *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 56 (3d Cir. 2018). Accordingly, the petitioner must demonstrate that the court committed "'a clear abuse of discretion or clear error of law.'" *Id.* Petitioners cannot satisfy this stringent standard. And even if they could, their requested remedy—vacatur of all orders the bankruptcy court already entered—is improper.

**I.    THE BANKRUPTCY COURT WAS CORRECT, AND CERTAINLY DID NOT COMMIT A CLEAR ERROR OF LAW.**

Showing a clear error of law is "a high bar." *McGraw-Hill*, 909 F.3d at 56-57. It "'require[s] more than showing that the court misinterpreted the law, misapplied it to the facts, or otherwise engaged in an abuse of discretion.'" *Id.* at 57. That is because "'[e]ven reversible error by itself is not enough to obtain mandamus.'" *Id.* "Instead, errors of law must 'at least approach[] the magnitude of an unauthorized exercise of judicial power, or a failure to use that power when there is a duty to do so.'" *Id.* (alteration in original). Put another way, petitioners must show that the bankruptcy court committed "'an act amounting to a judicial usurpation of power.'" *Diet Drugs*, 418 F.3d at 378.

Petitioners do not come close to satisfying their burden of showing a clear legal error. They assert the bankruptcy court "committed a clear error of law" when it found venue proper in the District of New Jersey on the grounds that Debtor Norwood's principal assets as of the Petition Date had been located in that district longer than in any other district during the relevant 180-day period. Pet. 13. But the district court's interpretation of the venue statute was correct, and, at a minimum, was not clearly wrong.

**A.    The Bankruptcy Court Correctly Interpreted The Venue Statute**

The bankruptcy court determined that venue was proper in the District of New Jersey based on the principal assets of Debtor Norwood. The court reached this

13

conclusion by first identifying Norwood's principal assets as of the Petition Date—

bank accounts totaling $1,049,975—and then determining that those assets had been

located in the District of New Jersey for a longer portion of the preceding 180 days

than in any other district.  *See* A11-28.

This determination was correct.  Bankruptcy venue lies in the district where a

debtor's "principal assets"—which comprise a substantial part of the bankruptcy

estate subject to the bankruptcy court's *in rem* jurisdiction—have been located for

the 180 days "immediately preceding" the petition or in the district where the assets

have been located "for a longer portion" of the immediately preceding 180 days.  28

U.S.C. § 1408(1).  Applying this provision requires a court to answer two questions:

(1) what are the debtor's principal assets; and (2) in which district those principal

assets were located for either the full 180-day period preceding filing or the "longer

portion" of that period.  These two inquiries are simple and straightforward.

As the bankruptcy court correctly explained, the first question requires courts

to determine which of a debtor's assets are the debtor's primary assets as of the

Petition Date.  The focus on the debtor's assets as of the Petition Date makes perfect

sense because those are the assets that comprise the bankruptcy estate, which is the

object of the action and of the bankruptcy court's jurisdiction.

A bankruptcy case "is commenced by the filing with the bankruptcy court of

a petition . . . by an entity that may be a debtor."  11 U.S.C. § 301.  By operation of

law, "[t]he commencement of a case [automatically] creates an estate . . . comprised of all [the debtor's non-exempt] property." *Id.* § 541.  The bankruptcy estate is the subject of the bankruptcy case and is the object of the bankruptcy court's "exclusive jurisdiction."   28 U.S.C. § 1334(e)(1); *see also* 1 William L. Norton III, *Norton Bankruptcy Law and Practice* § 3:11 (3d ed. Jan. 2026 update).   Thus, as the Supreme Court has explained, "[b]ankruptcy jurisdiction, at its core, is *in rem*." *Cent. Virginia Cmty. Coll. v. Katz*, 546 U.S. 356, 362 (2006).  It concerns a *res*—the bankruptcy estate.   *See Gardner v. New Jersey*, 329 U.S. 565, 574 (1947) (bankruptcy action concerns "adjudication of interests claimed in a *res*"); *Hanover Nat'l Bank v. Moyses*, 186 U.S. 181, 192 (1902) ("Proceedings in bankruptcy are, generally speaking, in the nature of proceedings *in rem*.").

Because the bankruptcy estate is the object of the action, when a court identifies a debtor's assets for purposes of venue, the inquiry properly turns on assets in the estate—i.e., assets that existed at the time of the petition.  The bankruptcy venue statute thus functions like the general venue statute, which provides that venue lies in the "district in which . . . a substantial part of property that is the subject of the action is situated."  28 U.S.C. § 1391(b)(2).

The D.C. Circuit recognized this principle in *Barnes v. Whelan*, 689 F.2d 193 (D.C. Cir. 1982).  Interpreting a substantively identical version of the bankruptcy venue statute, the court explained that "the term 'principal assets' has a long history

15

under prior [bankruptcy] law," since at least 1937. *Id.* at 205 & n.19.[3]  The court

explained that, consistent with this historical usage, the term means "property owned

by the corporation *at the time of filing*." *Id.* at 205 (emphasis added).  That is because

historical assets are not part of the estate, not subject to the court's jurisdiction, and

offer no practical benefit to the debtor or creditor. *See* 28 U.S.C. § 1334(e)(1).  For

bankruptcy purposes, assets that do not belong to the debtor on the Petition Date are

irrelevant.[4]

After a court has identified the debtor's primary assets, it must then identify

the district in which those assets have been located for either the entire 180-day

period or the longer portion of that period than any other district. *See id.* § 1408(1).

This is intended to prevent gamesmanship.  Like the other venue hooks—"domicile,

residence, [and] principal place of business in the United States"—principal assets

can move. *Id.*  To prevent debtors from strategically moving their assets to a

---

[3]   *Barnes* considered the bankruptcy venue statute codified at 28 U.S.C. § 1472, which was enacted in 1978.  In 1984, Congress adopted non-substantive amendments to this provision, which were then recodified at 28 U.S.C. § 1408. *See In re Donald*, 328 B.R. 192, 201 (B.A.P. 9th Cir. 2005) (detailing same).

[4]   Petitioners argue (at 19) that this reading of the statute is illogical because some debtors may have no assets at the time of petition.  But in that circumstance, the principal assets venue hook does not apply because there are no assets in the bankruptcy estate and venue would need to be established based on domicile, residence, or principal place of business. *Cf. MidAtlantic Nat'l Bank v. Hansen*, 48 F.3d 693, 698 (3d Cir. 1995) ("We reject the notion that implicit in the statute's terms is the requirement that *all* corporations be deemed to have a principal place of business.").

particular forum, the 180-day look-back period requires courts to determine the district in which assets were located for the longest portion of the 180-day period. Venue is proper in that district. *Id.*

That is precisely the analysis the bankruptcy court adopted here. The court first determined that Norwood's primary assets, as of the Petition Date, were its bank accounts—a fact neither Petitioners nor the U.S. Trustee disputes. *See* A11-28. And, following an evidentiary hearing, the bankruptcy court determined that those accounts had been located in the District of New Jersey for a longer portion of the 180-day period than in any other district. *See id.* The court therefore concluded that venue was proper in the District of New Jersey. *See* 28 U.S.C. § 1408(1). The court was correct.

## B. The Bankruptcy Court Interpretation Of The Venue Statute Was Not Clearly Erroneous

Petitioners assert the bankruptcy court's venue determination was "a clear error of law." Pet. 13. In support, Petitioners advance a novel reading of Section 1408 that is wrong on the merits. But even if the statutory question were debatable, mandamus "'require[s] more than showing that the court misinterpreted the law.'" *McGraw-Hill*, 909 F.3d at 57. Petitioners must show "'an act amounting to a judicial usurpation of power'" to secure relief. *Diet Drugs*, 418 F.3d at 378. They have not.

1. Petitioners argue that venue in New Jersey is improper under Section 1408 because "for nearly all of the venue period, Norwood's assets were all

17

elsewhere." Pet. 13. According to Petitioners, courts must consider which assets were principal on each day of the 180-day venue period and then determine which district housed the debtor's principal assets for more days than any other district. Thus if there were *any* assets—even assets that no longer exist as of the Petition Date or assets of minimal value—that were held longer than the principal assets in the bankruptcy estate, the location of those assets would dictate venue.

Petitioners do not cite any cases applying their novel theory.[5] Instead, they argue that Section 1408 requires this reading because (1) the text directs a court to consider which assets were principal across the 180-day period—not as of the Petition Date, and (2) context requires that principal assets be analyzed in the same way as the other hooks for venue. Pet. 14-15. Both these contentions are wrong.

Petitioners primarily ground their textual argument on the proposition that the "statute homes in on whether a district had principal assets in it for a plurality of the

---

[5]    Petitioners cite three cases (at 16) in support of their central proposition that "courts do not" apply the principal assets provision as the bankruptcy court did. None supports that contention. The first case applied the principal assets framework exactly as the bankruptcy court did, first considering which assets were principal on the petition date and then examining their location throughout the 180-day period. *See In re Columbia W., Inc.*, 183 B.R. 660 (Bankr. D. Mass. 1995). The second case resolved venue on the principal place of business venue hook, not principal assets. *See In re Indus. Pollution Control, Inc.*, 137 B.R. 176, 181 (Bankr. W.D. Pa. 1992). And the third, *In re DDMD Trucking, Inc.*, 2015 WL 381299, at *3 (Bankr. D.N.M. Jan. 28, 2015), did not need to consider which assets were principal because "almost all" assets were in New Mexico.

18

period." Pet. 14 (emphasis omitted). True, but that unremarkable observation says nothing at all about the crux of the dispute: whether "principal assets" are measured on *each day* of the 180-day period (as Petitioners claim), or on the Petition Date (as the bankruptcy court concluded). Petitioners' observation that venue is proper in the district where principal assets were located for the most time during the relevant 180-day period does not support Petitioners' fundamental contention that "principal assets" are determined on a day-by-day basis.

Petitioners next assert that their day-by-day view is correct because the "statute's focus on the district and a time period make assets' location on a single day indeterminate." Pet. 15. This makes little sense. The bankruptcy court's order did not resolve venue based on "assets['] location on a single day." *Id.* Rather, the court first examined the bankruptcy estate and determined which assets in the estate were principal, and then considered where those principal assets (the bank accounts) were located throughout the 180-day venue period. Because the bank accounts had been located in the District of New Jersey longer than in any other district, venue was proper. There was nothing "indeterminate" about that analysis. *Id.*

Petitioners next pivot to "context," arguing that the bankruptcy court's approach was flawed because it "treat[ed] principal assets differently from how courts treat the other" venue hooks in section 1408. *Id.* Because courts considering venue based on domicile tally the number of days a debtor was domiciled in a certain

district, Petitioners posit the same approach must apply to principal assets—a day-by-day tally. But Petitioners ignore that the principal assets venue hook is fundamentally different from the other three venue hooks in the statute. Domicile, residence, and principal place of business in the United States are all relatively static. 28 U.S.C. § 1408(1). While they can theoretically move, it is challenging, slow, and costly to do so. Businesses do not change their principal place of business multiple times in a single day. Assets, on the other hand, are often located in many places and can move quickly. And, unlike the other venue hooks, the principal assets inquiry requires determining which assets, among many, are principal. Asset values frequently change, sometimes by the minute. Such balance-sheet volatility is especially common in entities facing potential insolvency.

Given all this, it is highly unreasonable to think that Congress required courts to make a separate "principal assets" determination for each of the 180 days preceding the bankruptcy filing. It is far more reasonable to conclude, as the D.C. Circuit did in *Barnes*, that "principal assets" refers to "property owned by the corporation at the time of filing." 689 F.2d at 205. Petitioners never discuss *Barnes*, save for a drive-by attempt to distinguish it. *See* Pet. 17.[6]

---

[6] Petitioners attempt to distinguish *Barnes* by noting it considered future earnings. *See* Pet. 17. That is immaterial. The D.C. Circuit reasoned that future earnings could not be principal assets for purposes of venue because they were not

Nor do Petitioners grapple with the complexities of the principal assets analysis under their statutory theory or offer any practical picture of how a court would undertake the venue analysis. Petitioners posit that a court must consider which of a debtor's many assets was principal on each day of the 180-day period and then tally the location of each principal asset on each day. While simple in theory, that rule is profoundly complex and unworkable in practice.

Consider an entity whose primary assets are apartment buildings of similar value in five different judicial districts. The real estate markets are volatile, which leads to insolvency and the filing of a petition under Chapter 11. Under Petitioners' theory, venue could be determined only after expert testimony was adduced providing precise *daily* assessments of each building's value, including a daily real property appraisal and an assessment of daily cashflow, to determine which building was the principal asset on each of the preceding 180-days. These are not simple tasks. For example, commercial real property appraisals consider not only the value of a physical building, but also its income-generation capacity in the market. This means that appraisers must analyze not only recent property sales, but also prevailing market rents in the area. For this relatively simple business, in all, an expert would need to prepare 900 separate, complicated property appraisals with sufficient rigor

---

"property owned . . . at the time of filing" for bankruptcy. *Barnes*, 689 F.2d at 205. That reasoning applies equally to historical assets not owned at the time of filing.

21

to draw conclusions with a reasonable degree of professional certainty as to precise, day-over-day value, produce at least 900 additional financial reports, and proffer evidence at a hearing on the same.

This immense undertaking would be profoundly expensive and complicated. For one, it is an open question whether an expert would even be *able* to produce precise, day-over-day appraisals of hard-to-value, illiquid assets like real property, private credit agreements, venture capital holdings, intellectual property, or art—a valuation task rarely, if ever, required in other domains. But even if such appraisals are possible, the process would be costly and immensely laborious, severely delaying the critical, time-sensitive work of the bankruptcy court. And it would invite mountains of venue-related discovery and disputes, spurring further delay. There is no indication Congress intended to break with historical practice to create such a convoluted, inefficient, and fundamentally illogical regime. *Cf. Barnes*, 689 F.2d at 205 ("We cannot say Congress intended to change the [historical, at-time-of-filing] meaning of 'principal assets' when it included that phrase" in the venue provision).

In the end, the proof's in the pudding. Despite appeals to text and context, Petitioners have not located *even a single case* applying their novel reading of Section 1408's "principal assets" provision. And that is understandable. Courts have not adopted Petitioners' reading because it is wrong. Text, context, and history

22

make clear that "principal assets" directs the temporal inquiry, not the other way around. Section 1408 requires courts to first determine what are a debtor's principal assets at the time of its bankruptcy filing, and then consider where those assets have been located during the preceding 180 days. That is consistent with the statute and historical practice. And that is what the bankruptcy court did.[7]

2.　　For all the reasons discussed above, the bankruptcy court's statutory interpretation is superior to the one Petitioners advocate. But even if the statutory question was debatable, Petitioners would still not be entitled to mandamus relief. Such relief is not appropriate unless the bankruptcy court committed "'a clear abuse of discretion or clear error of law,'" *McGraw-Hill*, 909 F.3d at 56, and Petitioners certainly have not cleared that high bar.

After holding a full-day evidentiary hearing and ordering supplemental briefing, the bankruptcy court issued a 28-page order that thoughtfully and thoroughly considered both sides of a novel statutory question from various angles. A1-28. The court acknowledged that "the issue before [the court] is difficult" and

---

[7]　Amicus Professor Adam J. Levitin raises concerns regarding venue manipulation. *See* ECF No. 6. As the bankruptcy court noted, the issue of venue manipulation is not new, and "at the urging of many in the bankruptcy community, Congress has considered proposals to narrow bankruptcy venue." A4-A5. But no such changes have been implemented and "Section 1408 remains broad by congressional design. That breadth is not a defect; it is a policy choice." A5. Professor Levitin offers no opinion on the substance of the bankruptcy court's ruling, and certainly no argument that it was manifestly erroneous.

that neither "suggested interpretation is without flaws." A8. The court also supplemented the parties' briefing with its "own research," which did not uncover any on-point case law regarding the "competing approaches." *Id.* Tellingly, Petitioners cite *no authority*—let alone binding authority—supporting their reading of the statute. Even if reasonable minds could disagree with the bankruptcy court's conclusion, that conclusion does not even approach "'an act amounting to a judicial usurpation of power.'" *Diet Drugs*, 418 F.3d at 378; *see McGraw-Hill*, 909 F.3d at 57 ("'[E]ven reversible error by itself is not enough to obtain mandamus.'" (alteration in original)). Accordingly, Petitioners' request for mandamus relief must be denied.

## II.    EVEN IF MANDAMUS WERE APPROPRIATE WITH RESPECT TO VENUE, THE BANKRUPTCY COURT'S ORDERS SHOULD NOT BE VACATED

Even if Petitioners were right about venue, there is no basis for this Court to grant their extraordinary request to vacate all "orders entered in the cases." Pet. 3; *see* Pet. 29. For one thing, Petitioners do not come close to establishing a "'clear and indisputable'" right to such relief. *Gillette v. Prosper*, 858 F.3d 833, 841 (3d Cir. 2017). There is no rule that orders issued by a court where venue does not lie are automatically void or that they should be vacated. "Venue is not a jurisdictional prerequisite and its presence or absence does not affect a court's authority to adjudicate." *Harris Corp. v. Nat'l Iranian Radio & Television*, 691 F.2d 1344, 1349

24

(11th Cir. 1982) (citing *Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 167-68 (1939)); *see also In re Whittaker Clark & Daniels Inc.*, 152 F.4th 432, 443 (3d Cir. 2025); *see also* Pet. 27 (appearing to acknowledge that venue and jurisdiction are distinct concepts). Accordingly, any "identified defects of venue would not affect the validity of the Bankruptcy Court's . . . order[s]." *Johnson v. Johnson*, 644 B.R. 246, 252 (N.D. Ga. 2022); *see In re Houghton Mifflin Harcourt Publ'g Co.*, 474 B.R. 122, 138 (Bankr. S.D.N.Y. 2012) (refusing to stay reorganization plan's effective date because of venue concerns).

Petitioners are thus wrong to invoke a supposed categorical rule that "[w]hen venue orders are successfully challenged, vacatur is appropriate, including of merits orders." Pet. 26. Indeed, Petitioners' own cases strongly indicate that no such rule exists. Two cases—*In re Chamber of Commerce of the United States of America*, 105 F.4th 297, 300 (3d Cir. 2024) and *Hayman Cash Register Co. v. Sarokin*, 669 F.2d 162, 170 (3d Cir. 1982)—involved vacatur of an improperly granted transfer order. Of course, a transfer order can—and should—be vacated if it is found to be legally unsound. Another case—*United States v. Auernheimer*—involved vacatur of a criminal conviction, which presented unique constitutional issues because "'if venue is improper no constitutionally valid verdict could be reached regardless of the [potentially] overwhelming evidence against the defendant.'" 748 F.3d 525, 539 (3d Cir. 2014) (alteration in original). And Petitioners' last case—*Cottman*

25

*Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 297 (3d Cir. 1994)—concluded that vacatur of the district court's judgment was in the "interest of justice" only because the judgments were obtained by default and thus "proceeding with the case in an improper forum had a substantially detrimental effect on defendants." Petitioners have made no such showing here.

Petitioners' cases simply do not support a categorical rule of vacatur, and certainly not with respect to interim, emergency orders entered by a bankruptcy court to allow a debtor to continue to function during its bankruptcy.[8]

---

[8] Of course, Petitioners could have eliminated the need for any such relief by seeking stays of the bankruptcy court's orders while it pursued appeals. *See* Fed. R. Bankr. P. 8007. Indeed, Petitioners *have* appealed to the district court from the interim DIP Order—and have made clear in their joint request to have the interim DIP Order certified for immediate appeal to this Court that they will challenge that order based on their theory that venue is improper in the District of New Jersey. *See* A474-78. Petitioners have elected not to request a stay pending appeals of the interim DIP Order, nor even to appeal the other orders. Mandamus relief is not available to remedy Petitioners' own failure to act. *In re Argueta*, 207 F. App'x 233, 234 (3d Cir. 2006).

## CONCLUSION

This Court should deny the petition.

Dated: March 23, 2026

Respectfully submitted,

Ray C. Schrock
Joseph Serino, Jr.
Candace M. Arthur
Zachary F. Proulx
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200

Ryan Preston Dahl
LATHAM & WATKINS LLP
330 North Wabash Avenue
Suite 2800
Chicago, IL 60611
(312) 876-7700

*s/ Roman Martinez*
Roman Martinez
Uriel Hinberg
Peter Prindiville
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
(202) 637-2200
roman.martinez@lw.com

*Counsel for Clayton Dubilier & Rice LLC, on behalf of itself and its affiliates and/or related entities, including CD&R Labels Holdings, L.P., Arawak XI, L.P., Arawak XI-A, L.P., CD&R Investment Associates XI, Ltd., and Clayton, Dubilier & Rice Fund XI (Credit Investor), Ltd.*

27

**COMBINED CERTIFICATIONS**

**I.    CERTIFICATE OF BAR MEMBERSHIP**

I, Roman Martinez, counsel for debtor, hereby certify pursuant to Third Circuit Rule 28.3(d) that I am a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

**II.    CERTIFICATE OF WORD COUNT**

I hereby certify that the foregoing court-ordered response complies with the word limit in Federal Rule of Appellate Procedure 21(d).  This response contains 6,458 words as counted using the word-count feature in Microsoft Word, excluding the parts of the response exempted by Federal Rule of Appellate Procedure 32(f). This response complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 365 and 14-point Times New Roman font.

**III.    CERTIFICATE OF IDENTICAL BRIEFS**

Pursuant to Third Circuit Rule 31.1(c), I certify that the text of the electronic and hard copy forms of this response are identical.

## IV.    CERTIFICATE OF VIRUS CHECK

Pursuant to Third Circuit Rule 31.1(c), I certify that a virus check of the electronic PDF version of this response was performed using Microsoft Defender Antivirus (last updated March 23, 2026), and according to that program no virus was detected.

*s/ Roman Martinez*
Roman Martinez

# CERTIFICATE OF SERVICE

I hereby certify that on March 23, 2026, I filed the foregoing document with the Clerk of the United States Court of Appeals for the Third Circuit by using the CM/ECF system.  All participants in the case are registered CM/ECF users and will be served by the CM/ECF system.

 *s/ Roman Martinez*
Roman Martinez