# No. 26-01595

## In the United States Court of Appeals for the Third Circuit

In Re: Cross-Holder Ad Hoc Group & Excluded First Lien Lenders,

*Petitioners.*

On Petition for a Writ of Mandamus to the Bankruptcy Court for the District of New Jersey in No. 26-10910-MBK, Hon. Michael B. Kaplan

---

## DEBTORS' RESPONSE TO PETITION FOR WRIT OF MANDAMUS

Michael D. Sirota, Esq.
    *Counsel of Record*
COLE SCHOTZ P.C.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

1

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to this Court's order entered on February 19, 2026, the Debtors (defined herein) filed their Disclosure Statement on February 20, 2026, [3d Cir. Dkt. No. 12, Case 26-1312]. Debtors reiterate their disclosures below, pursuant to Rule 26.1 and Third Circuit LAR 26.1:

Debtor Multi-Color Corporation is a subsidiary of LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor Collotype International Holdings Pty Limited is a subsidiary of Magnus Donners Pty Limited; Multi-Color Australia LLC; Multi-Color Australia Acquisition Pty. Limited; Multi-Color Australia Holdings Pty. Ltd; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor Cunamara Investments Pty Limited is a subsidiary of MCC Labels Australia Pty Ltd; MCC Labels Australia Holdings Pty Ltd; Collotype International Holdings Pty Ltd; Multi-Color Australia

i

Holdings Pty. Ltd; Magnus Donners Pty Limited; Multi-Color Australia LLC; Multi-Color Australia Acquisition Pty. Limited; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor Exportaciones IM -Promocion, S.A. de C.V. is a subsidiary of Multi-Color UK Holdings 2 Limited; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor Grafo Regia, S. de R.L. de C.V. is a subsidiary of GPC III Packaging Holdings Mexico S. de R. L. de C.V.; GPC III B.V.; Multi-Color UK Holdings 2 Limited; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor Hally Group Pty Limited is a subsidiary of Collotype International Holdings Pty Ltd; Multi-Color Australia Holdings Pty. Ltd;

Magnus Donners Pty Limited; Multi-Color Australia LLC; Multi-Color Australia Acquisition Pty. Limited; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor Hally Labels Pty Limited is a subsidiary of Hally Group Pty Ltd; Collotype International Holdings Pty Ltd; Multi-Color Australia Holdings Pty. Ltd; Magnus Donners Pty Limited; Multi-Color Australia LLC; Multi-Color Australia Acquisition Pty. Limited; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor Hexagon Holdings Limited is a subsidiary of Multi-Color (New Zealand) Holdings Pty Limited; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor Kiwi Labels Limited is a subsidiary of Hexagon Holdings Limited; Multi-Color (New Zealand) Holdings Pty Limited; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor Labels Buyer, LLC does not have a parent that is a corporation, and no publicly held corporation directly owns 10% or more of its equity.

Debtor LABL Acquisition Corporation is a subsidiary of LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor LABL Holding Corporation is a subsidiary of Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor LABL, Inc. is a subsidiary of LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation;

and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor LABL Intermediate Holding Corporation is a subsidiary of LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor MCC Ablis France SAS is a subsidiary of MCC France F&B SAS; Multi-Color Hann. Muenden Germany GmbH; Multi-Color Germany Holding GmbH; Multi-Color German Group GmbH; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor MCC Adelaide Pty Limited is a subsidiary of Collotype International Holdings Pty Ltd; Magnus Donners Pty Limited; Multi-Color Australia LLC; Multi-Color Australia Acquisition Pty. Limited; Multi-Color Australia Holdings Pty. Ltd; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor MCC Albany Limited is a subsidiary of Hexagon Holdings Limited; Multi-Color (New Zealand) Holdings Pty Limited; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor MCC Auckland Limited is a subsidiary of Hexagon Holdings Limited; Multi-Color (New Zealand) Holdings Pty Limited; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor MCC Cardiff Ltd. is a subsidiary of Multi-Color UK Holdings 2 Limited; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor MCC Christchurch Limited is a subsidiary of Hexagon Holdings Limited; Multi-Color (New Zealand) Holdings Pty Limited;

Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor MCC France EST SAS is a subsidiary of MCC France F&B SAS; Multi-Color Hann. Muenden Germany GmbH; Multi-Color Germany Holding GmbH; Multi-Color German Group GmbH; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor MCC France Ouest SAS, is a subsidiary of MCC France F&B SAS; Multi-Color Hann. Muenden Germany GmbH; Multi-Color Germany Holding GmbH; Multi-Color German Group GmbH; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor MCC Griffith Pty Ltd is a subsidiary of Collotype International Holdings Pty Ltd; Magnus Donners Pty Limited; Multi-Color Australia LLC; Multi-Color Australia Acquisition Pty. Limited; Multi-Color Australia Holdings Pty. Ltd; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor MCC Label Sydney Pty Ltd is a subsidiary of Hally Labels Pty Limited; Hally Group Pty Ltd; Collotype International Holdings Pty Ltd; Magnus Donners Pty Limited; Multi-Color Australia LLC; Multi-Color Australia Acquisition Pty. Limited; Multi-Color Australia Holdings Pty. Ltd; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor MCC Labels Australia Holdings Pty Ltd is a subsidiary of Collotype International Holdings Pty Ltd; Magnus Donners Pty Limited; Multi-Color Australia LLC; Multi-Color Australia Acquisition Pty. Limited; Multi-Color Australia Holdings Pty. Ltd; Multi-Color

Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor MCC Labels Australia Pty Ltd is a subsidiary of MCC Labels Australia Holdings Pty Ltd; Collotype International Holdings Pty Ltd; Magnus Donners Pty Limited; Multi-Color Australia LLC; Multi-Color Australia Acquisition Pty. Limited; Multi-Color Australia Holdings Pty. Ltd; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor MCC Manufacturing, Inc. is a subsidiary of Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor MCC Melbourne Pty Ltd is a subsidiary of Cunamara Investments Pty Limited; MCC Labels Australia Pty Ltd; MCC Labels

Australia Holdings Pty Ltd; Collotype International Holdings Pty Ltd; Magnus Donners Pty Limited; Multi-Color Australia LLC; Multi-Color Australia Acquisition Pty. Limited; Multi-Color Australia Holdings Pty. Ltd; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor MCC Nantes France SAS is a subsidiary of MCC France F&B SAS; Multi-Color Hann. Muenden Germany GmbH; Multi-Color Germany Holding GmbH; Multi-Color German Group GmbH, Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor MCC Perth Pty Ltd is a subsidiary of MCC Adelaide Pty Ltd; Collotype International Holdings Pty Ltd; Magnus Donners Pty Limited; Multi-Color Australia LLC; Multi-Color Australia Holdings Pty. Ltd; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding

x

Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor MCC Poznan Sp. z o.o. is a subsidiary of MCC Verstraete N.V.; Haendler & Natermann Benelux SPRL/BVBA; Multi-Color Heiligenstadt Germany GmbH; Multi-Color Hann. Muenden Germany GmbH; Multi-Color Germany Holding GmbH; Multi-Color German Group GmbH; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor MCC Smart Packaging Solutions, LLC is a subsidiary of MCC Manufacturing, Inc.; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor MCC Verstraete Australia Pty Ltd is a subsidiary of Collotype International Holdings Pty Ltd; Magnus Donners Pty Limited; Multi-Color Australia LLC; Multi-Color Australia Holdings Pty. Ltd; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation;

LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor MCC Verstraete In Mold Labels USA Inc. is a subsidiary of Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor MCC Verstraete N.V. is a subsidiary of Haendler & Natermann Benelux SPRL/BVBA; Multi-Color Heiligenstadt; Multi-Color Germany Holding GmbH; Multi-Color German Group GmbH; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor MCC-Norwood, LLC is a subsidiary of Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and

Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor Multi-Color (New Zealand) Holdings Pty Limited is a subsidiary of Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor Multi-Color (New Zealand) Pty Limited is a subsidiary of Multi-Color (New Zealand) Holdings Pty Limited; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor Multi-Color (QLD) Pty Ltd is a subsidiary of MCC Label Sydney Pty Ltd; Hally Labels Pty Limited; Hally Group Pty Ltd; Collotype International Holdings Pty Ltd; Magnus Donners Pty Limited; Multi-Color Australia LLC; Multi-Color Australia Holdings Pty. Ltd; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation;

and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor Multi-Color Australia Acquisition Pty. Limited is a subsidiary of Multi-Color Australia Holdings Pty. Ltd; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor Multi-Color Australia Holdings Pty. Limited is a subsidiary of Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor Multi-Color Bingen Germany GmbH is a subsidiary of Multi-Color Germany Holding GmbH; Multi-Color German Group GmbH; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor Multi-Color Canada, Inc. is a subsidiary of MCC Manufacturing, Inc.; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor Multi-Color Clydebank Scotland Limited is a subsidiary of Multi-Color UK Holdings 2 Limited; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor Multi-Color Cwmbran UK Limited is a subsidiary of Multi-Color UK Holdings 2 Limited; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor Multi-Color Daventry England Ltd is a subsidiary of Multi-Color UK Holdings 2 Limited; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding

xv

Corporation; LABL Holding Corporation; and Labels Buyer, LLC and no publicly held corporation directly owns 10% or more of its equity.

Debtor Multi-Color Hann. Muenden Germany GmbH is a subsidiary of Multi-Color Germany Holding GmbH; Multi-Color German Group GmbH; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor Multi-Color Heiligenstadt Germany GmbH is a subsidiary of Multi-Color Germany Holding GmbH; Multi-Color German Group GmbH; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor Multi-Color Label Corporation-Mexico, S.A. de C.V. is a subsidiary of Multi-Color UK Holdings 2 Limited; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and

Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor Multi-Color Labels Castlebar Ireland Limited is a subsidiary of Multi-Color Labels Ireland Limited; Multi-Color UK Holdings 2 Limited; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor Multi-Color Labels Ireland Limited is a subsidiary of Multi-Color UK Holdings 2 Limited; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor Multi-Color Montreal Canada Corporation is a subsidiary of Multi-Color Canada, Inc.; MCC Manufacturing, Inc.; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor Multi-Color UK Holdings 2 Limited is a subsidiary of Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor Multi-Color Warsaw Poland Sp. z o.o. is a subsidiary of Multi-Color UK Holdings 2 Limited; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor Spear Group Holdings Limited is a subsidiary of Multi-Color UK Holdings 2 Limited; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation; LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

Debtor W/S Packaging Group, LLC is a subsidiary of MCC Manufacturing, Inc.; Multi-Color Corporation; LABL, Inc.; LABL Acquisition Corporation; LABL Intermediate Holding Corporation;

LABL Holding Corporation; and Labels Buyer, LLC, and no publicly held corporation directly owns 10% or more of its equity.

No publicly held corporation which is not a party to the proceeding before this Court has a financial interest in its outcome.

The 20 largest unsecured creditors in the Debtors' Chapter 11 cases are: (i) Wilmington Trust, National Association, as Trustee; (ii) Avery Dennison Corp; (iii) INX International Ink Co.; (iv) Sappi; (v) Mitsubishi Corporation; (vi) Sun Chemical Corp.; (vii) Innovia Films; (viii) UPM-Kymmene Oyjz; (ix) Green Bay Packaging; (x) Bain & Company, Inc.; (xi) Siegwerk Druckfarben AG & Co. KGaA; (xii) Redwood-Levantor Sales Finance; (xiii) YUPO Corporation; (xiv) Mark Andy, Inc.; (xv) Microworks America Inc.; (xvi) Taghleef Industries LLC; (xvii) Heidelberg Materials; (xviii) Uber Freight US; (xix) Flint Group; and (xx) Inteplast Group Corporation.

Other active participants in the Debtors' Chapter 11 cases are: (i) Clayton, Dubilier & Rice, LLC, together with certain of its Affiliates that are party to the Restructuring Support Agreement; (ii) Anchorage Capital Advisors, L.P.; (iii) Apollo Capital Management, L.P.; (iv) Ares Management LLC; (v) Arini Capital Management Limited; (vi) Benefit

Street Partners L.L.C. / Alcentra Limited; (vii) Blackrock Financial Management, Inc.; (viii) J.P. Morgan Investment Management Inc. or JPMorgan Chase Bank, N.A.; (ix) KKR Credit Advisors (US) LLC; (x) Lord, Abbett & Co. LLC; (xi) Principal Global Investors, LLC; and (xii) Barclays Bank PLC.

# TABLE OF CONTENTS

**Page**

INTRODUCTION.............................................................................1

STATEMENT OF THE CASE .......................................................4

    A.    The Debtors File for Chapter 11 Relief. ................................4

    B.    The Bankruptcy Court Enters the Interim DIP Order and Schedules an Evidentiary Hearing...............................5

    C.    The Petitioners File Their First Petition for Mandamus....................................................................8

    D.    The Bankruptcy Court Enters its Venue Ruling...................9

ARGUMENT ................................................................................12

I.    PETIONERS HAVE NO CLEAR AND INDPISPUTABLE RIGHT TO THE WRIT. ................................................13

II.    PETITIONERS HAVE ADEQUATE ALTERNATIVE MEANS OF RELIEF.......................................................20

III.    PETITIONERS HAVE NOT SHOWN A LIKELIHOOD OF IRREPARABLE INJURY. .........................................24

    A.    No Cognizable Harm Arises from New Jersey Venue..........24

    B.    Prior Rulings Would Survive Under the Law-of-the Case Doctrine and 11 U.S.C. § 364(e)................................27

IV.    THE WRIT IS NOT APPROPRIATE UNDER THE CIRCUMSTANCES................................................30

    A.    Serial Mandamus Petitions on the Same Issue Undermine Judicial Economy................................31

    B.    Petitioners' Conduct Reflects Strategic Gamesmanship, Not Genuine Harm. ................................32

a.    Petitioners Believe They Would Receive More Favorable Treatment in Delaware. ............................ 32

b.    Petitioners Were Willing to Agree to New Jersey Venue if the Debtors Accepted Petitioners' DIP Proposal. ................................................................... 34

C.    The Bankruptcy Court's Proceedings Have Been Orderly, Thorough, and Protective of All Parties' Rights. ......................................................................... 36

CONCLUSION ................................................................................. 38

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Abbott Lab'ys,*
  96 F.4th 371 (3d Cir. 2024).........................................................1, 12, 13

*Am. Airlines v. Forman,*
  204 F.2d 230 (3d Cir. 1953) ...............................................................14, 19

*Am. Fed'n of Gov't Emps. v. Trump,*
  155 F.4th 1082 (9th Cir. 2025) ...........................................................16

*Bankers Life & Cas. Co. v. Holland,*
  346 U.S. 379 (1953)..........................................................................16, 25

*In re Blixseth,*
  484 B.R. 360 (B.A.P. 9th Cir. 2012)..................................................19

*In re Briscoe,*
  448 F.3d 201 (3d Cir. 2006) ..............................................................18, 20

*In re Calore Express Co.,*
  226 B.R. 727 (D. Mass. 1998)............................................................23

*Cheney v. U.S. Dist. Ct.,*
  542 U.S. 367 (2004)...........................................................................13

*Commc'n Workers of Am., AFL-CIO v. Am. Tel. & Tel. Co.,*
  932 F.2d 199 (3d Cir. 1991) ..............................................................13

*Dae Sub Choi v. Sushi Maru Express Corp.,*
  2018 WL 1087505 (D.N.J. Feb. 27, 2018)........................................28

*In re Diet Drugs Prods. Liab. Litig.,*
  418 F.3d 372 (3d Cir. 2005) ..............................................................13, 14

*In re Emerson Radio Corp.,*
  52 F.3d 50 (3d Cir. 1995) ..................................................................21

*In re Factor VIII or IX Concentrate Blood Prods. Litig.*,
159 F.3d 1016 (7th Cir. 1998)......................................................21

*Gulf Research & Development Co. v. Leahy*,
193 F.2d 302 (3d Cir. 1951), *aff'd,* 344 U.S. 861 (1952) .....................25

*Hahnemann Univ. Hosp. v. Edgar*,
74 F.3d 456 (3d Cir. 1996) .................................................. 13, 21, 32

*Hayman Cash Register Co. v. Sarokin*,
669 F.2d 162 (3d Cir. 1982) .......................................................27

*Heckler v. Ringer*,
466 U.S. 602 (1984).................................................................20

*In re Howmedica Osteonics Corp.*,
867 F.3d 390 (3d Cir. 2017) ................................................. 24, 30

*In re HTC Corp.*,
889 F.3d 1349 (Fed. Cir. 2018) ...................................................26

*Keane v. Dibbins*,
2023 WL 6785370 (2d Cir. Oct. 13, 2023) .......................................14

*Kerr v. U.S. Dist. Ct.*,
426 U.S. 394 (1976)............................................................. 12, 20, 31

*In re Khadr*,
823 F.3d 92 (D.C. Cir. 2016) ......................................................14

*Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors
Corp.*,
337 F.3d 314 (3d Cir. 2003) .......................................................35

*Martino v. U.S. Dist. Ct.*,
2024 WL 1773366 (E.D. Pa. Apr. 24, 2024)......................................23

*In re McGraw-Hill Glob. Educ. Holdings LLC*,
909 F.3d 48 (3d Cir. 2018) .................................................. 13, 30

*Midland Mut. Life Ins. Co. v. Sellers*,
101 B.R. 921 (S.D. Ohio 1989).....................................................23

*In re Murrin,*
461 B.R. 763 (Bankr. D. Minn. 2012) ................................................. 19

*Pa. R.R. Co. v. Kirkpatrick,*
203 F.2d 149 (3d Cir. 1953) ............................................................... 13

*In re Parish,*
81 F.4th 403 (5th Cir. 2023) ............................................. 14, 17, 18, 20

*In re Paxton,*
60 F.4th 252 (5th Cir. 2023) .............................................................. 21

*In re Sch. Asbestos Litig.,*
921 F.2d 1310 (3d Cir. 1990) ............................................................. 18

*Semper v. Gomez,*
747 F.3d 229 (3d Cir. 2014) ............................................................... 20

*In re St. Johnsbury Trucking Co.,*
176 B.R. 122 (S.D.N.Y. 1994) ............................................................ 23

*Temple Univ. Hosp., Inc. v. Sec'y U.S. Dep't of Health &
Hum. Servs.,*
2 F.4th 121 (3d Cir. 2021) .................................................................. 21

*United States v. Bellille,*
962 F.3d 731 (3d Cir. 2020) ............................................................... 21

*United States v. Choi,*
818 F. Supp. 2d 79 (D.D.C. 2011) ...................................................... 23

*United States v. Denson,*
603 F.2d 1143 (5th Cir. 1979) (*en banc*) ........................................... 14

*United States v. Mehrmanesh,*
652 F.2d 766 (9th Cir. 1981) .............................................................. 15

*Wagner v. U.S. Bankr. Ct.,*
92 B.R. 614 (E.D. Pa. 1988), *aff'd*, 877 F.2d 58 (3d Cir.
1989) .................................................................................................. 23

v

*Will v. United States*,
 389 U.S. 90 (1967)........................................................................ *passim*

**Statutes**

11 U.S.C. § 364(e) ................................................................. 27, 28, 29

11 U.S.C. § 1112(b) ...................................................................... 37

28 U.S.C. § 158(d) ..................................................................... 8, 22

28 U.S.C. § 1408 .................................................................... *passim*

28 U.S.C. § 1408(2) ......................................................................... 5

28 U.S.C. § 1412 ........................................................................... 37

28 U.S.C. § 1651 ....................................................................... 2, 23

**Rules**

Bankruptcy Rule 1009(a) ........................................................... 10

Federal Rule of Bankruptcy Procedure 8006.............................. 8

**Other Authorities**

H.R. 1017 ...................................................................................... 18

## INTRODUCTION

Petitioners are back before this Court for the second time in barely a month, raising the same issue and demanding once again that this Court grant the extraordinary remedy of a writ of mandamus. And once again, they have failed to satisfy any of the three requirements for obtaining that exceptional relief: "(1) a clear and indisputable abuse of discretion or error of law, (2) a lack of an alternate avenue for adequate relief, and (3) a likelihood of irreparable injury." *In re Abbott Lab'ys*, 96 F.4th 371, 379 (3d Cir. 2024).

First, there is no "clear and indisputable" error by the bankruptcy court—or any error, for that matter. In evaluating Petitioners' venue objection, the bankruptcy court received hundreds of pages of briefing, held an all-day evidentiary hearing with scores of exhibits and three live witnesses, solicited and reviewed supplemental briefing, and issued a thorough, 28-page opinion holding that venue is appropriate in the District of New Jersey. In that opinion, the bankruptcy court noted that the statutory interpretation issue at the center of the dispute is novel and there is no controlling authority and carefully considered both sides' arguments have merit. Ultimately, the bankruptcy court held that the

1

Debtors' construction of the venue statute was the better reading. Even if there were room for disagreement as to the bankruptcy court's decision, its measured ruling on an unsettled legal question following careful review does not remotely amount to a "usurpation of power" justifying mandamus. *Will v. United States*, 389 U.S. 90, 95 (1967).

Second, Petitioners have numerous other adequate avenues of relief that they have not even tried to pursue. Petitioners have a nearly two-month-old pending appeal in the district court in which they have expressly raised the question of whether venue in New Jersey is appropriate—the exact question they raise in their petition here. Petitioners have made no effort to advance that appeal, much less seek expedited consideration. Nor have Petitioners (1) appealed the bankruptcy court's latest venue order to the district court; (2) sought direct appeal to this Court of the venue order (despite doing so previously, which the bankruptcy court declined because it had not decided the question, as it now has); (3) requested the bankruptcy court's reconsideration of the venue order; (4) asked for a stay of that order pending appeal; or (5) sought mandamus from the district court, as the All Writs Act permits and courts have previously recognized in

bankruptcy cases. Petitioners also have not made any effort to ask for the upcoming confirmation hearing to be delayed. Instead, forsaking every single one of these alternative remedies, they have again jumped straight to this Court.

Third, Petitioners will suffer no harm from the venue order, much less irreparable harm. Petitioners principally argue that merely having to litigate in an improper venue constitutes irreparable harm warranting mandamus, but this Court has long rejected that proposition. Petitioners identify no actual harm from litigating in the District of New Jersey, and the bankruptcy court found none. Petitioners' real complaint is about the *results* of the proceedings thus far—as revealed by their request that this Court not only order a new venue but vacate every ruling in the case to date. That argument, too, is foreclosed by precedent and federal statute, but it reinforces that Petitioners bear no harm from the fact of the proceedings taking place in New Jersey. Instead, Petitioners' gambit is to claim a procedural violation and seek vacatur of all prior rulings in the hopes of gaining leverage in cases where they are dissatisfied with the substantive outcomes and actively negotiating a settlement. The Court

3

should not reward such efforts, particularly through the extraordinary remedy of mandamus.

## STATEMENT OF THE CASE

**A.    The Debtors File for Chapter 11 Relief.**

On January 29, 2026, the Debtors filed voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code in the Bankruptcy Court for the District of New Jersey.  In accordance with 28 U.S.C. § 1408, venue for these cases is appropriate in the District of New Jersey because the principal assets of Debtor MCC-Norwood, LLC ("Debtor Norwood") are cash funds held in two bank accounts located in New Jersey, and these assets have been located within the district for the greater portion of the 180-day period preceding the petition date than they were located in any other district.  For this reason, in a field requiring identification of the basis for venue, Debtor Norwood's chapter 11 petition (A172–210, the "Norwood Petition") stated that Debtor Norwood "has had its domicile, principal place of business, or principal assets in this district" for the relevant period of time.  A174.[1]  The

---

[1]  Although Petitioners take issue with the fact that the initial Norwood Petition did not specify that Debtor Norwood's principal assets were in a different location than its principal place of business, *see* Pet. 3–4, the Amended Norwood Petition clarified this point by expressly

4

remaining Debtors properly filed petitions in this district because their affiliate (Debtor Norwood) properly filed its petition in this district, establishing proper venue in the District of New Jersey for the remaining Debtors under 28 U.S.C. § 1408(2).

### B.    The Bankruptcy Court Enters the Interim DIP Order and Schedules an Evidentiary Hearing.

During the First Day Hearing, the Debtors sought customary first-day relief from the bankruptcy court.  In particular part, the Debtors filed a motion (the "DIP Motion") seeking entry of interim and final orders granting the Debtors critical postpetition, debtor-in-possession financing to fund these chapter 11 cases—without which funds the Debtors could not continue operating their business for even one more week.  *See* A260:21; [Bankr.  ECF.  Nos. 26, 31, 106].

Less than an hour before the First Day Hearing began, the Cross-Holder Ad Hoc Group filed its *Motion to Dismiss or, in the Alternative, Transfer the Chapter 11 Case* (A211–15, the "Venue Motion"), arguing

---

stating that Norwood's principal assets are located at 301 Sylvan Ave., Englewood Cliffs, NJ 07632.  A626.  The bankruptcy court rejected Petitioners' argument that "MCC-Norwood's original petition constituted a binding judicial admission" or that the amendment was otherwise invalid, A5–6, and Petitioners do not seriously dispute that (correct) determination in their latest Petition.

that the case should be dismissed or transferred because Debtor Norwood's Petition failed to establish venue in the District of New Jersey. A211–15. When the First Day Hearing commenced, the Cross-Holder Ad Hoc Group raised its newly asserted venue objection but argued only that Debtor Norwood "has [other] assets" in addition to its two bank accounts in New Jersey. A238. The Excluded First Lien Lenders joined the objection, and the U.S. Trustee reserved its rights to later contest venue. A242 (Excluded Lenders); A240 (U.S. Trustee). Petitioners further requested that the bankruptcy court decide whether venue was proper before entering any orders in the case, A238–39, which would have stalled critical first-day orders allowing the Debtors to access postpetition financing, use cash collateral, and pay their administrative expenses (A29–132, collectively the "Interim DIP Order").

In response, the Debtors explained that Debtor Norwood's principal assets are two bank accounts held at ConnectOne Bank in New Jersey, thus situating Debtor Norwood's principal assets in the District of New Jersey and establishing proper venue. A243. The Debtors also stated that they would submit further evidence to the bankruptcy court in support of this assertion and in opposition to the Venue Motion. *Id.*

In light of (1) the *prima facie* establishment of venue through the Norwood Petition but subsequent factual dispute raised by Petitioners and (2) the Debtors' pressing need for immediate funding, the bankruptcy court determined that venue had been sufficiently established for purposes of proceeding with the First Day Hearing. *See* A569 (bankruptcy court later noting that "what it had in front of it was a petition signed under penalty of perjury in which the declarant swore that venue was proper"). Before turning to the other issues before it, the bankruptcy court set an evidentiary hearing on the Venue Motion and instructed the parties to meet and confer regarding venue-related discovery. A456–58. The bankruptcy court expressly stated that all parties' rights to challenge venue would be preserved, and the Court's orders would allow "ample time to consider where this case should be heard." A244–45.

The bankruptcy court then addressed the time-sensitive first-day issues before it, including the Debtors' request for critical financing via the DIP Motion. A245. As the bankruptcy court later observed, to have "delay[ed] the consideration of the expedited first day matters would

harm debtors, harm employees, [harm] trading partners, and transform a venue challenge into a weapon and a stalling tactic." A570.

At the conclusion of the First Day Hearing, the bankruptcy court entered, among other things, the Interim DIP Order, which granted interim relief on the DIP Motion and provided the Debtors with access to cash urgently needed to sustain them until the second-day hearing. *See* A29–132. Although the Interim DIP Order contained a provisional finding that venue was proper, the bankruptcy court expressly included "the reservation of rights set forth by the Court during its ruling given at the continued hearing on February 2, 2026, with regard to the parties' rights to challenge and contest venue of this case." A37.

## C. The Petitioners File Their First Petition for Mandamus.

At the conclusion of the First Day Hearing, the Cross-Holder Ad Hoc Group asked the bankruptcy court to certify the Interim DIP Order for direct appeal to this Court pursuant to 28 U.S.C. § 158(d) and Federal Rule of Bankruptcy Procedure 8006. The bankruptcy court declined to do so without further briefing and argument. A455–56. On February 4, 2026, the Petitioners filed notices of appeal from the Interim DIP Order. A460 (Cross-Holder Group) and A465 (Excluded Lenders). They also

filed a joint request to certify the Interim DIP Order for direct appeal to this Court (the "Joint Request").

On February 10, 2026, after considering briefing and oral argument from all parties, the bankruptcy court denied Petitioners' Joint Request for direct appeal of the Interim DIP Order to this Court. The court explained that it had not yet ruled on the Venue Motion, instead having "deferred consideration" of the motion pending further briefing and factual development. A568.

Petitioners then filed their first petition for writ of mandamus with this Court. No. 26-01312 (3d Cir., opened Feb. 13, 2026); A578–625 (the "First Mandamus Petition"). This Court requested a response, which the Debtors provided, explaining that Petitioners had not shown clear and indisputable error, had other means of relief, and had not shown irreparable harm, among other flaws. The Court denied the First Mandamus Petition two business days after receiving the Debtors' response. A784.

**D.     The Bankruptcy Court Enters its Venue Ruling**

With no request for a stay from the Petitioners, proceedings continued in the bankruptcy court. The parties collectively submitted

seven briefs in the initial round of briefing on the venue question. A2946–3045. The bankruptcy court then held an all-day hearing on the Venue Motion on February 26, 2026. A3046. During the hearing, the court considered forty-three exhibits and testimony from three witnesses, all of whom Petitioners cross-examined at length. A3048. Following the hearing, the court requested and received from all parties a further round of supplemental briefing on venue. A3365; A3366–400.

Over two weeks later, on March 16, 2016, the bankruptcy court issued a 28-page opinion denying Petitioners' Venue Motion. The court's opinion began by detailing the text and legislative history of the "deliberately broad" bankruptcy venue statute, 28 U.S.C. § 1408. A4–5. It explained that Bankruptcy Rule 1009(a) clearly allowed the Debtors to amend their petition. A5–6. And it addressed at length the novel question of statutory interpretation presented by this case, before adopting the Debtors' reading of the venue statute. In the process, the bankruptcy court noted the "difficult" nature of the inquiry given the "less instructive" statutory language and "muddled" facts, the absence of any controlling decision of law, the existence of persuasive cases supporting the Debtors' position, and practical considerations cautioning

10

against Petitioners' reading of the statute. A6–12. Based on all these considerations, and after evaluating and finding facts regarding the locations of the Debtors' assets, the bankruptcy court determined that venue was proper in the District of New Jersey and denied the Venue Motion. A12–28.

Following the venue ruling, bankruptcy proceedings have continued. Petitioners have not asked any court to stay the Venue Order. Nor have Petitioners appealed that order to the District Court or asked either the bankruptcy court or District Court to certify a direct appeal to this Court. Additionally, Petitioners' appeal of the Interim DIP Order to the District Court—in which Petitioners have raised as a question for appeal "[w]hether the bankruptcy court erred in finding that venue was appropriate for entry of the [o]rder," [Bankr. ECF No. 291 at 2] remains active, with the latest filing having been submitted on March 18, 2026. *See* No. 3:26-cv-01061-ZNQ (D.N.J.). Petitioners have made no effort to expedite that appeal. Nor have Petitioners sought any relief from the bankruptcy court regarding the confirmation hearing currently scheduled for March 31.

11

Instead, two days after the bankruptcy court's order, Petitioners filed their second petition for a writ of mandamus with this court.

As reflected in a publicly filed mediation order, the parties are engaged in a court-ordered mediation (the "Mediation") before the Honorable Joseph A. Greenaway, Jr. (ret.).  A hearing scheduled for March 23, 2026, concerning final approval of the Debtors' DIP financing facility has been adjourned in the bankruptcy court at the request of the Debtors, the Petitioners, and certain other stakeholder to provide the parties with additional time to finalize a comprehensive settlement of disputes in the chapter 11 cases.

## ARGUMENT

"The remedy of mandamus is a drastic one, to be invoked only in extraordinary situations." *Kerr v. U.S. Dist. Ct.*, 426 U.S. 394, 402 (1976). As such, "only exceptional circumstances amounting to a judicial 'usurpation of power' will justify the invocation of this extraordinary remedy." *Will*, 389 U.S. at 95.  The petitioner must show "(1) a clear and indisputable abuse of discretion or error of law, (2) a lack of an alternate avenue for adequate relief, and (3) a likelihood of irreparable injury." *In re Abbott*, 96 F.4th at 379.  Even when these requirements are met, this

12

Court "still has broad discretion in deciding whether to grant or deny a mandamus petition." *Id.* For the second time in a matter of weeks, the Petitioners have again failed to satisfy any of these requirements.

## I.    PETIONERS HAVE NO CLEAR AND INDPISPUTABLE RIGHT TO THE WRIT.

Mandamus requires far more than a showing that the lower court was wrong. The petitioner must demonstrate a "*clear and indisputable*" right to the writ—error "amounting to a judicial usurpation of power." *In re Diet Drugs Prods. Liab. Litig.*, 418 F.3d 372, 378–79 (3d Cir. 2005) (quoting *Cheney v. U.S. Dist. Ct.,* 542 U.S. 367, 380 (2004), and *Hahnemann Univ. Hosp. v. Edgar*, 74 F.3d 456, 461 (3d Cir. 1996)) (emphasis added). "'[E]ven reversible error by itself is not enough to obtain mandamus.'" *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 57 (3d Cir. 2018) (quoting *Commc'n Workers of Am., AFL-CIO v. Am. Tel. & Tel. Co.*, 932 F.2d 199, 208 (3d Cir. 1991)). Rather, any error "must 'at least approach the magnitude of an unauthorized exercise of judicial power.'" *Id.* (citation modified). If the propriety of the lower court's decision "is at least debatable," then "mandamus is inappropriate." *Pa. R.R. Co. v. Kirkpatrick*, 203 F.2d 149, 151 (3d Cir. 1953).

13

That exacting standard has never been met—and cannot be met— where a lower court resolves a genuinely contested question of statutory interpretation. This Court has long held that "[i]f a rational and substantial legal argument can be made in support of the questioned … ruling, the case is not appropriate for mandamus … even though on normal appeal a reviewing court might find reversible error." *Am. Airlines v. Forman*, 204 F.2d 230, 232 (3d Cir. 1953); *see also Diet Drugs*, 418 F.3d at 379 (noting that "the disputed meaning of a statute" is "in some sense the classic issue for appeal"). Other courts of appeals hold likewise. Mandamus "is not for testing novel legal theories," *In re Parish*, 81 F.4th 403, 407 (5th Cir. 2023), and "'the writ will not issue' where a statute's interpretation 'is to any degree debatable,'" *id.* at 409 (quoting *United States v. Denson*, 603 F.2d 1143, 1147 n.2 (5th Cir. 1979) (*en banc*)); *see also Keane v. Dibbins*, 2023 WL 6785370, at *3 (2d Cir. Oct. 13, 2023) (denying mandamus where, "although [petitioners'] reading of the statutory scheme is not implausible," entitlement to writ was "not 'clear and indisputable'"); *In re Khadr*, 823 F.3d 92, 99–100 (D.C. Cir. 2016) (finding no "'clear and indisputable' right to mandamus relief" where petitioner's statutory argument "packs substantial force … [b]ut

14

the Government raises substantial responses"); *United States v. Mehrmanesh*, 652 F.2d 766, 770–71 (9th Cir. 1981) (denying mandamus where "[t]he wording of the Act may be subject to another interpretation, but we cannot say that the district court's reading was an unreasonable one," particularly since "[t]he court had no precedent to guide it").

That is precisely the situation here. The bankruptcy court did not indisputably violate settled law. Rather, it grappled with a novel question of statutory interpretation under 28 U.S.C. § 1408—one it candidly described as a "jump ball." A11. The court acknowledged that "the issue before this Court is difficult and none of the parties' suggested interpretations is without flaws." A8. It did not find "any case law directly on point." A11. It addressed that Petitioners' preferred "Time-Based Approach" is "straightforward and logical," but—in a phrase Petitioners conspicuously omit—"not the only approach which fits comfortably within the statute." A7. And it ultimately concluded that the Debtors' proposed "Asset-Based Approach" produces "more logical results and construes the statute in a way that is more consistent with the functional concerns of the administration of the bankruptcy estate." A11.

In short, although the bankruptcy court ultimately adopted the Debtors' construction of the venue statute, it identified the issue as a close one, wrestled with competing interpretations, acknowledged the perceived strengths of Petitioners' reading, and explained at length why it nonetheless reached the opposite conclusion.  That is the polar opposite of a "clear and indisputable" error or "judicial usurpation of power."  *Will*, 389 U.S. at 95–96; *see also id.* at 103–04 (vacating mandamus writ where record failed to demonstrate that district judge had adopted "a policy in deliberate disregard" of the rules, and emphasizing that "the most that can be claimed on this record is that petitioner may have erred in ruling on matters within his jurisdiction"); *Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 382 (1953) (holding that a ruling "made in the course of the exercise of the court's jurisdiction to decide issues properly brought before it," even "if erroneous," involved "no abuse of judicial power"); *see also Am. Fed'n of Gov't Emps. v. Trump*, 155 F.4th 1082, 1093 (9th Cir. 2025) (denying mandamus where the district court had "exercised care and restraint" and afforded "careful consideration" to competing arguments).

16

Indeed, far from acting arbitrarily, the bankruptcy court engaged in a thorough and deliberate process at every step. It conducted an all-day evidentiary hearing during which it received live testimony from three witnesses—all subject to extensive cross-examination—along with scores of documentary exhibits. A1–2. Despite having already received and reviewed seven briefs before the hearing, the court requested and received supplemental venue briefing after the hearing, receiving submissions from six different parties. And it issued a detailed, 28-page opinion carefully interpreting the statutory scheme, addressing cases, finding facts, and analyzing each category of contested asset—bank accounts, patents, intercompany balances, D&O insurance policies, and other contract rights—under different frameworks. *See, e.g.*, A8–10. None of these thorough undertakings suggests "clear and indisputable" error.

The absence of governing precedent reinforces this conclusion. When a mandamus petitioner's interpretation lacks "any controlling authority," the construction is not so "clearly established" to support a writ. *Parish*, 81 F.4th at 409. Here, as the bankruptcy court recognized, A8, there is no controlling case from this Court or the Supreme Court,

17

and Petitioners' cited authorities fail "to establish their theory beyond debate." *Parish*, 81 F.4th at 410; *see also In re Briscoe*, 448 F.3d 201, 216 (3d Cir. 2006) (denying mandamus where petitioners failed to demonstrate a "clear and indisputable" right to relief, emphasizing that "mere doubt" about the lower court's ruling "is never enough to justify mandamus relief") (quoting *In re Sch. Asbestos Litig.*, 921 F.2d 1310, 1314 (3d Cir. 1990)). On a question that no court has previously resolved, there is no "clear and indisputable" answer for the bankruptcy court to have defied.

The bankruptcy court's statutory reasoning, moreover, was grounded in recognized interpretive principles—not invented from whole cloth. The court observed that Congress has repeatedly been invited to narrow § 1408 and has declined to do so—including by rejecting H.R. 1017, which would have specifically excluded cash from the "principal assets" analysis. A4–5. It concluded that "[w]here Congress is aware of an issue and repeatedly declines to amend the statute, courts are not free to displace Congress and narrow the statute judicially." A4. It then adopted the Debtors' interpretation, which is "more consistent with the functional concerns of the administration of the bankruptcy estate,"

18

citing *In re Murrin*, 461 B.R. 763 (Bankr. D. Minn. 2012), and *In re Blixseth*, 484 B.R. 360 (B.A.P. 9th Cir. 2012). That interpretation is correct and the bankruptcy court's analysis was sound. But even if that were not the case, and "on normal appeal a reviewing court might find reversible error," it is unquestionably the case that "a rational and substantial legal argument can be made in support of" the bankruptcy court's ruling, rendering this case "not appropriate for mandamus." *Am. Airlines*, 204 F.2d at 232.

Petitioners' arguments confirm that the interpretation the bankruptcy court adopted does not amount to "clear and indisputable" error. The Petition devotes pages to competing statutory text, context, canons of construction, hypothetical scenarios, and dueling cases, *see* Pet. 13–25—precisely the kind of extended interpretive dispute that, at a minimum, characterizes a genuinely contested legal question rather than a black-and-white error. If the answer were truly "clear and indisputable," Petitioners would not need a dozen pages to explain it.

Finally, this Court should be wary of using mandamus to resolve a contested statutory question in the first instance—particularly one with implications well beyond this case. Mandamus "is not for testing novel

19

legal theories." *Parish*, 81 F.4th at 407. And the truncated briefing and expedited timeline for mandamus cases are ill-suited to the careful deliberation such questions demand. *See Will*, 389 U.S. at 106–07 ("[D]ue regard ... for the 'drastic and extraordinary' nature of the mandamus remedy ... demands that a court issuing the writ give a reasoned exposition of the basis for its action."); *Briscoe*, 448 F.3d at 213 (cautioning that "[a] judicial readiness to issue the writ of mandamus in anything less than an extraordinary situation would run the real risk of defeating the very policies sought to be furthered" by the congressional policy against piecemeal appeals) (quoting *Kerr*, 426 U.S. at 403). Although the Debtors' interpretation of § 1408 is more sound, if the correct interpretation of the statute truly is a "jump ball," A11, this Court should allow that novel question to be vetted and resolved through ordinary appellate processes, not through the extraordinary and hurried remedy of mandamus.

## II.   PETITIONERS HAVE ADEQUATE ALTERNATIVE MEANS OF RELIEF

Mandamus "'is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief.'" *Semper v. Gomez*, 747 F.3d 229, 251 (3d Cir. 2014) (quoting *Heckler v. Ringer*, 466 U.S. 602, 616

(1984)); *accord Temple Univ. Hosp., Inc. v. Sec'y U.S. Dep't of Health & Hum. Servs.*, 2 F.4th 121, 132 (3d Cir. 2021); *see also United States v. Bellille*, 962 F.3d 731, 737 n.3 (3d Cir. 2020) (explaining that mandamus is "the last resort"); *In re Paxton*, 60 F.4th 252, 259 (5th Cir. 2023) ("mandamus is a remedy of last resort"); *In re Factor VIII or IX Concentrate Blood Prods. Litig.*, 159 F.3d 1016, 1019 (7th Cir. 1998) (mandamus is "a safety hatch where no other vehicle for obtaining judicial relief is available"). Petitioners have not come close to satisfying this requirement.

To begin with, it is black-letter law that mandamus "should not be issued where relief may be obtained through an ordinary appeal." *Hahnemann*, 74 F.3d at 461; *see also In re Emerson Radio Corp.*, 52 F.3d 50, 55 (3d Cir. 1995) (citing authorities). Yet Petitioners are actively pursuing an appeal of the Interim DIP Order in the district court. And in that appeal—filed nearly two months ago—Petitioners have specifically raised as one of the questions for appeal "[w]hether the Bankruptcy Court erred in finding that venue was appropriate for entry of" the Interim DIP Order. Bankr. ECF No. 291 at 2. That is the same question they raise in their latest mandamus Petition challenging the

21

venue order. Not only, then, can Petitioners obtain their requested relief through an ordinary appeal—*that is exactly what they are doing*.

It is no answer for Petitioners to contend that relief from the district court is inadequate given the upcoming March 31 confirmation hearing, and only this Court can act before then. Since filing their appeal on February 3, Petitioners have made absolutely no effort to expedite their appeal in the District Court; indeed, they took the full two weeks to file their designation of the record and statement of issues. Nor have they made any effort to postpone the confirmation hearing, much less in light of that pending appeal. Petitioners cannot sit on their rights and then claim exigent circumstances that demand this Court's immediate intervention.

Petitioners have also made no effort whatsoever to pursue any of their other available options for seeking review of the bankruptcy court's venue order. They have not appealed that order to the district court. They have not sought direct appellate review to this Court under 28 U.S.C. § 158(d), even though (i) they have already shown a willingness to employ that process in this case, *see supra* at 8-9, and (ii) the bankruptcy court denied that prior attempt only because it had not yet ruled on the

Venue Motion (which it now has). *See* A568. Additionally, Petitioners have not asked the bankruptcy court to reconsider its decision; they have not sought a stay of that decision pending appeal; and they have not sought mandamus from the District Court, even though, just like courts of appeals, "[d]istrict courts have authority under the All Writs Act to issue a writ in the nature of mandamus." *Martino v. U.S. Dist. Ct.*, 2024 WL 1773366, at *1 (E.D. Pa. Apr. 24, 2024); *see also, e.g., United States v. Choi*, 818 F. Supp. 2d 79, 86 (D.D.C. 2011) (noting that district courts have, "in an appellate capacity, issued writs of mandamus directed to bankruptcy courts"); *In re Calore Express Co.*, 226 B.R. 727, 733 (D. Mass. 1998) (district court issuing writ of mandamus to bankruptcy court); *In re St. Johnsbury Trucking Co.*, 176 B.R. 122, 126 (S.D.N.Y. 1994) (same); *Midland Mut. Life Ins. Co. v. Sellers*, 101 B.R. 921, 926 (S.D. Ohio 1989) (recognizing district court's ability to issue mandamus toward bankruptcy court); *Wagner v. U.S. Bankr. Ct.*, 92 B.R. 614, 616 (E.D. Pa. 1988) (same), *aff'd*, 877 F.2d 58 (3d Cir. 1989).

Instead, while the ink was barely dry on the venue order, Petitioners skipped all of these options and simply demanded (again) that this Court issue a writ of mandamus to the bankruptcy court. The

Petitioners' decision to rush to this Court twice belies the true purpose of the Petition: to apply pressure in the ongoing negotiations in the Mediation and in the chapter 11 cases generally. The procedural rapidity of seeking mandamus simply applies more time-pressure than does pursuing any of the other numerous avenues for relief available. This, too, is an inappropriate use of the mandamus process.

Petitioners' failure even to try to pursue any of their other adequate means of relief is an independent reason for denying their latest petition.

## III. PETITIONERS HAVE NOT SHOWN A LIKELIHOOD OF IRREPARABLE INJURY.

Petitioners also have not demonstrated "a likelihood of irreparable injury." *In re Howmedica Osteonics Corp.*, 867 F.3d 390, 401 (3d Cir. 2017). Their claimed irreparable harm is legally insufficient on its face, unsupported by any specific showing, curable through ordinary appellate remedies they have declined to pursue and—critically—illusory as a matter of law because the relief they actually seek (vacatur of prior orders) is unavailable regardless of this Court's ruling on venue.

### A.    No Cognizable Harm Arises from New Jersey Venue.

Petitioners' irreparable harm argument rests almost entirely on the proposition that litigating a bankruptcy case in an improper venue is

24

itself an irreparable injury sufficient to support mandamus relief. But this Court has long rejected that argument. In *Gulf Research & Development Co. v. Leahy*, 193 F.2d 302 (3d Cir. 1951), *aff'd,* 344 U.S. 861 (1952), after the district court denied a request to transfer venue, petitioners sought a writ of mandamus from this Court. *Id.* at 303. This Court denied the writ, holding that "[t]he mere fact that the petitioners will be put to the inconvenience and expense of what may prove to be a wholly abortive trial … does not constitute ground for invoking mandamus power." *Id.* at 304–05. Rather, the Court stated, petitioners "will be entitled to assert [improper venue] on appeal and, if the objection is sustained, obtain from [the appeals court] an order vacating the judgment ... and directing the remand of the action to the [appropriate venue]." *Id.* at 304. Likewise, the Supreme Court has held that "the extraordinary writs cannot be used as substitutes for appeals, even though hardship may result from delay and perhaps unnecessary trial." *Bankers Life*, 346 U.S. at 383 (citation modified).

Notably, Petitioners identify no actual harm arising from the proceedings taking place in the New Jersey forum. And for good reason: as Judge Kaplan found, "[n]o party has taken issue with the fairness,

25

costs or efficiency of [the bankruptcy court's] continued administration of this case; nor has any party suggested that the Court's location poses difficulties for witnesses, stakeholders and their professionals." A24. Indeed, every hearing in this matter has been conducted remotely, and "no one has had to leave the confines of their office." A24 n.11.

What Petitioners actually object to is not the venue, but the substantive orders entered by the bankruptcy court—in particular, the Interim DIP Order and the confirmation proceedings—with which they disagree on the merits and each of which reduces Petitioners' negotiating leverage. *See infra at* III.B 27-30. Indeed, it is clear that Petitioners believe that they would have a legal advantage, and therefore a stronger negotiating position, in Delaware. *See infra at* IV.B.a. But these are grievances about the outcome of proceedings, not the place in which they have occurred. Because there is no harm to Petitioners—much less irreparable harm—from conducting the proceedings in New Jersey, there is no irreparable harm that calls for the extraordinary remedy of mandamus. *Cf. In re HTC Corp.*, 889 F.3d 1349, 1352–54 (Fed. Cir. 2018) (rejecting mandamus where party had not shown harm beyond "unnecessary" litigation in the forum).

26

### B.    Prior Rulings Would Survive Under the Law-of-the Case Doctrine and 11 U.S.C. § 364(e).

Petitioners' real desire is not merely to transfer these cases but to vacate all orders entered in them—above all, the Interim DIP Order. Although the overwhelming majority of their Petition is focused on the venue issue, they add in their "Relief Sought" a request that the Court "vacat[e] all orders entered in the cases." Pet. 3. Then, near the end of their Petition, in a single paragraph, they state that the "correction" should include not just a transfer of venue, but "vacatur of all 'first-day' and subsequent orders." Pet. 29. This gambit exposes the true nature of Petitioners' alleged harm: it is not harm from venue, but harm from adverse substantive rulings, which they now seek to vacate on the basis of improper venue. That relief, however, is categorically unavailable under governing law, underscoring that Petitioners' claimed injury is illusory and certainly not irreparable.

First, the law-of-the-case doctrine provides that orders and rulings entered by a transferor court survive a venue transfer and bind the transferee court. This Court recognized as much in *Hayman Cash Register Co. v. Sarokin*, 669 F.2d 162, 165–66 (3d Cir. 1982), where it enforced the law of the case from a court that had acted despite improper

27

venue.   A district court applying that doctrine in this Circuit has similarly explained that it "prevents one district court from reconsidering issues decided by another district court in the same action." *Dae Sub Choi v. Sushi Maru Express Corp.*, 2018 WL 1087505, at *2 (D.N.J. Feb. 27, 2018).  If these cases were transferred tomorrow, the first day orders, the Interim DIP Order, and every subsequent ruling of Judge Kaplan would travel with them and remain in force unless separately challenged on the merits in the transferee court.

Second, and independently, 11 U.S.C. § 364(e) places the loans extended, superpriority claims granted, and liens imposed under the DIP facility beyond the Petitioners' reaches regardless of any venue ruling here.  That provision states that the "reversal or modification on appeal" of post-petition financing authorization "does not affect the validity of any debt so incurred, or any priority or lien so granted" unless the court's order was stayed pending appeal.  11 U.S.C. § 364(e).  Petitioners did not seek a stay of the Interim DIP Order before they filed their appeal.  That omission is not an oversight; it is a strategic choice.  But it has legal consequences: the protections of § 364(e) are triggered, and the DIP

28

lenders' good-faith reliance on the bankruptcy court's financing authorization cannot be undone at this juncture.

In short, transfer would not afford Petitioners the vacatur they seek, and § 364(e) independently renders it toothless. Thus, even assuming that Petitioners were permitted to allege irreparable harm from the outcome of proceedings in an improperly-venued case—a proposition this Court has rejected—mandamus would not remedy that harm here, further reinforcing the impropriety of that exceptional relief.

To the extent that Petitioners contend that they have been "shut out of this prepackaged, accelerated bankruptcy," Pet. 2, or have other complaints about the proceedings to date, that is no basis for a venue objection, much less mandamus. Petitioners are active participants in the Mediation and settlement discussions therein have progressed significantly. To the extent a settlement is not possible, Petitioners will have (and have had) every opportunity to raise their substantive objections to plan confirmation or other aspects of the bankruptcy. Nothing about switching venue will change any of that. But what *will* change, as the bankruptcy court found, is that a transfer will "increase costs and delay the ongoing administration of these chapter 11 estates,"

29

risk "noncompliance with existing milestones and deadlines," and "jeopardize the success of the reorganization." A28. And that is all putting aside Petitioners' request not just to transfer venue but to *vacate* every prior order (including any financing orders), which, if granted, would have calamitous effects. Of course, that is Petitioners' goal: by claiming improper venue and bootstrapping that alleged procedural deficiency into a do-over of the entire chapter 11 case, they hope to gain leverage in a restructuring in which they are dissatisfied with the substantive outcomes. This Court should not countenance such gamesmanship, particularly under the guise of a writ of mandamus.

## IV. THE WRIT IS NOT APPROPRIATE UNDER THE CIRCUMSTANCES.

Even where the three-part mandamus standard is technically satisfied, this Court may, in the exercise of its discretion, decline to issue a writ of mandamus when it is not "appropriate under the circumstances." *Howmedica*, 867 F.3d at 401; *see also McGraw-Hill*, 909 F.3d at 57 ("[W]e retain discretion to deny the writ."). The circumstances here—a second petition on a substantially identical issue, filed by parties whose motives are transparently strategic, who waived the very objection

they assert, and who are attacking a careful and thorough proceeding below—make issuance of the writ particularly inappropriate.

### A. Serial Mandamus Petitions on the Same Issue Undermine Judicial Economy.

This is Petitioners' second petition to this Court on the propriety of venue in the District of New Jersey in the same bankruptcy proceeding. This Court denied the first petition on February 24, 2026, without an opinion. A784. The second petition was filed fewer than four weeks later, on March 18, 2026, raising the same fundamental claim: that the District of New Jersey is an improper venue for these cases under 28 U.S.C. § 1408.

The serial use of mandamus petitions to re-litigate venue in rapid succession—with each petition adjusting the legal theory to account for the bankruptcy court's most recent ruling—is an inefficient and improper use of the writ. Mandamus is not an iterative mechanism for testing venue theories in turn; it is a "drastic one, to be invoked only in extraordinary situations." *Kerr*, 426 U.S. at 402. Permitting parties to re-petition the court of appeals in rapid succession each time the bankruptcy court issues a ruling—and awarding those efforts with an eventual writ—would convert the writ into a *de facto* interlocutory appeal

mechanism, which is precisely what mandamus doctrine forbids. *See Hahnemann*, 74 F.3d at 461 ("[M]andamus should not be issued where relief may be obtained through an ordinary appeal").

### B. Petitioners' Conduct Reflects Strategic Gamesmanship, Not Genuine Harm.

As noted, the record in this case reveals that Petitioners' venue litigation is driven by financial interests and negotiating leverage in the restructuring, not by any principled concern about the geographic appropriateness of the forum. These are the stakes that animate this litigation, and they have nothing to do with venue.

### a. Petitioners Believe They Would Receive More Favorable Treatment in Delaware.

Remarkably, the bankruptcy court noted that "if any party was seeking a competitive edge" in the dispute over venue, it was *Petitioners*. A26 n.13. Specifically, the court explained, the Cross-Holders' "request for a transfer to the District of Delaware appears to be bottomed on the Cross-Holders' belief that it would receive more favorable treatment in that district." *Id.* The court quoted one of Petitioners' own counsel contending that a case by "Judge Goldblatt down in Delaware" purportedly rejected the type of DIP order that the bankruptcy court had approved here. *Id.* (citing A369–70). To the contrary, the court held that

32

"[n]o allegations were made or evidence presented suggesting that Debtors filed in this district to hinder another party in interest or take advantage of any favorable caselaw." A26.

These findings belie the "forum shopping" concerns advanced by Petitioners' amicus. Indeed, the policy arguments that amicus makes are precisely those that, as the bankruptcy court observed, Congress has consistently rejected in declining to amend the venue statute. *See* A4 ("[D]uring the last twenty years, Congress repeatedly has been invited by judges, academics and practitioners to cabin bankruptcy venue and yet has chosen not to do so.").

Nor does the amicus's insinuation that large Chapter 11 cases are improperly steered to particular judges in the District of New Jersey withstand even minimal scrutiny. A review of recent large Chapter 11 case assignments demonstrates that such cases have been distributed broadly across the bench: Bed Bath & Beyond (No. 23-13359) and Careismatic Brands, LLC (No. 24-10561) were assigned to Judge Papalia; National Realty Investment Advisors, LLC (No. 22-14539), Cyxtera Technologies, Inc. (No. 23-14853), and WeWork (No. 23-19865) were assigned to Judge Sherwood; David's Bridal (No. 23-13131), Thrasio

33

Holdings, Inc. (No. 24-11840), and CCA Construction (No. 24-22548) were assigned to Judge Gravelle; Eddie Bauer (No. 26-11422) was assigned to Judge Meisel; and BowFlex Inc. (No. 24-12364) was assigned to Judge Altenburg, Jr. Any district court administering complex chapter 11 cases must account for a judge's caseload, workload, and availability to handle time-sensitive first-day motions—that is responsible judicial administration, not forum shopping. And the amicus's own data refutes his thesis: the case assignments he identifies show large Chapter 11 matters distributed across multiple judges on the district's bench, not concentrated before any single jurist. *See* Levitin Br. at 19. The amicus offers no mechanism by which any party could engineer a particular judge assignment, nor any evidence that any party has done so here. His innuendo amounts to nothing more than the unremarkable observation that some judges handle more complex cases than others—a reality that follows from the nature of complex case management.

> **b. Petitioners Were Willing to Agree to New Jersey Venue if the Debtors Accepted Petitioners' DIP Proposal.**

Petitioners' venue challenge is barred not only by the weakness of the underlying claim but by their own prior conduct in these proceedings.

34

When Petitioners submitted their competing DIP proposal to the Debtors, that proposal's commitment letter expressly stipulated that venue properly lies in the United States Bankruptcy Court for the District of New Jersey.  It further stated, in terms that admit of no ambiguity, that the parties "hereby irrevocably and unconditionally agree[] that all claims in respect of the Chapter 11 Cases may be heard in the Bankruptcy Court" and that Petitioners "irrevocably and unconditionally waive[d] any objection to the laying of venue of any such suit, action or proceeding brought in any such court."  A1069.

The waiver is explicit, irrevocable by its own terms, and directly on point.  Petitioners represented that New Jersey venue was proper—when it served their interest in having their competing DIP proposal considered.[2] The inconsistency here is as clear as it is dispositive: Petitioners treated New Jersey venue as proper when they wanted the

---

[2]   Indeed, having made that representation in the same proceeding, in connection with the same financing arrangements that are now at the center of the dispute, Petitioners are equitably estopped from now urging this Court to hold that New Jersey venue is improper.  The doctrine of judicial estoppel prevents a litigant from asserting a petition that is inconsistent with a position previously asserted in a same or similar prior proceeding. *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 319 (3d Cir. 2003).

bankruptcy court to hear their competing DIP proposal, and as improper the moment that proposal was rejected. They cannot selectively invoke a venue objection as a litigation weapon while simultaneously waiving it when venue serves their interests.

### C. The Bankruptcy Court's Proceedings Have Been Orderly, Thorough, and Protective of All Parties' Rights.

The petition asks this Court to brand as a "usurpation of power" what is, by any fair reading of the record, a model of careful, expeditious, and fair judicial administration under difficult conditions.

From the outset of this case, the bankruptcy court balanced genuine competing pressures with care. Facing critical first-day financing needs that Debtors' counsel represented were necessary to prevent the company from failing within days (Debtors' financial advisor stated that Debtors "wouldn't make it next week" without DIP financing, A260), the bankruptcy court did not simply dismiss the venue challenge. Instead, it preserved all parties' rights, "incorporate[ed] the reservation of rights" as to venue in the Interim DIP Order itself, A37, set a compressed but realistic briefing and discovery schedule, A456–58, and scheduled an

evidentiary hearing within four weeks.  All of that occurred in the week the case was filed.

The bankruptcy court then conducted a full evidentiary hearing on February 26, 2026, at which Petitioners had every opportunity to present testimony and documentary evidence.  A1–2.  Following the hearing, the court issued thoughtful supplemental briefing requests, reviewed six separate submissions from the interested parties, and issued a detailed, twenty-eight-page written opinion on March 16, 2026.  *Id.*  That opinion addressed, in turn, the legal standards governing § 1408, the parties' competing interpretive approaches, the nature of bank accounts as assets, the evidentiary record on patents, intercompany receivables, D&O insurance, the question of bad faith under § 1112(b), and the discretionary transfer factors under § 1412.  A4–28.  The court engaged seriously with every argument Petitioners raised.

Petitioners' characterization of the bankruptcy court's ruling as a "clear error of law" is a disagreement with a reasoned judicial decision on an open legal question—one on which, as the court candidly acknowledged, no prior court had directly ruled, and the statutory text did not compel a single outcome.  A11 ("Congress has created a jump ball

when it comes to venue, and all parties are holding tight to their justifiable positions."). The bankruptcy court's choice to adopt Debtors' approach over Petitioners' approach is precisely the kind of considered, record-intensive, discretionary legal judgment that mandamus is emphatically not designed to correct. *See Will*, 389 U.S. at 95 (mandamus reserved for "exceptional circumstances amounting to a judicial 'usurpation of power'"). There is no usurpation here. There is a thorough and fair process leading to a well-reasoned ruling. This Court should respect that process and deny the writ.

## <u>CONCLUSION</u>

The Court should deny the Petition.

Dated: March 23, 2026     /s/   Michael D. Sirota

COLE SCHOTZ P.C.
Michael D. Sirota, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000

*Proposed Co-Counsel to the Debtors
and Debtors in Possession*

38

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this brief complies with Fed. R. App. P. 32(a)(7)(B) because it contains 7,647 words as determined by the word-counting feature of Microsoft Word 2016, excluding the parts that Fed. R. App. P. 32(f) exempts.

I certify that this brief complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) & 32(a)(6) because it has been prepared in a proportionally spaced, Roman style typeface of 14 points or more, using Microsoft Word 2016.

I certify that this document complies with the electronic filing requirements of L.A.R. 31.1(c) because the text of this electronic brief is identical to the text of the paper copies and because the virus-detection program Malwarebytes version 5.5.2.242 was run on the file and no virus was detected.

I certify pursuant to L.A.R. 28.3(d) and 46.1(e) that I am a member in good standing of the bar of this Court.

Dated: March 23, 2026                /s/   Michael D. Sirota

COLE SCHOTZ P.C.
Michael D. Sirota, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000

*Proposed Co-Counsel to the Debtors
and Debtors in Possession*